IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

STATE FARM FIRE AND      *
CASUALTY COMPANY,      *
     *
     Plaintiff,      *
     *
vs.      *      Case No.: 2:06 CV-359-CSC
     *
WAYNE MYRICK,      *
LYNN MYRICK,      *
and MARGARET N. MARTIN,      *
     *
     Defendants.      *

**PLAINTIFF STATE FARM FIRE AND CASUALTY COMPANY'S
NARRATIVE SUMMARY OF UNDISPUTED MATERIAL FACTS
AND BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

═══════════════════════════════════════════════════════════════

Plaintiff State Farm Fire and Casualty Company, (hereinafter "State Farm"),

offers the following narrative summary of undisputed facts and brief in support

of its Motion For Summary Judgment filed contemporaneously herewith:

<u>**ISSUES**</u>

I.      Whether the allegations of the Complaint constitute bodily

     injury as defined in the PLUP policy?

II.      Whether the allegations of the Complaint constitute property

     damage as defined in the PLUP policy?

III.    Whether the allegations of the Complaint constitute personal injury as defined in the PLUP policy?

IV.    Whether the allegations of the Complaint constitute an accident?

V.    Whether the bodily injury or property damage was expected or intended by the insured?

VI.    Whether the bodily injury or property damage was a result of willful and malicious acts of the insured?

## STATEMENT OF THE CASE

Defendant Margaret Martin filed a Complaint in the Circuit Court of Chilton County, Alabama, against State Farm insureds, Wayne Myrick and Lynn Myrick.  In said Complaint Martin alleged against Wayne Myrick and Lynn Myrick a claim for undue influence in Count I, a claim for fraud/deceit and fraudulent inducement in Count II, a claim for conversion in Count III, a claim for conspiracy to defraud in Count IV, a claim for conspiracy to convert in Count V, and a claim for breach of fiduciary duty against Lynn Myrick in Count VI. ( Exhibit "D," Margaret Martin Complaint in underlying litigation)

On April 19, 2006, State Farm filed a Complaint for Declaratory Judgment with this Court seeking a resolution of the rights, interests and liabilities under the personal liability umbrella policy  ("PLUP") of insurance it had issued to Wayne

Myrick and Lynn Myrick. [Do.2]. Defendant Margaret Martin filed an Answer to the Declaratory Judgment action on May 19, 2006. [Doc.3]. The Myricks, jointly, filed a Motion to Dismiss on May 23, 2006. [Doc.4]. Defendant State Farm responded to the Show Cause Order, [Doc.5], as to why the motion should not be granted on July 5, 2006. [Doc.6]. The Myricks replied to State Farm's response on July 12, 2006. [Doc. 8]. State Farm responded to the Myricks' reply on July 26, 2006. [Doc. 9]. A ruling to resolve the motion to dismiss has not been entered.

## SUGGESTED DETERMINATION OF UNDISPUTED MATERIAL FACTS

1.     Wayne Myrick and Lynn Myrick are insured by State Farm under a Personal Liability Umbrella Policy, policy number 01-NY-3095-2.

Exhibit "A," Certified copy of policy

2.     Margaret Martin is the aunt of Lynn Myrick .

Exhibit "B," Deposition of Lynn Myrick, p.17:9-14.

3.     In November, 2002, Margaret Martin suffered a stroke after which Martin was advised by her doctor that she should not live alone.

Exhibit "B," Deposition of Lynn Myrick, p. 18:22-25, 19:1-1; Exhibit "D," Martin Complaint, ¶¶ 4and 5.

4.     Margaret Martin asked the Myricks if she could move in with them.

Exhibit "C," Deposition of Wayne Myrick, exhibit 15 to the deposition,

interrogatory answers by Wayne Myrick, p.4, interrogatory #10.

5.      In exchange for the Myricks providing a place for Margaret Martin to live, Martin agreed to give the Myricks the proceeds from the sale of her house.

Exhibit "B," Deposition of Lynn Myrick, p. 20:6-17; Exhibit "C," Deposition of Wayne Myrick, p. 22:20-25, 23:1-16.

6.      Margaret Martin's house in Crestwood, Alabama, sold in the first quarter of 2003, for a net profit of over $114,000.

Exhibit "C," Deposition of Wayne Myrick, p. 28:5-18; Exhibit "B," Deposition of Lynn Myrick, p. 51:3-17; Exhibit "D," Martin Complaint, ¶ 11.

7.      At the closing on the sale of Margaret Martin's house, Margaret Martin endorsed the closing check directly over to the Myricks.

