# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| STATE FARM FIRE AND | ) | |
| CASUALTY COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:06 CV 359-WKW |
| | ) | |
| WAYNE MYRICK, | ) | |
| LYNN MYRICK and | ) | |
| MARGARET N. MARTIN | ) | |
| | ) | |
| Defendants. | ) | |

**AFFIDAVIT OF JAMES A. KEE, JR.**

James A. Kee, Jr. being duly sworn, does state as follows:

1.      My name is James A. Kee, Jr.  I am a resident citizen of the State of Alabama, over the age of 19 years and am of sound mind.  The following affidavit is given based on my personal knowledge of the facts contained herein.  I represent the Defendants Wayne Myrick and Lynn Myrick ("Myricks") in this federal court declaratory judgment action.

2.      On May 23, 2006 I filed a Motion to Dismiss on behalf of the Myricks.

3.      The Motion to Dismiss is pending before this Court.

4.      In the parties planning meeting, the Myricks reserved the arguments in their Motion to Dismiss and all of the parties agreed that the pre-discovery

1

disclosures would not be exchanged until 14 days after a ruling on the Motion to Dismiss.

5.     It is my understanding that the report has not been adopted by the court and no scheduling order has been entered.

6.     No discovery has been conducted as the Motion to Dismiss is pending.

7.     The Myricks are filing a counterclaim against State Farm, discovery and notices of deposition for the State Farm representatives who investigated and denied this claim under the Myricks' homeowners and umbrella policies, and a notice for the deposition of Paula McClung, daughter-in-law of the Chilton County state court plaintiff Margaret Martin.

8.     It is essential that the Myricks, at the very least, receive responses to their discovery propounded upon State Farm, the deposition testimony of the State Farm representatives who investigated and denied this claim under the Myrick's homeowners and umbrella policies, and the depositions of the underlying plaintiff representative Paula McClung, in order to respond to and oppose State Farm's Motion for Summary Judgment.

FURTHER AFFIANT SAYETH NOT.

_____
James A. Kee, Jr.

Subscribed and sworn to before me this _____ day of May, 2007.

Notary Public, State at Large
My Commission Expires:_____

**JOANN M. KNEYNSBERG**
Notary Public, Al State at Large
My Comm. Expires July 1, 2007

3

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

STATE FARM FIRE AND     *
CASUALTY COMPANY,     *
    *
     Plaintiff,     *
    *
vs.     *    Case No.: 2:06 CV-359-CSC
    *
WAYNE MYRICK,     *
LYNN MYRICK,     *
and MARGARET N. MARTIN,     *
    *
     Defendants.     *

## REPORT OF THE PARTIES PLANNING MEETING

1.     Pursuant to Fed. R.Civ. P. 26(f), a meeting was held on (date) at (place) and was attended by:

- Angela Taylor Baker for Plaintiff State Farm Fire and Casualty Company

- Cynthia A. Martin for Defendants Wayne and Lynn Myrick

  As required in the Federal Rules of Civil Procedure, Wayne and Lynn Myrick participated in the parties planning meeting and agree to the following plan. However, they reserve and re-assert their objections to this declaratory judgment action as it is improper and due to be dismissed as argued in their pending motion to dismiss.

- David D. Schoel for Defendant Margaret Martin

2.     **Pre-Discovery Disclosures**. The parties will exchange the information required by Fed.R.Civ.P. 26(a)(1) within fourteen (14) days of the Court's order on

Defendants Myricks' Motion to Dismiss currently pending before the Court.

3.    **Discovery Plan**.  The parties jointly propose to the court the following discovery plan:

- Discovery will be needed on the subjects of insurance coverage and policy interpretations.

- All discovery commenced in time to be completed by July 20, 2007.

- Maximum of 20 Interrogatories by each party to any other party. Responses are due 45 days after service.

- Maximum of 20 requests for admission by each party to any other party.  Responses are due 45 after service.

- Maximum of 5 depositions by Plaintiff(s) and 5 depositions by Defendant(s).

- Each deposition is limited to a maximum of 6 hours unless extended by agreement of the parties.

- Reports from retained experts under Rule 26(a)(2) are due:

  - From Plaintiff(s) May 25, 2007

  - From Defendant(s) June 22, 2007

4.    **Other Items**.

- The parties do not request a conference with the court before

entry of the scheduling order.

- The parties request a pretrial conference in August of 2007.

- Plaintiff(s) should be allowed until January 12, 2007 to join additional parties and until January 31,2007 to amend the pleadings.

- Defendant(s) shall be allowed until February 16, 2007 to join additional parties and until March 7, 2007 to amend the pleadings.

- All potentially dispositive motions should be filed by August 24, 2007.

- Settlement is unlikely in this matter but the parties will evaluate the issue of settlement upon the completion of discovery.

- Final lists of witnesses and exhibits under rule 26(a)(3) should be due

  - from Plaintiff(s) 30 days before trial.

  - from Defendant(s) 30 days before trial.

- Parties should have 7 days after the service of final lists of witnesses and exhibits to list objections under Rule 26(a)(3).

- The case should be ready for trial in September of 2007  and at this time is expected to take approximately 3  days to try the case.

Pursuant to the Administrative Procedure for Filing, Signing, and Verifying Documents by Electronic Means, Section II(C)(3), all counsel so noted below have reviewed this document and have consented to its electronic filing.

DONE this the 28th day of November, 2006.