Exhibit "B," Deposition of Lynn Myrick, p. 52:3-20; Exhibit "C," Deposition of Wayne Myrick, p. 28:5-25; 29:1; Exhibit "D," Martin Complaint, ¶ 12.

8.      The $114,484.62 received from Margaret Martin after the sale of her house in Crestwood was deposited into the Myricks' construction account at First Commercial Bank.

Exhibit "C," Deposition of Wayne Myrick, p. 29:2-7; exhibit 17 to the deposition, Statement of Account; Exhibit "B," Deposition of Lynn Myrick, p. 52:24-25; 53:1-11.

9.      Lynn Myrick considered the money from the sale of Margaret Martin's

home to be a gift.

Exhibit "B," Deposition of Lynn Myrick, p. 54:10-21.

10.     Wayne Myrick considered the money from the sale of Margaret Martin's home to be a gift or compensation.

Exhibit "C," Deposition of Wayne Myrick, p. 37:14-24.

11.     The money from the sale of Margaret Martin's home was to be used by the Myricks to finish out the basement in the home they were constructing on the lake.

Exhibit "B," Deposition of Lynn Myrick, p. 20:6-14; Exhibit "C," Deposition of Wayne Myrick, p. 23:5-8; Exhibit "D," Martin Complaint, ¶ 12..

12.     Martin's living quarters in the basement of the Myrick home consisted of a dining room, a kitchen, a den, a nook, a master bedroom with a sitting area, a full bathroom and two walk-in closets and a guest bedroom with a sitting area and another full bath.

Exhibit "B," Deposition of Lynn Myrick, p. 68:15-25.

13.     There were never any written plans for the build out of the basement area to provide the living quarters for Martin.

Exhibit "C," Deposition of Wayne Myrick, p. 32:18-25; 33; 34:1.

14.     The money the Myricks received from Martin was commingled with the funds set aside by the Myricks for the construction of the house on the lake.

Exhibit "C," Deposition of Wayne Myrick, p. 29:8-13; Exhibit "B," Deposition of Lynn Myrick, p. 53:2-15; Exhibit "D," Martin Complaint, ¶ 12.

15.    No accounting was ever provided to Martin which detailed how the funds that Martin provided to the Myricks from the sale of the Crestwood house were used.

Exhibit "B," Deposition of Lynn Myrick, p. 55:4-7; Exhibit "C," Deposition of Wayne Myrick, p. 40:1-9; Exhibit "D," Martin Complaint, ¶ 12.

16.    Margaret Martin executed a Last Will and Testament on March 25, 2003, wherein she stated she gave the Myricks all interest in the property she occupied at her death, that her estate held no legal title to the Myricks' home and that the Myricks were not indebted to her estate for the money spent on finishing the basement for her use.

Exhibit "B," Deposition of Lynn Myrick, exhibit 12 to the deposition, p.3.

17.    On January 2, 2003, Margaret Martin executed a Durable Power of Attorney in favor of Lynn Myrick. Lynn Myrick agrees that under the Durable Power of Attorney she was the Attorney of Fact.

Exhibit "D," Martin Complaint, ¶ 8, Exhibit "B," Deposition of Lynn Myrick, p. 114:20-23; Exhibit "B," Deposition of Lynn Myrick, exhibit 9 to the deposition.

18.    Lynn Myrick understood she had a duty to act in the best interests of Margaret Martin under the terms of the Power of Attorney.

Exhibit "B," Deposition of Lynn Myrick, p. 125:12-15.

19.    The Myricks borrowed an additional $86,000+ from Margaret Martin to construct a garage.

Exhibit "D," Martin Complaint, ¶ 15; Exhibit "B," Deposition of Lynn Myrick, p. 75:18-25,76:1-13; Exhibit "C," Deposition of Wayne Myrick, p. 45:13-25,46:1-25, 47:1.

20.    The terms of the loan regarding the additional $86,000+ were never reduced to writing.

Exhibit "D," Martin Complaint, ¶ 15; Exhibit "C," Deposition of Wayne Myrick, p. 48:12-24; Exhibit "B," Deposition of Lynn Myrick, p. 78:14-17.

21.    As the loan agreement was understood by Wayne Myrick, the Myricks would repay the $86,000 to Martin if she asked for it but it would be repaid according to Martin's needs.

Exhibit "C," Deposition of Wayne Myrick, p. 48:16-21.