/s/ David D. Schoel
**TIMOTHY M. FULMER [FUL021]**
**DAVID D. SCHOEL [SCH061]**
Natter & Fulmer, P.C.
3800 Colonnade Parkway, Suite 450
Birmingham, Alabama   35243
TEL:  (205) 968-5300
FAX: (205) 968-5330
E-mail:  fulmer@natterfulmer.com
Counsel for Defendant Margaret N. Martin

/s/ Cynthia A. Martin
**JAMES A. KEE, JR. [KEE005]**
**CYNTHIA A. MARTIN**
Kee & Selby, L.L.P.
1900 International Park Drive, Suite 220
Birmingham, Alabama 35243
TEL:  (205) 968-9900
FAX: (205) 968-9909
E-mail:  anunnellee@keeselby.com
Counsel for Defendants Wayne & Lynn Myrick

/s/ Angela T. Baker
**MICHAEL B. BEERS [BEE006]**
**MICHEAL S. JACKSON [JAC015]**
**CONSTANCE T. BUCKALEW [BUC015]**
**ANGELA T. BAKER [TAY062]**

-4-

BEERS, ANDERSON, JACKSON, PATTY
  VAN HEEST & FAWAL.C.
P. O. Box 1988
Montgomery, Alabama  36102-1988
TEL:  (334) 834-5311
FAX: (334) 834-5362
E-mail:  mbeers@beersanderson.com
Counsel for Plaintiff State Farm Fire and
Casualty Company

# Exhibit C

IN THE CIRCUIT COURT OF CHILTON COUNTY, ALABAMA

MARGARET N. MARTIN,　　　　　　　*

　　　Plaintiff,　　　　　　　　　　*

vs.　　　　　　　　　　　　　　　*　　　Civil Action No. 2005-336-B

WAYNE MYRICK and　　　　　　　*
LYNN MYRICK,　　　　　　　　　*

　　　Defendants.　　　　　　　　*

## STATE FARM FIRE AND CASUALTY COMPANY'S
## MOTION TO INTERVENE

COMES NOW, State Farm Fire and Casualty Company, (hereinafter "State Farm"), to petition this Court to allow its intervention into this cause pursuant to Rule 24 and/or Rule 49 of the ALABAMA RULES OF CIVIL PROCEDURE for the limited purpose of participating in discovery and submitting special interrogatories to the jury. The Alabama Supreme Court's decision in *Universal Underwriters v. East Central Alabama Ford/Mercury, Inc.*, 574 So. 2d 716 (Ala. 1990) also authorizes such intervention by State Farm. State Farm requests intervention to resolve questions of liability insurance coverage arising from the circumstances of this case. State Farm submits the following grounds in support of this Motion to Intervene:

1.　　　Defendants Wayne Myrick and Lynn Myrick (hereinafter collectively referred to as "Myricks") are the named insureds on a State Farm personal liability umbrella policy in force and effect at all times material to the incident(s) made the basis of this lawsuit. A copy of Policy #01-BY-3095-2 is attached hereto as Exhibit "A".

2.　　　The Myricks contend this policy provides coverage for the acts made the basis of the allegations and the damages claimed by Plaintiff Margaret Martin in her Complaint.

3.     State Farm contends there is a question of whether the policy of insurance provides coverage for the acts and claims that have been alleged against the Myricks in this lawsuit. There is a question whether the underlying allegations constitute a loss as defined by the policy, whether or not the acts complained of were expected or intended in nature, and whether the acts were the result of willful and malicious conduct. Further, a jury needs to make a determination which, if any, award of damages were made pursuant to the claim for emotional and mental anguish.

4.     Additionally, State Farm contends the issues of liability and damages presented by Martin's Complaint against the Myricks and the issues of liability existing between State Farm and the Myricks have common questions of law and fact.

5.     State Farm's intervention would not delay the trial of this cause and would not prejudice the adjudication of the rights of the original parties. Such intervention would provide an efficient means of resolving the issues among the parties regarding liability insurance coverage

6.     ALABAMA RULES OF CIVIL PROCEDURE, Rule 24 and Rule 49, and the previously cited *Universal Underwriters* decision provide an alternative means for this Court to resolve the issue of liability insurance coverage which may require nothing more than the submission of Special Interrogatories or Special Verdict Forms to the Jury.

8.     If Special Interrogatories are not allowed by the Court, Defendant State Farm alternatively, in the event a verdict is returned against the Myricks, would respectfully request the Court to bifurcate the trial and allow State Farm to present evidence regarding insurance coverage to the same jury hearing the underlying case.

WHEREFORE, State Farm respectfully requests this Court to enter an Order GRANTING its Motion to Intervene.

Respectfully submitted this _20th_ day of APRIL, 2006.

MICHAEL B. BEERS [BEE006]
CONSTANCE T. BUCKALEW [BUC015]
ANGELA C. TAYLOR [TAY062]
Attorneys for Intervenor State Farm Fire and
Casualty Company

**Of Counsel:**

BEERS, ANDERSON, JACKSON,
  PATTY & VAN HEEST, P.C.
P. O. Box 1988
Montgomery, Alabama 36102-1988
TEL: (334) 834-5311
FAX: (334) 834-5362

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served upon all parties to this action by depositing a copy of same in the U.S. Mail, postage prepaid, addressed as follows:

Timothy M. Fulmer, Esq.
David O. Schoel, Esq.
NATTER & FULMER, P.C.
3800 Colonnade Parkway, Suite 450
Birmingham, Alabama 35243

Jim Gray, Esq.
LLOYD, GRAY AND WHITEHEAD, P.C.
2501 Twentieth Place S - Suite 300
Birmingham, Alabama 35223

on this the _20th_ day of APRIL, 2006.