22.    In the event of Martin's death, "any amount owed on the loan would be cancel or satisfied as paid in full."

Exhibit "C," Deposition of Wayne Myrick, exhibit 16 to the deposition, p.2

23.    On or about January 9, 2004, and January 14, 2004, Lynn Myrick wrote checks on Margaret Martin's checking account at National Bank of Commerce, each check in the amount of $2,500.

Exhibit "D," Martin Complaint, ¶ 16; Exhibit "B," Deposition of Lynn Myrick,
p. 24:8-19, 25:5-16

24.    On or about June 2, 2004. Defendant Lynn Myrick again withdrew funds
from Margaret Martin's checking account at National Bank of Commerce, in the
amount of $1,100.

Exhibit "D," Martin Complaint, ¶ 17; Exhibit "C," Deposition of Wayne
Myrick, exhibit 16 to the deposition, p.3.

25.    The refrigerator for the living space was purchased with Martin's funds.

Exhibit "B," Deposition of Lynn Myrick, p. 102:24-25, 103:1-5; Exhibit "C,"
Deposition of Wayne Myrick, p. 62:16-24.

26.    The Myricks refused to allow Margaret Martin to remove a refrigerator
from Martin's basement living quarters after Martin moved to Texas.

Exhibit "D," Martin Complaint, ¶ 20; Exhibit "B," Deposition of Lynn Myrick,
p. 106:11-25; Exhibit "C," Deposition of Wayne Myrick, p. 64:20-25,65:1-6.

27.    In total, over $227,000 of Martin's money has been taken by the Myricks
for their use and benefit.

Exhibit "D," Martin Complaint, ¶ 21; Exhibit "C," Deposition of Wayne
Myrick, p. 82:11-25, 83:1-17.

28.    The Myricks have not returned any of the monies in dispute.

Exhibit "D," Martin Complaint, ¶ 22; Exhibit "C," Deposition of Wayne

Myrick, p. 65:7-12.

29.    The pertinent portions of the policy

### *PERSONAL LIABILITY UMBRELLA POLICY*

**AGREEMENT**

We agree to provide the insurance described in this policy. You agree to pay premium when due and comply with the provisions of this policy.

Exhibit "A," Certified Policy, p.1, SF-00005

**DEFINITIONS**

\* \* \*

6.    "**loss**" means:

    a.    an accident, including injurious exposure to conditions, which results in **bodily injury** or **property damage** during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **loss**; or

    b.    the commission of an offense, or series of similar or related offenses, which result in **personal injury** during the policy period.

Exhibit "A," Certified Policy, Policy Endorsement FE-7786 (3/93), SF-00014

9.    "**personal injury**" means injury caused by one or more of the following offenses:

    a.    false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious

prosecution.

      b.     libel, slander, defamation of character or invasion of rights of privacy.

Exhibit "A," Certified Policy, Policy Endorsement FE-7786 (3/93), SF-00015

      11.     "**property damage**" means physical injury to or destruction of tangible property.  This includes the loss of use caused by the injury or destruction.

Exhibit "A," Certified Policy, p.2, SF-00006

      17.     "**bodily injury**" means physical injury, sickness, disease, emotional distress or mental injury to a person.  This includes required care, loss of services and death resulting therefrom.

      **Bodily injury** does not include:

      a.     any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by an **insured** to any other person; or

      b.     the exposure to any such disease, bacteria, parasite, virus, or another organism by any **insured** to any other person.

Exhibit "A," Certified Policy, Policy Endorsement FE-7786 (3/93), SF-00014

## COVERAGES

      1.     **Coverage L - Personal Liability**.  If you are legally obligated to pay damages for a **loss**, we will pay your **net loss** minus the **retained limit**.  Our

payment will not exceed the amount shown on the **Declarations** as Policy Limits - Coverage L - Personal Liability.

Exhibit "A," Certified policy, p. 3, SF-00007.

## EXCLUSIONS

We will not provide insurance:

\* \* \*

2.      for **bodily injury** or **property damage**:

   a.      which is either expected or intended by you; or

   b.      to any person or property which is the result of your willful and malicious act, no matter at whom the act was directed.

Exhibit "A," Certified Policy, Policy Endorsement FE-7786 (3/93), SF-00015

\* \* \*

16.      for **personal injury** when you act with specific intent to cause harm or injury.