Of Counsel

# Exhibit D



| Settings | Parties | Case Action Summary | Witness List | Financial | Images | Consolidated CAS |
| --- | --- | --- | --- | --- | --- | --- |

| County | 14 | Case Number | ●CV 2005 000336 00 | JID | JBB | Trial | J |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Style | **MARGAREET N MARTIN VS WAYNE MYRICK AND LYNN MYRICK** | | | | | | |
| Code | TBFM | Type | BAD FAITH/FRAUD/MISR | Filed | 11232005 | Track | |
| Amount | | Status | ACTIVE | Plaintiffs | 001 | Defendants | 002 |
| DJID | | Court Action | 00000000 | | | For | |
| Damages-Comp | | Damages-Pun | | Damages-Gen | | No Damages | |
| Trial Days | | Lien | | | | | |

| Date 1 | 03292007 | Que 1 | 001 | Time 1 | 0900 A | Description | HEAR MOTION FOR SJ |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Date 2 | | Que 2 | | Time 2 | | Description | |
| Date 3 | | Que 3 | | Time 3 | | Description | |
| Date 4 | | Que 4 | | Time 4 | | Description | |
| Cont Date | | Why | | | | Cont # | |
| RevJmt | | Admin Date | | Why | | | |
| Appeal Date | | CRT | | Case | 0000 000000 00 | | |
| TBNV1 | | TBNV2 | | DSDT | | DTYP | |
| Comment 1 | | | | | | | |
| Comment 2 | | | | | | | |

| Party | C 001 | Name | MARTIN MARGARET | | | Type | INDIVIDUAL |
| --- | --- | --- | --- | --- | --- | --- | --- |
| INDX | | ANAM | | | | JID | JBB |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 205 000 0000 |
| Atty 1 | SCHOEL DAVID DAWSON | Atty 2 | FULMER TIMOTHY MELVI | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

| Party | D 001 | Name | MYRICK WAYNE | | | Type | INDIVIDUAL |
| --- | --- | --- | --- | --- | --- | --- | --- |
| INDX | | ANAM | | | | JID | JBB |
| SSN | | Address 1 | 60 CO RD 1000 | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | VERBENA AL 36091 0000 | | | Phone | 205 000 0000 |
| Atty 1 | GRAY JAMES C III | Atty 2 | | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | 11302005 | Type | C CERTIFIED MAI | Reissue | 01142006 | Type | S SHERIFF |
| Return | 01032006 | Type | C UNCLAIM CERT | Return | | Type | |
| Service | 01202006 | Type | S SERVED PERSON | Serv On | | By | |
| Answer | 03072006 | Type | D COMP DENIED | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |

| Comment | | | | | | |
|---|---|---|---|---|---|---|

| Party | D 002 | Name | MYRICK LYNN | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|
| INDX | | ANAM | | | JID | JBB |
| SSN | | Address 1 | 60 CO RD 1000 | | Sex | |
| DOB | | Address 2 | | | Race | |
| Country | US | City | VERBENA AL 36091 0000 | | Phone | 205 000 0000 |
| Atty 1 | GRAY JAMES C III | Atty 2 | | Atty 3 | Atty 4 | |
| Atty 5 | | Atty 6 | | | | |
| Issued | 11302005 | Type | C CERTIFIED MAI | Reissue | 01142006 Type | S SHERIFF |
| Return | 01032006 | Type | C UNCLAIM CERT | Return | Type | |
| Service | 01202006 | Type | S SERVED PERSON | Serv On | By | |
| Answer | | Type | | NS Not | NA Not | |
| Warrant | | Type | | Arrest | | |
| CACT | | Date | | For | Exep | O |
| AMT | | Cost | | Other | Satisfied | |
| Comment | | | | | | |

| Party | I 001 | Name | STATE FARM FIRE AND CASUALTY | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|
| INDX | | ANAM | | | JID | JBB |
| SSN | | Address 1 | | | Sex | |
| DOB | | Address 2 | | | Race | |
| Country | US | City | AL 00000 0000 | | Phone | 205 000 0000 |
| Atty 1 | BEERS MICHAEL B | Atty 2 | | Atty 3 | Atty 4 | |
| Atty 5 | | Atty 6 | | | | |
| Issued | | Type | | Reissue | Type | |
| Return | | Type | | Return | Type | |
| Service | | Type | | Serv On | By | |
| Answer | | Type | | NS Not | NA Not | |
| Warrant | | Type | | Arrest | | |
| CACT | | Date | | For | Exep | O |
| AMT | | Cost | | Other | Satisfied | |
| Comment | | | | | | |

| Date | Time | Code | Comments | Operator |
|---|---|---|---|---|
| 11302005 | 0924 | FILE | FILED THIS DATE: 11/23/2005 (AV01) | FEB |
| 11302005 | 0924 | ORIG | ORIGIN: INITIAL FILING (AV01) | FEB |
| 11302005 | 0924 | ASSJ | ASSIGNED TO JUDGE: JOHN B. BUSH (AV01) | FEB |
| 11302005 | 0924 | TDMJ | JURY TRIAL REQUESTED (AV01) | FEB |
| 11302005 | 0924 | STAT | CASE ASSIGNED STATUS OF: ACTIVE (AV01) | FEB |
| 11302005 | 0932 | PART | MARTIN MARGARET ADDED AS C001 (AV02) | FEB |
| 11302005 | 0932 | ATTY | LISTED AS ATTORNEY FOR C001: SCHOEL DAVID DAWSON | FEB |
| 11302005 | 0957 | ATTY | LISTED AS ATTORNEY FOR C001: FULMER TIMOTHY MELVI | FEB |
| 11302005 | 0959 | PART | MYRICK WAYNE ADDED AS D001 (AV02) | FEB |
| 11302005 | 0959 | SUMM | CERTIFIED MAI ISSUED: 11/30/2005 TO D001 (AV02) | FEB |
| 11302005 | 1000 | PART | MYRICK LYNN ADDED AS D002 (AV02) | FEB |
| 11302005 | 1000 | SUMM | CERTIFIED MAI ISSUED: 11/30/2005 TO D002 (AV02) | FEB |
| 01032006 | 1134 | RETU | RETURN OF UNCLAIM CERT ON 01/03/2006 FOR D001 | FEB |
| 01032006 | 1134 | RETU | RETURN OF UNCLAIM CERT ON 01/03/2006 FOR D002 | FEB |
| 01032006 | 1134 | RETU | RETURNED UNCLAIM CERT M ON 01/03/2006 FOR D001 | FEB |
| 01032006 | 1135 | RETU | RETURNED UNCLAIM CERT M ON 01/03/2006 FOR D002 | FEB |
| 01142006 | 1206 | REIS | REISSUE OF SHERIFF ON 01/14/2006 FOR D001 (AV02) | FEB |
| 01142006 | 1206 | REIS | REISSUE OF SHERIFF ON 01/14/2006 FOR D002 (AV02) | FEB |
| 01252006 | 1627 | SERC | SERVICE OF SERVED PERSON ON 01/20/2006 FOR D001 | FEB |
| 01252006 | 1627 | SERC | SERVICE OF SERVED PERSON ON 01/20/2006 FOR D002 | FEB |
| 03082006 | 1016 | ATTY | LISTED AS ATTORNEY FOR D001: GRAY JAMES C III | MIS |
| 03082006 | 1016 | ANSW | ANSWER OF COMP DENIED ON 03/07/2006 FOR D001(AV02) | MIS |
| 03082006 | 1017 | ATTY | LISTED AS ATTORNEY FOR D002: GRAY JAMES C III | MIS |