Certified Policy, Policy Endorsement FE-7786 (3/93), SF-00015

## STANDARD FOR SUMMARY JUDGMENT

Pursuant to Rule 56 (c), <u>Fed.R.Civ.P.</u>, the moving party is entitled to a judgment as a matter of law where no genuine issues as to any material fact exists. The moving party bears the initial burden of proof of showing the absence of any

genuine issue of material fact on the matters covered by the Motion for Summary Judgment.  Once the moving party has sustained its burden, the burden then shifts to the non-moving party to demonstrate by "the substantive evidentiary standard that appl[ies] to the case" that genuine issues of material fact do exist to warrant the matter being submitted to the finder of fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2514,  91 L.Ed.2d 202 (1986); Behalf of Samples v. City of Atlanta, 846 F.2d 1328 (11th Cir. 1988).  Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1396 (11th Cir. 1994), opinion modified on rehearing 30 F.3d 1347 (11th Cir. 1994).     In interpreting the substantial evidence rule, the United States Supreme Court has held "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  [First National Bank of Arizona v.] Cities Service, supra, 391 U.S. [253] at 288-289, 88 St. Ct. [1575] at 1592.  If the evidence is merely colorable, Dombrowski v. Eastland, 387 U.S. 82, 87 S. Ct. 1425, 18 L. Ed. 2d 577 (1967) (per curiam), or is not significantly probative, Cities Service supra, at 290, 88 S. Ct. 1592, summary judgment may be granted."  Anderson, 106 S.Ct. at 2511.

A summary judgment must be granted, under the undisputed facts, if the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); Real Estate Financing v. Resolution Trust Corp., 950 F.2d 1540, 1543 (11th Cir. 1992), rehearing denied.  Furthermore, if the non-moving party fails to establish a genuine

issue of fact as to an essential element of his case, then the moving party is entitled

summary judgment as a matter of law.  See Celotex Corp. v. Catrett, 477 U.S. 317,

325, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).

To successfully defeat a motion for summary judgment, the non-moving party

must offer evidence of specific facts showing a genuine issue of fact for trial.  United

Steelworkers of America, AFL-CIO v. University of Alabama, 599 F.2d 56, 61 (5th

Cir. 1979).  The non-moving party must show more than mere allegations and

conclusory statements.  Id.  When a party moving for summary judgment "supports

his motion with . . . documents evidencing a high degree of credibility, the opponent

must produce convincing proof attacking the documents in order to defeat the

motion."  Hales v. First Appalachian Corp., 494 F. Supp. 330, 332-333 (D.C. Ala.

1980). See e.g. 10 Wright and Miller, FEDERAL PRACTICE AND PROCEDURE, § 51-

112727.

## ARGUMENT AND CITATION OF AUTHORITY

**I.    The allegations in Martin's underlying Complaint preclude
coverage under a theory of accidental loss as prescribed by
the personal liability umbrella policy.**

The personal liability umbrella policy ("PLUP") will pay for damages the

insured is legally obligated to pay that are the result of a "**loss**."  The policy defines

"**loss**" as "an accident that results in **bodily injury** or **property damage** during the

policy period.. . . or the commission of an offense or series of similar or related

offenses, which result in **personal injury** during the policy period." (Exhibit "A",

Certified Policy, Policy endorsement FE-7786 (3/93), 6., SF-00014). The term

"**bodily injury**" has a broad definition under the PLUP policy. Under the terms of

the policy, "**bodily injury**" is defined as "physical injury, sickness, disease,

emotional distress or mental injury to a person." (Exhibit "A," Certified Policy,

Policy Endorsement FE-7786 (3/93), SF-00014). Martin's allegation of mental

anguish and emotional distress in the underlying litigation would comport to the

definition of "**bodily injury**" under the PLUP policy. Coverage, however, is still

predicated on accidental acts.

The term "accident," is not defined in the policy; however, it is a commonly

used word in the legal profession. In <u>Hartford Cas. Ins. Co. v. Merchants & Farmers</u>

<u>Bank</u>, 928 So.2d 1006 (Ala. 2005), the court discussed the term "accident:"

> In *St. Paul Fire & Marine Insurance. Co. v. Christiansen*
> *Marine, Inc.,* 893 So.2d 1124, 1136 (Ala.2004), this Court
> applied the following definition of "accident" found in
> *Black's Law Dictionary* 15 (7th ed. 1999): "An unintended
> and unforeseen injurious occurrence; something that does
> not occur in the usual course of events or that could be
> reasonably anticipated." In *United States Fidelity &*
> *Guaranty Co. v. Bonitz Insulation Co. of Alabama,* 424
> So.2d 569, 572 (Ala.1982), this Court, citing *Employers*
> *Insurance Co. of Alabama v. Rives,* 264 Ala. 310, 87 So.2d
> 653 (1955), stated: "The term ['accident'] has ⋯ been
> variously defined as something unforeseen, unexpected, or
> unusual."