| | | | | |
|---|---|---|---|---|
| 03132006 | 0933 | TEXT | AMENDED ANSWER OF DEFT. DEBRA ROBERTS. | FEB |
| 03212006 | 0914 | TEXT | ACCEPTANCE AND WAIVER BY TROY KING ATTY GEN OF THE | FEB |
| 03212006 | 0914 | TEXT | STATE OF ALA. | FEB |
| 03212006 | 0934 | TEXT | REQUEST TO EXTEND BANKRUPTCY STATUS AS TO DEFT., | FEB |
| 03212006 | 0934 | TEXT | STEVE WASDIN BY PLTFF.S | FEB |
| 04252006 | 1438 | TEXT | MOTION TO INTERVENE FILED BY STATE FARM INS., | FEB |
| 05022006 | 1222 | PART | STATE FARM FIRE AND CASUALTY ADDED AS I001 (AV02) | MIS |
| 05022006 | 1222 | ATTY | LISTED AS ATTORNEY FOR I001: BEERS MICHAEL B(AV02) | MIS |
| 05022006 | 1223 | TRAN | TRANSMITTAL NOTICE SENT TO ALL ATTORNEYS | MIS |
| 05022006 | 1225 | TEXT | ORDER GRANTING MOTION TO INTERVENE FILED , COPY | MIS |
| 05022006 | 1225 | TEXT | TO ATTYS., | MIS |
| 06292006 | 1351 | TEXT | MOTION TO WITHDRAW PARAGRAPH 8 OF MOTION TO | MIS |
| 06292006 | 1351 | TEXT | INTERVENE FILED BY STATE FARM FIRE AND CASUALTY | MIS |
| 07072006 | 1033 | TEXT | ORDER ON MOTION TO WITHDRAW PARAGRAPH 8 GRANTED. | FEB |
| 07102006 | 1033 | TEXT | COPY TO PARTIES. | FEB |
| 07102006 | 1033 | TRAN | TRANSMITTAL NOTICE SENT TO ALL ATTORNEYS | FEB |
| 08212006 | 1639 | TEXT | ORDER SETTING CASE FOR TRIAL AND SCHEDULING ORDER | FEB |
| 08212006 | 1639 | TEXT | FILED. COPY TO PARTIES. | FEB |
| 08242006 | 1822 | TEXT | NOTICE OF TAKING DEPOSITION FILED BY DEFENDANT | MIS |
| 08292006 | 1638 | DAT3 | SET FOR: PRETRIAL CONFERENCE ON 02/01/2007 AT 103 | FEB |
| 08292006 | 1638 | DAT4 | SET FOR: TRIAL - JURY ON 02/12/2007 AT 0830A(AV01) | FEB |
| 08292006 | 1639 | TRAN | TRANSMITTAL NOTICE SENT TO ALL ATTORNEYS | FEB |
| 12122006 | 1338 | PRTY | PARTY ADDED W001 ROBERT PADEN (AW21) | AJA |
| 12122006 | 1338 | ISSD | PARTY W001 ISSUED DATE: 12122006 TYPE: SHERIFF | AJA |
| 12152006 | 1242 | TEXT | ORDER ON MOTION TO CONTINUE, GRANTED. COPY TO | FEB |
| 12182006 | 1242 | TEXT | PARTIES. | FEB |
| 12222006 | 0850 | TEXT | DEFENDANT'S MOTION FOR SUMMARY JUDGMENT FILED | MIS |
| 01042007 | 1234 | TRAN | TRANSMITTAL NOTICE SENT TO ALL ATTORNEYS | FEB |
| 01042007 | 1543 | ETXT | D001-D002-OTHER /NO ACTION | AJA |
| 01042007 | 1544 | ETXT | C001-OTHER /NO ACTION | AJA |
| 01092007 | 1301 | ETXT | C001-CONTINUE /GRANTED | AJA |
| 01092007 | 1932 | ETXT | DISPOSED - TRANSMITTAL | AJA |
| 01262007 | 1746 | TEXT | MOTION TO SET CASE FOR TRIAL BY DEFTS. | FEB |
| 02022007 | 1101 | DAT1 | SET FOR: MOTION FOR SJ ON 03/29/2007 AT 0900A | FEB |
| 02022007 | 1102 | TEXT | COPY OF CAS TO PARTIES. | FEB |
| 02022007 | 1102 | TRAN | TRANSMITTAL NOTICE SENT TO ALL ATTORNEYS | FEB |
| 02022007 | 1521 | ETXT | C001-OTHER - PLAINTIFF'S RESPONSE TO MOTION TO SET | AJA |
| 02022007 | 1547 | ETXT | MOTION - TRANSMITTAL | AJA |
| 02082007 | 1123 | ETXT | C001-OTHER /DOCKETED | AJA |
| 03262007 | 1552 | TEXT | PLTFFS RESPONSE TO MOTION FOR SJ. | FEB |
| 03272007 | 0946 | ETXT | C001-OTHER /NO ACTION | AJA |
| 03292007 | 1404 | TEXT | COPY OF CAS TO PARTIES. | FEB |
| 03292007 | 1405 | TEXT | ORDER FILED. COPY OF ORDER TO PARTIES. | FEB |
| 03292007 | 1413 | TRAN | TRANSMITTAL NOTICE SENT TO ALL ATTORNEYS | FEB |
| 04262007 | 1047 | TEXT | ORDER ON MOTION FOR SJ DENIED. COPY TO PARTIES. | FEB |
| 04262007 | 1048 | TRAN | TRANSMITTAL NOTICE SENT TO ALL ATTORNEYS | FEB |