<u>Hartford Cas. Ins. Co. v. Merchants & Farmers Bank</u>, 928 So.2d at 1011.

Applying the definition of "accident" as found in <u>Merchants & Farmers Bank</u>, <u>supra</u>, (an accident is something unforeseen, unexpected or unusual), there has been no loss under the first prong of the "**loss**" definition pertaining to "**bodily injury**" in the PLUP policy which would trigger State Farm's duty to provide a defense or indemnification in the underlying action. It is undisputed the Myricks acted with forethought to gain dominion and control over Martin's money. They intentionally took the money from the close of Martin's house and commingled it with their own construction funds. They intentionally accepted the money for the construction of the garage with no reasonable or cognizant plan in place to ensure for the repayment of the "loan." They intentionally denied Martin ownership of the appliances in the living quarters by defining them as part of the "gift" from the close out money received by the sale of Martin's house.

The second prong of the definition regarding "**loss**" relates to an accident resulting in "**property damage**." The definition for "**property damage**" in a PLUP policy requires physical injury to or destruction of tangible property. (Certified Policy, Exhibit "A," p.2, SF-00006). In <u>American States Ins. Co. v. Martin</u>, 662 So. 2d 245 (Ala. 1995), the court defined "tangible property" as:

> [T]hat which may be felt or touched; such property as may be seen, weighed, measured, and estimated by the physical senses; that which is visible and corporeal; having substance and body .
> . . .

662 So. 2d at 248 (quoting <u>Prince v. Higgins</u>, 572 So. 2d 1217, 1219 (Ala. 1990)

(which quoted 73 C.J.S. *Property* § 15 at 184 (1983))).

The <u>Martin</u> court went further to explain that economic damages do not

constitute damages to tangible property:

> ...[T]angible property (like real estate) is property that is capable of being handled, touched, or physically possessed. Purely economic losses are not included in this definition.
>
> . . .
>
> Economic loss is not damage or injury to tangible property covered by a comprehensive general liability policy.
>
> . . .
>
> Lost investments and lost deposits are not tangible property.
>
> . . .
>
> Loss of investment represented by an investment certificate is not a loss of tangible property.

662 So. 2d at 249.

Margaret Martin alleges in the underlying complaint that she has "been

deprived of the use and value of those sums of money which were procured by the

[Myricks] primarily for their benefit," that she "will not receive any future benefit of

the funds," and that she has "suffered mental anguish and emotional distress and will

continue to do so." Exhibit "D," Martin Complaint, ¶¶ 27,35,40,45,50, and 57).

Martin's claims are for economic losses, i.e. the use and benefit of money. Applying

the definition of "**property damage**" as entailing damage to *tangible property* there

**-16-**

has been no property damage under the terms of the policy.

The only remaining avenue for establishing a "**loss**," as defined by the policy, is a determination that a "**personal injury**" has occurred. The policy defines "**personal injury**" as being injury caused by one or more of the enumerated offenses:

> 9.    "**personal injury**" means injury caused by one or more of the following offenses:
>
> a.    false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution.
>
> b.    libel, slander, defamation of character or invasion of rights of privacy.

Exhibit "A," Certified Policy, Policy Endorsement FE-7786 (3/93), SF-00015.

None of the offenses as contained in the policy are present or alleged in the underlying matter. Martin's Complaint is premised on the alleged conversion and wrongful retention of Martin's monetary assets by the Myricks precluding the application of the policy definition for "**personal injury**." State Farm avers that, after applying the policy definition of "**loss**" to the claims and allegations of the underlying litigation, it has no duty to defend or indemnify the Myricks against the matter brought by Margaret Martin in the Circuit Court of Chilton County, Alabama. As such, summary judgment is due to be entered in favor of State Farm as a matter of law.