# Exhibit E

1

IN THE CIRCUIT COURT OF
CHILTON COUNTY, ALABAMA

MARGARET N. MARTIN,

    Plaintiff,

    vs.          CIVIL ACTION #:
                    CV 05-336-B

WAYNE MYRICK and
LYNN MYRICK,

    Defendants.


DEPOSITION OF LYNN MYRICK

The Deposition of LYNN MYRICK was
taken before Lori E. Defnall, Notary
Public, on Monday, February 5, 2007, at
Natter & Fulmer, PC, Birmingham,
Alabama, commencing at 10:17 a.m.,
pursuant to the stipulations set forth
herein:

301 Title Building/300 21st Street North
Birmingham, Alabama  35203

---

2

A P P E A R A N C E S

APPEARING FOR THE PLAINTIFF:
NATTER & FULMER, PC
BY: Mr. David D. Schoel
3800 Colonnade Parkway, Suite 450
Birmingham, Alabama 35243

APPEARING FOR THE DEFENDANT:

LLOYD, GRAY & WHITEHEAD, PC
BY: Mr. James C. Gray, III
2,501 20th Place South, Suite 300
Birmingham, Alabama 35223

ALSO PRESENT:

BEERS, ANDERSON, JACKSON, PATTY &
VEN HEEST, PC
BY: Ms. Tanya E. Dugas
250 Commerce Street, Suite 100
Montgomery, Alabama 36104

Wayne Myrick-Defendant

Reported by:

Lori E. Defnall

301 Title Building/300 21st Street North
Birmingham, Alabama  35203

---

3

I N D E X

EXAMINATION OF LYNN MYRICK

EXAMINATION BY:      PAGE NUMBER

Mr. Schoel........................7


E X H I B I T S

Plaintiff's Exhibit 1............10
Plaintiff's Exhibit 2............22
Plaintiff's Exhibit 3............23
Plaintiff's Exhibit 4............27
Plaintiff's Exhibit 5............34
Plaintiff's Exhibit 6............58
Plaintiff's Exhibit 7............92
Plaintiff's Exhibit 8............109
Plaintiff's Exhibit 9............114
Plaintiff's Exhibit 10...........121
Plaintiff's Exhibit 11...........123
Plaintiff's Exhibit 12...........129
Plaintiff's Exhibit 13...........131

301 Title Building/300 21st Street North
Birmingham, Alabama  35203

---

4

Reporter's Certificate.............144

Word Index.......................145

301 Title Building/300 21st Street North
Birmingham, Alabama  35203

53

1    A.   In a building account.
2    Q.   And what was the -- where was
3  that account held?
4    A.   First Commercial Bank.
5    Q.   And was that account held
6  jointly by you and your husband?
7    A.   Yes.
8    Q.   Okay.  And all of the proceeds,
9  all of the 114 thousand dollars, was put
10  into that account?
11    A.   Yes.
12    Q.   Okay.  And were all of those
13  proceeds eventually used in the
14  construction of your lake house?
15    A.   Yes.
16    Q.   Okay.  Now I want to revisit
17  this arrangement or agreement you had with
18  Margaret, concerning her living with you
19  and the funds that would be provided to
20  you to build out her living space.  Could
21  you describe that agreement for me, just
22  your recollection of what the agreement
23  was?
24    A.   Just that whatever she got out
25  of the sale of her house, she would give

301 Title Building/300 21st Street North
Birmingham, Alabama  35203

54

1  it to us to build out the downstairs.
2    Q.   Okay.  At that point, had y'all
3  received any estimates as to how much it
4  would cost to build out her living space?
5    A.   No.
6    Q.   Okay.  Did you have any idea,
7  at that time, how much was going to be
8  required to build her living space?
9    A.   I didn't.
10    Q.   Okay.  But the entire 114
11  thousand, none the less, put into the
12  building account, correct?
13    A.   Yes.
14    Q.   Was the 114 thousand
15  dollars a loan?
16    A.   No.
17    Q.   Okay.  Do you consider it to
18  have been compensation?
19    A.   No.
20    Q.   Okay.  Was it a gift?
21    A.   Yes.
22    Q.   I'm sorry, if I'm repetitive,
23  did y'all actually wind up using that
24  entire 114 thousand dollars in the
25  building out of her living space?