II.    **State Farm is not required to defend or indemnify the willful and malicious acts of its insureds, as a matter of law.**

Even if the court finds there has been an occurrence pursuant to the terms of the policy, which State Farm disputes after an application of the policy language to the allegation, the policy still contains an exclusion for willful and malicious acts of the insured.  The "willful and malicious" exclusion is based on an objective standard. McCauley v. Estes, 726 So. 2d 719, (Ala. Civ. App. 1998); State Farm Fire and Casualty Company v. Davis, 612 So. 2d 458 (Ala. 1993).  "Willful" and "malicious" are terms that are unambiguous and can be given their plain meaning. Willful has been defined as proceeding from a conscious motion of the will requiring a voluntary, knowing or deliberate act.  Willfully often denotes an act which is intentional, knowing or voluntary as distinguished from accidental. Ex parte Anderson, 682 So. 2d 467, 470 (Ala. 1996).  The act may involve merely a willful disregard of what one knows to be his duty, an act which is against good morals and wrongful in and of itself, and which necessarily causes injury and is done intentionally. Id.  In analyzing the objective standard involving willful conduct, it is implicit that a reasonable person in the same or similar circumstances doing the act would have knowledge of a danger or be conscious that the doing or not doing of some act will likely result in injury. Ex parte Anderson, 682 So. 2d 467 (Ala. 1996).  "The exclusion at issue . . .focuses on the *acts* of the insured, and not on whether the

-18-

insured intended to cause injury." <u>McCauley v. Estes</u>, <u>supra</u>, at 722.

In the underlying matter Martin has alleged undue influence, willful and intentional fraud, conversion, conspiracy and breach of fiduciary duty, all of which require a conscious doing on behalf of the actor except for breach of fiduciary duty. Lynn Myrick, however, has testified she understood she had a duty to act in the best interests of Martin. (Exhibit "B," Deposition of Lynn Myrick, p. 125:12-15). Despite or in spite of her fiduciary duties, Lynn Myrick allowed or participated in a scheme to use/place Martin's monetary assets in a position where Martin is not able to continue receiving the benefits from the use of her money. ( Exhibit "C," Deposition of Wayne Myrick, p. 83:2-17).

## <u>CONCLUSION</u>

State Farm's insureds, Wayne Myrick and Lynn Myrick have been sued over the way funds belonging to Margaret Martin were used. There is no dispute that the funds were used for the benefit of the Myricks during the construction of their home. No possible avenue was provided for Martin to regain possession of the funds or reap any benefit from them if she was not living with the Myricks. State Farm contends that the terms of the policy are clear and unambiguous. A careful analysis of the definition of the term "**loss**" as found in the policy, when applied to the events described by Margaret Martin and testified to by the Myricks, separately and individually, have ruled out any type of accidental or unintentional conduct. The

PULP policy under which the Myricks are seeking coverage does not apply to intentional conduct.  The policy that forms the contract which exists between the Myricks and State Farm is premised on the finding of a "**loss**."  A "**loss**" means an accident which results in "**bodily injury**," or "**property damage**," or "**personal injury**" resulting from the commission of enumerated offenses.  Even though there has been "**bodily injury**" as defined by the policy, it was not the result of an accident.  There has been no "**property damage**" as the damage alleged related to intangible items, i.e. monetary loss.  There has been no "**personal injury**" as none of the enumerated offenses as supplied in the policy have been alleged.  State Farm seeks a ruling which, after an application of the policy terms to the allegations and complaints of the Margaret Martin Complaint and a review to the testimony provided by the Myricks, concludes State Farm has no duty to defend or indemnify the Myricks in the underlying litigation.  This controversy can be settled by this Honorable Court as a matter of law, and summary judgement is due to be granted to Defendant State Farm Fire and Casualty Company.

/s/Michael B. Beers

**MICHAEL B. BEERS [BEERM4992]**
**MICHEAL S. JACKSON [JACKM8173]**
**CONSTANCE T. BUCKALEW [BUCKC3785]**
**ANGELA C. TAYLOR [TAYLA2713]**
BEERS, ANDERSON, JACKSON,  PATTY
 VAN HEEST & FAWAL, P.C.

**-20-**

P. O. Box 1988
Montgomery, Alabama  36102-1988
Telephone:  (334) 834-5311
Facsimile:  (334) 834-5362
E-mail:       mbeers@beersanderson.com
Counsel for Plaintiff State Farm Fire and Casualty
Company

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Timothy M. Fulmer, Esq.
David O. Schoel, Esq.
**NATTER & FULMER, P.C.**
3800 Colonnade Parkway
Suite 450
Birmingham, Alabama   35243
Counsel for Margaret Martin

James A. Kee, JR., Esq.
Cynthia A. Martin, Esq.
**KEE & SELBY, L.L.P.**
1900 International Park Drive
Suite 220
Birmingham, Alabama   35243
Counsel for Wayne & Lynn Myrick

on this the 20th day of March, 2007.

/s/Michael B. Beers
Of Counsel