301 Title Building/300 21st Street North
Birmingham, Alabama  35203

55

1    A.   Yes.
2    Q.   There's no funds left over?
3    A.   No.
4    Q.   Okay.  Did you ever provide an
5  accounting of the use of those funds to
6  Margaret?
7    A.   No.
8    Q.   Were you her Attorney In Fact
9  during the time that these proceeds were
10  spent on the construction of the lake
11  house?
12    A.   Can you repeat that?
13    Q.   Were you her Attorney In Fact,
14  under the Power of Attorney, that she
15  executed in your favor, at that time?
16    A.   No.
17    Q.   When was the Power of Attorney
18  executed?
19    A.   I don't think that was until
20  after she moved in with us, or right
21  before she moved in with us.  I don't
22  remember.  I think it was right after she
23  moved in with us.
24    Q.   Okay.  Let me look.
25    MR. GRAY:  I think it was -- I

301 Title Building/300 21st Street North
Birmingham, Alabama  35203

56

1  think it was January of '03.
2    Q.   I think you're right.  January
3  second, 2003; does that sound correct?
4    A.   Yes.
5    Q.   Okay.  So, were you her
6  Attorney In Fact during the time that
7  these funds, that she had provided you, to
8  be used to construct the house?
9    A.   No.
10    Q.   You weren't?
11    A.   I don't understand the
12  question.
13    Q.   Well, look, it's a legal term,
14  and I apologize for that.
15    MR. GRAY:  Ask it this way:
16  Did she have Power of Attorney during the
17  construction of the house?
18    Q.   Okay.  That's easier, and if
19  everybody understands that, let's go with
20  it.
21    MR. GRAY:  Go with it.
22    Q.   Did you have Power of Attorney
23  for Margaret at the time these funds were
24  spent?
25    A.   Yes.

301 Title Building/300 21st Street North
Birmingham, Alabama  35203

77

1  that.
2      A.  Yeah.  It's just a --
3          MR. GRAY:  It shows --
4          MR. MYRICK:  We have the
5  deposit going in.  We don't have the
6  documents --
7      A.  No.  I have a deposit going in.
8          MR. GRAY:  Right.  We wouldn't
9  have the stuff from her account.  What we
10 can show you is, the moneys in their
11 account.
12     A.  In our account.
13         MR. GRAY:  And you've got those
14 documents.
15     Q.  Okay.  Where was that money
16 being held, prior to y'all obtaining it
17 from her, what financial institution?
18     A.  I think it was SouthTrust.
19     Q.  Okay.  And was it a CD or
20 something of that nature, do you remember?
21     A.  Yes.
22     Q.  Did Margaret actually sign a
23 check, or anything to that affect,
24 transferring the money to you or your
25 husband?

301 Title Building/300 21st Street North
Birmingham, Alabama  35203

78

1      A.  I don't remember.
2      Q.  Okay.  Did you actually help
3  perpetrate that transaction?
4      A.  No.
5      Q.  Okay.  You didn't assist in
6  closing any accounts or writing any
7  checks?
8      A.  No.
9      Q.  Okay.  Did Margaret have a
10 clear understanding of exactly how much
11 money was being obtained from her, to
12 build that garage?
13     A.  Yes.
14     Q.  Are there any sort of writings,
15 promissory notes, anything to that affect,
16 reflecting the details of this agreement?
17     A.  No.
18     Q.  Okay.  It was just an oral
19 agreement?
20     A.  Yes.
21     Q.  Okay.  Now was that 86 thousand
22 dollars and change, that was received from
23 Margaret, used solely to build the garage?
24     A.  No.
25     Q.  Okay.  What else was it used

301 Title Building/300 21st Street North
Birmingham, Alabama  35203

79

1  for?
2      A.  I think we used some to do the
3  deck, out her area, the pavers, so she'd
4  have a porch.
5      Q.  Was it used for anything else?
6      A.  Not that I know of.
7      Q.  Did you ever provide any sort
8  of accounting to Margaret concerning the
9  use of those funds?
10     A.  No.
11     Q.  And again, you had Power of
12 Attorney on behalf of Margaret during the
13 time that those proceeds were spent on the
14 construction of the garage, correct?
15     A.  Yes.
16     Q.  Okay.  Well, do you have any
17 opinion as to whether you owed her an
18 accounting of how those funds were spent?
19     A.  If she wanted to see them.
20     Q.  Would you be able to provide me
21 with an accounting of how those funds were
22 spent?
23     A.  No.
24     Q.  But you do have -- you and your
25 husband have produced to me, what appears

301 Title Building/300 21st Street North
Birmingham, Alabama  35203

80

1  to be a construction file.  I don't know
2  if this was a file that y'all maintained,
3  or if it was one that came from the
4  builder.  It appears that most, if not
5  all, of the work that was done on your
6  house is itemized throughout that file.
7  If you were to look through it, would you
8  be able to determine which work and which
9  invoices corresponded with Margaret's
10 living space, or with the detached garage?
11     A.  I couldn't.
12     Q.  You couldn't?
13     A.  No.
14     Q.  You think your husband might be
15 able to?
16     A.  I don't know.
17     Q.  Okay.  Now, did you or your
18 husband have an agreement with Margaret
19 that the monies you received from her to
20 build the garage would be considered a
21 loan?
22     A.  Yes.
23     Q.  Okay.  When was that agreement
24 made?
25     A.  I don't remember.

301 Title Building/300 21st Street North
Birmingham, Alabama  35203

81

1    Q.   Do you remember what the terms
2  of that agreement were?
3    A.   That we would use it to build
4  out the garage, and -- she wanted to give
5  it to us.  And Wayne said, "no, it's a
6  loan."  And that we were to use it to
7  build out the garage and finish up her --
8  do a porch for her.  And that if she
9  needed it, she'd let us know.  And that if
10  she was to die prior to us paying it back,
11  that the debt was forgotten.
12    Q.   So there was no date certain,
13  by which the loan was to be repaid?
14    A.   No.
15    Q.   Okay.  And there are no
16  documents memorializing this agreement?
17    A.   No.
18    Q.   Do you know why this agreement
19  was not put into writing?
20    A.   No.
21    Q.   Okay.  So as I understand it,
22  the loan was to be repaid to the extent
23  that Margaret needed the money; is that
24  correct?
25    A.   Yes.

301 Title Building/300 21st Street North
Birmingham, Alabama  35203

82

1    Q.   And if she died, then, whatever
2  was still owed on the loan would be
3  forgiven, correct?
4    A.   Yes.
5    Q.   Okay.  Do you consider that a
6  rather unusual loan agreement?
7    MR. GRAY:  Object to the form.
8  You can answer.
9    A.   I'm sorry, can you repeat that?
10    Q.   Yes, ma'am.  Do you consider
11  that a rather unusual loan agreement?
12    A.   No.
13    Q.   Well, let's say that y'all had
14  gone to SouthTrust Bank, whoever y'all
15  were using at the time, and borrowed money
16  to build the garage.  You expect they
17  would have wanted you to pay it back by a
18  date certain?
19    A.   Yes.
20    Q.   Okay.  And you were her
21  Attorney In Fact at that time, correct?
22    A.   Yes.
23    Q.   Under the Power of Attorney?
24    A.   Yes.
25    Q.   Okay.  Did you ever inquire

301 Title Building/300 21st Street North
Birmingham, Alabama  35203

83

1  with any sort of professional, whether it
2  be an accountant or your attorney or
3  whoever, as to whether that agreement
4  should be put in writing?
5    A.   No.
6    Q.   Okay.  How would it be
7  determined whether Margaret needed to be
8  repaid?  I think that's the term that you
9  used, correct?  She would be repaid as she
10  needed it?
11    A.   Yes.
12    Q.   Okay.  Who would make that
13  determination?
14    A.   She would.
15    Q.   Okay.  No questions asked, if
16  she said she needed it, you would repay
17  it?
18    A.   If she needed it.
19    Q.   Okay.  Does that still hold
20  true?
21    A.   Yes.
22    Q.   Okay.  What's the current
23  amount of mortgage indebtedness on your
24  lake residence?
25    MR. GRAY:  I'm going to object

301 Title Building/300 21st Street North
Birmingham, Alabama  35203

84

1  to that.  Can you give me some basis that
2  would be relevant to this case?
3    MR. SCHOEL:  Sure.  I think
4  it's probative of the value of the home,
5  and also the relative financial positions
6  of the two parties, which goes to the
7  ultimate question of fairness or
8  unfairness of this transaction.  I mean,
9  you know --
10    MR. GRAY:  Fairness or
11  unfairness, I mean --
12    MR. SCHOEL:  Well, you know,
13  again, the relative financial positions of
14  the parties.  I mean, you know, their net
15  worth compared to Margaret's net worth.
16    MR. GRAY:  Give me a minute
17  with my clients.  Let me talk to them
18  about it.
19
20    (Whereupon, a break was taken.)
21
22    MR. GRAY:  Probably going to
23  let her answer that question, but
24  with the understanding that she's
25  probably not going to know financial

301 Title Building/300 21st Street North
Birmingham, Alabama  35203

# Exhibit F

ASSOCIATED COURT REPORTERS, LLC

(205) 251-4227 / FAX (205) 251-4224                    1

1          IN THE CIRCUIT COURT OF

2          CHILTON COUNTY, ALABAMA

3

4     MARGARET N. MARTIN,                    COPY

5          Plaintiff,

6

7          vs.              CIVIL ACTION #:
                            CV 05-336-B
8

9     WAYNE MYRICK and
      LYNN MYRICK,

10

11         Defendants.

12

13

14

15         DEPOSITION OF WAYNE MYRICK

16

17    The Deposition of **WAYNE MYRICK** was

18    taken before Lori E. Defnall, Notary

19    Public, on Monday, February 5, 2007, at

20    Natter & Fulmer, PC, Birmingham,

21    Alabama, commencing at 2:17 p.m.,

22    pursuant to the stipulations set forth

23    herein:

24

25

301 Title Building/300 21st Street North
Birmingham, Alabama  35203

1          if you could just read that for me,

2          I think that'd be the best way to do

3          that?

4               A.     14.

5               Q.     14(b).                                    02:49:34P

6               A.     "Whether such proceeds received

7      by you or your spouse were considered a

8      loan, a gift, or compensation.  Said

9      proceeds were not considered a loan, gift

10     or compensation but were received as part    02:49:50P

11     of the agreement for Margaret Martin to

12     reside in our household until she was

13     physically unable to do so."

14              Q.     Okay.  So you don't think it

15     was any one of those things, a loan, gift,    02:50:00P

16     or compensation?

17              A.     That what was one of those

18     things?

19              Q.     The 114 thousand dollars that

20     y'all obtained from Margaret?                 02:50:12P

21              A.     It wasn't a loan.  In some ways

22     it could be considered a gift or

23     compensation.  I'm not sure what the right

24     word for that agreement would be.

25              Q.     And you know, I was trying to

1    figure out, you know, if it's not one of

2    those three things, I just didn't know

3    what would really be left, you know, to

4    classify it as.  But you know, I didn't

5    know if you had some different                          02:50:34P

6    understanding of what it was?

7          A.    "Funds received as part of the

8    agreement from Ms. Margaret to reside in

9    our household until she was physically

10   unable to do so."  That's what I                        02:50:54P

11   understood it to be.

12         Q.    Okay.  Jim, we may need his tax

13   returns for that year.  Those may give

14   some sort of indication as to how this was

15   classified, if it's addressed in there.                02:51:16P

16   Would you be able to get  hold of those?

17         MR. GRAY:  I'm sure he can get

18   hold of them.  It's just a matter of

19   whether we feel like it'd be appropriate

20   to give them to you.                                    02:51:28P

21         MR. SCHOEL:  Well, I mean, and

22   my argument for that is the same, that,

23   you know, not only does it go to the, you

24   know, the issue of, you know, the relative

25   financial positions of these parties, and             02:51:40P

1    assemble, essentially, an accounting of

2    how those, the 114 thousand dollars was

3    spent?

4         A.    No.

5         Q.    So you can not positively                    02:58:36P

6    contend that it was only spent on

7    Margaret's living space; is that correct?

8         A.    All I can contend is, that we

9    had a cost-plus arrangement with the

10   builder, and we build out the downstairs      02:58:54P

11   according to Aunt Margaret's wishes.  And

12   that's what I can testify to.

13        Q.    When did you build the garage,

14   the detached garage at your residence?

15        A.    It was towards the end of the       02:59:20P

16   construction project.  Once we had framed

17   out all the space that she wanted to have,

18   which I think was about 22 hundred square

19   feet, there was very little left in the

20   basement.  And the further we got along       02:59:38P

21   with doing that work, the more apparent it

22   became that we really didn't have any

23   space to do anything, as far as storing

24   things, that we needed to store, outside

25   the living area.                              02:59:52P

ASSOCIATED COURT REPORTERS, LLC

(205) 251-4227 / FAX (205) 251-4224            46

1      Q.    Yes, sir.

2      A.    And we had talked about that

3    some with her.  And so, she had said she'd

4    be willing to give us the money to build a

5    separate garage.  And we said we didn't          03:00:06P

6    think that would be appropriate.  But that

7    we would consider it a loan.  And so, at

8    that point in time, it probably would have

9    been late February, middle to late

10    February, probably.  And we got with a           03:00:20P

11    builder, and I think, got them to add a

12    garage.

13      Q.    Now there was already a garage

14    on the basement level anyway, wasn't

15    there?                                           03:00:36P

16      A.    Yes.  There was a single door

17    garage.

18      Q.    And was it segregated, was it

19    walled off and everything, from the rest

20    of the basement space?                           03:00:44P

21      A.    Uh-huh.

22      Q.    Okay.  Now how much did you

23    ultimately wind up borrowing from Margaret

24    to build that garage?

25      A.    It was between 86, 87 thousand          03:01:02P

301 Title Building/300 21st Street North
Birmingham, Alabama  35203

1    dollars, I believe.

2          Q.    Okay.  And do you know how much

3    it actually wound up costing to build that

4    garage?

5          A.    Again, that was just part of                03:01:16P

6    the cost-plus agreement with the builder,

7    and would have been included in the total

8    billings that he billed us.

9          Q.    Now how was that 86 thousand

10   dollars obtained from Margaret?                          03:01:34P

11         A.    I believe that she had two CDs

12   that had matured.  And I believe those

13   were the two CDs that she used, to front

14   that loan.

15         Q.    Okay.  Do you remember which               03:01:54P

16   financial institution --

17         A.    Huh-uh.

18         Q.    -- where these CDs were held?

19         A.    No.  I didn't have, little or

20   anything to do with any of that.                        03:02:14P

21         Q.    Did she write you a check for

22   that 86 thousand dollars?

23         A.    I don't know.  I didn't handle

24   that.

25         Q.    You didn't deposit the funds?             03:02:32P

ASSOCIATED COURT REPORTERS, LLC

(205) 251-4227 / FAX (205) 251-4224                    48

1        A.    I didn't, no.

2        Q.    Do you know for certain whether

3    that 86 thousand dollars was used solely

4    to fund the garage?

5        A.    Are you -- I mean, are you                03:03:00P

6    asking, do I know if the 86 thousand

7    dollars was all to the expense of building

8    --

9        Q.    Yes, sir.  Used specifically

10   for the garage?                                     03:03:08P

11       A.    I don't know that.

12       Q.    Okay.  And your understanding

13   was that the 86 thousand dollars would be

14   considered a loan, correct?

15       A.    That's correct.                           03:03:24P

16       Q.    And again, what were the terms

17   of that loan agreement with Margaret?

18       A.    The terms were, that if she

19   ever needed those funds for living or her

20   health expenses, that then we would refund  03:03:44P

21   that money and pay that as she needed it.

22       Q.    Are there any documents

23   memorializing that agreement?

24       A.    Not that I'm aware of.

25       Q.    Do you know why that agreement         03:04:12P

301 Title Building/300 21st Street North
Birmingham, Alabama  35203

ASSOCIATED COURT REPORTERS, LLC

(205) 251-4227 / FAX (205) 251-4224                    49

1    was never put into writing?

2          A.    She didn't request it be done,

3    and I didn't think it was necessary

4    either.   I guess neither one of us thought

5    it necessary.                                              03:04:28P

6          Q.    How would it be determined

7    whether Margaret needed to be repaid any

8    of those funds?

9          A.    Well again, our discussions

10   with her was that if she needed those       03:05:04P

11   funds for living expenses or medical

12   needs, that would be something that we

13   would begin to repay, according to her

14   need.

15         Q.    Okay.  Now --                               03:05:18P

16         A.    Other than that, there is no

17   other agreement.

18         Q.    All she had to do was ask?

19         A.    That would be correct.

20         Q.    Okay.  She wouldn't have to       03:05:26P

21   provide proof that she needed it, say,

22   bills or some sort of other proof that she

23   was in dire financial circumstances?

24         A.    I've told you all that exist

25   with the agreement.                                      03:05:38P

301 Title Building/300 21st Street North
Birmingham, Alabama   35203