IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

STATE FARM FIRE AND   *
CASUALTY COMPANY,   *
  *
   Plaintiff,   *
  *
vs.   *   Case No.: 2:06 CV-359-CSC
  *
WAYNE MYRICK, and   *
LYNN MYRICK,   *
  *
   Defendants.   *

## AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

The original complaint (doc. 1) filed by plaintiff **State Farm Fire and Casualty Company** ("State Farm") sought a judicial determination of the duties, rights, obligations and responsibilities that existed between State Farm and Wayne and Lynn Myrick ("the Myricks") with regard to a Personal Liability Umbrella Policy issued to the Myricks by State Farm. Specifically, State Farm sought declaratory relief related to claims filed against the Myricks by Margaret N. Martin ("Martin") in a lawsuit then pending in Chilton County, Alabama. Because the underlying litigation is now complete and dismissed, State Farm hereby amends the Original Complaint by removing Martin as a named Defendant. Furthermore, State Farm presents an additional claim for a judicial determination of the duties, rights, obligations, and responsibilities that exist between it and the Myricks arising out of

a second policy of insurance , specifically a Homeowners Policy.

State Farm hereby sets forth the following:

1.    An actual controversy of a justiciable nature exists between State Farm and the defendants involving the rights, interest, and liabilities under two policies of insurance issued by State Farm to Wayne Myrick and Lynn Myrick, as later discussed.  Both policies of insurance have potential policy limits in excess of the amount to support jurisdiction of this Court.

2.    The jurisdiction in this case is pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and diversity of citizenship, 28 U.S.C. § 1332.

3.    State Farm is an insurance company organized under the laws of the state of Illinois, with its principal offices located in the state of Illinois and is authorized to do business in the state of Alabama.

4.    Defendant Wayne Myrick is an individual over the age of nineteen (19) years residing in Chilton County, Alabama.

5.    Defendant Lynn Myrick is an individual over the age of nineteen (19) years residing in Chilton County, Alabama.

6.    Margaret Martin is the aunt of Lynn Myrick.

7.    In November, 2002, Margaret Martin suffered a stroke after which Martin was advised by her doctor that she should not live alone.

8.    Margaret Martin asked the Myricks if she could move in with them.

-2-

9.    In exchange for the Myricks providing a place for Margaret Martin to live, Martin agreed to give the Myricks the proceeds from the sale of her house.

10.    Margaret Martin's house in Crestwood, Alabama, sold in the first quarter of 2003, for a net profit of over $114,000.

11.    At the closing on the sale of Margaret Martin's house, Margaret Martin endorsed the closing check directly over to the Myricks.

12.    The $114,484.62 received from Margaret Martin after the sale of her house in Crestwood was deposited into the Myricks' construction account at First Commercial Bank.

13.    The money from the sale of Margaret Martin's home was to be used by the Myricks to finish out the basement in the home they were constructing on the lake.

14.    Martin's living quarters in the basement of the Myrick home consisted of a dining room, a kitchen, a den, a nook, a master bedroom with a sitting area, a full bathroom and two walk-in closets and a guest bedroom with a sitting area and another full bath.

15.    There were never any written plans for the build out of the basement area to provide the living quarters for Martin.

16.    The money the Myricks received from Martin was commingled with the funds set aside by the Myricks for the construction of the house on the lake.

17.     No accounting was ever provided to Martin which detailed how the funds that Martin provided to the Myricks from the sale of the Crestwood house were used.

18.     Margaret Martin executed a Last Will and Testament on March 25, 2003, wherein she stated she gave the Myricks all interest in the property she occupied at her death, that her estate held no legal title to the Myricks' home and that the Myricks were not indebted to her estate for the money spent on finishing the basement for her use.

19.     On January 2, 2003, Margaret Martin executed a Durable Power of Attorney in favor of Lynn Myrick. Lynn Myrick agrees that under the Durable Power of Attorney she was the Attorney of Fact.

20.     Lynn Myrick understood she had a duty to act in the best interests of Margaret Martin under the terms of the Power of Attorney.

21.     The Myricks borrowed an additional $86,000+ from Margaret Martin to construct a garage.

22.     The terms of the loan regarding the additional $86,000+ were never reduced to writing.

23.     As the loan agreement was understood by Wayne Myrick, the Myricks would repay the $86,000 to Martin according to Martin's needs.

24.     In the event of Martin's death, Wayne Myrick understood that any

amount owed on the loan would be cancelled or satisfied as paid in full.

25.     On or about January 9, 2004, and January 14, 2004, Lynn Myrick wrote checks on Margaret Martin's checking account at National Bank of Commerce, each check in the amount of $2,500.

26.     On or about June 2, 2004. Defendant Lynn Myrick again withdrew funds from Margaret Martin's checking account at National Bank of Commerce, in the amount of $1,100.

27.     The refrigerator for the living space was purchased with Martin's funds.

28.     The Myricks refused to allow Margaret Martin to remove a refrigerator from Martin's basement living quarters after Martin moved to Texas.

29.     In total, Martin alleged that over $227,000 of her money was misappropriated by the Myricks for their use and benefit.

30.     On August 22, 2004, Ms. Vikki Hooker Fisher from College Station, Texas, sent a certified letter to Defendant Wayne Myrick. In the letter she introduced herself as "acting as the agent for Margaret Martin." The letter made a demand for the repayment of monies in an amount that totaled approximately $239,300 and threatened litigation if such monies were not repaid.

31.     On October 8, 2004, Defendant Wayne Myrick responded to Ms. Fisher's letter by setting forth the reasons why he and Defendant Lynn Myrick did not owe the amount that had been demanded. Defendant Wayne Myrick further informed

Ms. Fisher there was a general liability policy in place that would defend them against any lawsuits that might be filed regarding the matter.

32.   State Farm, as the insurer of the Myricks, did not receive notification of the controversy between the Myricks and Martin until February 25, 2005, when Defendant Wayne Myrick submitted a copy of a letter he had received from a Texas attorney dated February 15, 2005.  In the letter, attorney Scott James from Waco, Texas, made a demand for $86,469.07 for full and final settlement of all claims made by Martin against the Myricks.  The Myricks and Martin did not reach an agreement as to Martin's claims, and the Myricks did not repay any money loaned to them by Martin.

33.   On or about November 23, 2005, the Myricks were sued in the Circuit Court of Chilton County, Alabama, by Martin[1] for undue influence, fraud-deceit and fraudulent inducement, conversion, conspiracy to defraud, conspiracy to convert, and breach of fiduciary duty in regard to the Myricks' handling of money provided by Martin and the Myricks' management of Martin's financial affairs.

34.   In the underlying action, Martin contended that the Myricks conducted her financial affairs in a manner that provided unjust enrichment for the Myricks;

---

[1]The underlying and recently dismissed lawsuit was styled *Margaret N. Martin vs. Wayne Myrick and Lynn Myrick*, Circuit Court of Chilton County, Alabama, Civil Action No. CV-05-336-B.

specifically, that Martin's personal monies were used for the construction of and additions to the Myricks' personal residence on a lake near Verbena, Alabama, which primarily benefitted the Myricks.

35.    Martin also contended that undue influence was used by the Myricks to obtain an executed Durable Power of Attorney appointing Defendant Lynn Myrick as Martin's attorney-in-fact.  The Durable Power of Attorney gave Defendant Lynn Myrick the power to conduct financial affairs on behalf of Ms. Martin with respect to Martin's various bank accounts.

36.    Martin further contended that the Myricks represented to her that the monies being used for the construction of the residence were to be loans that would be repaid.  Martin contended the Myricks conspired and collaborated with each other to convert Martin's funds to their personal use under the representation the funds were loans that would be repaid.  Martin specifically contended that Lynn Myrick breached her fiduciary duty to use the powers conveyed in the Durable Power of Attorney for the sole benefit of Ms. Martin.

37.    At all times applicable to this matter, the Myricks were insured under a Personal Liability Umbrella Policy issued jointly in their names.  Said policy was in full force at all times applicable to this matter.  A copy of the personal liability umbrella policy, (hereinafter "PLUP Policy"), bearing policy number 01-BY-3095-2 and the declarations page setting forth the policy limits is attached hereto as Exhibit

"A."

38.     At all times applicable to this matter, the Myricks were also insured under a <u>Homeowners Policy</u> issued jointly in their names.  Said policy was also in full force at all times applicable to this matter.  A copy of the homeowners policy, (hereinafter "HO Policy"), bearing policy number 01-E6-4730-0 and the declarations page setting forth the policy limits is attached hereto as Exhibit "B."

39.     State Farm provided a defense  for the Myricks under the PLUP Policy pursuant to a reservation of rights letter for the duration of the underlying litigation.  In fact, upon filing a motion for summary judgment in the underlying lawsuit, defense counsel retained by State Farm successfully obtained the dismissal of Martin's claims of fraud, deceit, fraudulent inducement and conspiracy.

40.     On September 18, 2007, the underlying litigation was brought to a close when Martin, through her legal guardian Paula McClung, executed a Release and Settlement Agreement under which there was "no admission of wrongdoing or liability" and that all claims and allegations in the underlying action "remain[ed] contested, disputed, and denied."  As consideration for the Release and Settlement Agreement, the Myricks paid Martin $125,000.00.  Whether or not State Farm has a duty to indemnify the Myricks  for the underlying action forms the basis of this Declaratory Judgment.

## PERSONAL LIABILITY UMBRELLA POLICY

41.    Regarding coverage under the PLUP Policy, the contract language states:

    1.    **Coverage L - Personal Liability.** If you are legally obligated to pay damages for a **loss**, we will pay your **net loss** minus the **retained limit.** Our payment will not exceed the amount shown on the **Declarations** as Policy Limits - Coverage L - Personal Liability.

Exhibit "A," Certified PLUP Policy, p.3, ¶ 1, SF-00007

42.    The Plup Policy contains the following definitions:

    6.    "**loss**" means:

        a.    an accident, including injurious exposure to condition, which results in **bodily injury** or **property damage** during the policy period. Repeated or continuous exposure to the same general condition is considered one **loss**; or

        b.    the commission of an offense, or series of similar or related offenses which result in **personal injury** during the policy period.

Exhibit "A," Certified PLUP Policy, Policy Endorsement, FE-7786, **DEFINITIONS**, SF-00014

    8.    "**net loss**" means:

        a.    the amount you are legally obligated to pay as damages for **bodily injury, personal injury** or **property damage**; and

        b.    all reasonable expenses you incur in the investigation, settlement and defense of a claim or suit at our request. This does not include expenses covered by another policy, expenses we cover under **Defense and Settlement** section of this policy, and salaries of your employees.

Exhibit "A," Certified PLUP Policy, Policy Endorsement, FE-7786, **DEFINITIONS**, SF-00015

9.    **"personal injury"** means injury caused by one or more of the following offenses:

    a.    false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution;

    b.    libel, slander, defamation of character or invasion of rights of privacy.

Exhibit "A," Certified PLUP Policy, Policy Endorsement, FE-7786, **DEFINITIONS**, SF-00015

11.    **"property damage"** means physical injury to or destruction of tangible property. This includes the loss of use caused by the injury or destruction.

Exhibit "A," Certified PLUP Policy, page 2, ¶ 11, SF-00006

14.    **"retained limit"** means:

    a.    the total limits of liability of your underlying insurance; or

    b.    the amount shown on the **Declarations** as the "Self-Insured Retention." This amount applies only if this policy applies but your required underlying insurance policy does not include coverage for the **loss**.

Exhibit "A," Certified PLUP Policy, page 2, ¶ 11, SF-00006

17.    **"bodily injury"** means physical injury, sickness, disease, emotional distress or mental injury to a person. This includes required care, loss of services and death resulting therefrom.

**Bodily injury** does not include:

    a.    any of the following which are communicable: disease, bacteria, parasite, virus, or other organism any of which are transmitted by any **insured** to any other person; or

      b.    the exposure to any such disease bacteria, parasite, virus or other organism by any insured to any other person.

Exhibit "A," Certified PLUP Policy, Policy Endorsement, FE-7786, **DEFINITIONS**, SF-00014

43.    The PLUP Policy contains the following exclusions:

We will not provide insurance:

\* \* \* \*

2.    for **bodily injury** or **property damage**:

    a.    which is either expected or intended by you; or

    b.    to any person or property which is the result of your willful and malicious act, no matter at whom the act was directed.

Exhibit "A,"Certified PLUP Policy, Policy Endorsement, FE-7786, **EXCLUSIONS** 2., SF-00015

3.    for **property damage** to:

    a.    your own property;

Exhibit "A," Certified PLUP Policy, page 4, ¶ 11, SF-00008

44.    The PLUP Policy sets forth certain conditions that must be met by the insured:

### YOUR DUTIES TO US

These are the things you must do for us. We may not provide coverage if you refuse to:

1.    notify us of an accident. If something happens that might involve this policy, you must let us know promptly. Send written

notice to us or our agent. Include the names and addresses of the injured and witnesses. Also include the time, place and account of the accident.

2.    notify us of a claim or suit. If a claim or suit is filed against you, notify your underlying insurer and us right away. You must send us every demand, notice, summons or other process you receive.

Exhibit "A," Certified PLUP Policy, page 6, **YOUR DUTIES TO US**, 1., 2., SF-00010

## HOMEOWNERS POLICY

45.    In regard to Liability Coverages under the HO Policy in Section II, the

contract language states:

### COVERAGE L - PERSONAL LIABILITY

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage,** to which this coverage applies, caused by an **occurrence**, we will:

1.    pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2.    provide a defense at our expense by counsel of our choice. . . .

Exhibit "B", Certified HO Policy, p. 15, SF-00036

46.    The HO Policy contains the following definitions:

1.    **"bodily injury"** means physical injury, sickness, or disease to a person. This includes required care, loss of services and death resulting therefrom.

**Bodily injury** does not include:

a.    any of the following which are communicable: . . . .

-12-

b.    the exposure to any such disease, bacteria, parasite, . . . .

c.    emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

Exhibit "B", Certified HO Policy, p. 1, SF-00022

7.    **"occurrence"**, when used in Section II [Liability Coverages] of this policy, means an accident, including exposure to conditions, which results in:

a.    **bodily injury;** or

b.    **property damage** . . . .

\* \* \* \*

8.    **"property damage"** means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any **insured** is not **property damage.**

Exhibit "B", Certified HO Policy, p. 2, SF-00023

47.    The HO Policy contains the following exclusions under **SECTION II - LIABILITY COVERAGES**:

1.    Coverage L . . . does not apply to:

a.    **bodily injury** or **property damage**:

(1)    which is either expected or intended by the **insured**; or

(2)    which is the result of willful and malicious acts of the **insured**;

Exhibit "B", Certified HO Policy, p. 16, SF-00037

-13-

48.  The HO Policy sets forth certain conditions that must be met by the insured:

3.  **Duties After Loss.**  In case of an accident or **occurrence**, the **insured** shall perform the following duties that apply.  You shall cooperate with us in seeing that these duties are performed:

a.  give written notice to us or our agent as soon as practicable which sets forth:

(1)  the identity of this policy and **insured;**

(2)  reasonable available information on the time, place and circumstances of the accident or **occurrence**; and

(3)  names and addresses of any claimants and available witnesses;

b.  immediately forward to us every notice, demand, summons or other process relating to the accident or **occurrence**.

Exhibit "B", Certified HO Policy, p. 18, SF-00039

49.  By virtue of the above described provisions which exist in the respective policies, and the information currently available to State Farm, State Farm contends there is no coverage available to the Myricks under either the PLUP Policy or the HO Policy, and that State Farm is not required to indemnify the Myricks for the claims and damages alleged against them by Ms. Martin.  Accordingly, State Farm assets that it has no duty to indemnify the Myricks for the claims so alleged under either policy.  Due to the settlement, any issues based on the duty to defend is now moot.

**WHEREFORE, the above premises considered,** Plaintiff State Farm Fire and

-14-

Casualty Company seeks the following relief:

A.      That the Court declare no "loss" has occurred as defined and covered by the PLUP policy.

B.      That the Court declare no "occurrence" as occurred as defined and covered by the HO Policy.

C.      That the Court declare Plaintiff State Farm Fire and Casualty Company has no duty to indemnify Wayne Myrick and Lynn Myrick in or as a result of the lawsuit brought by Martin against the Myricks in The Circuit Court of Chilton County, Alabama, which alleges intentional acts by the insureds and other acts duly excluded under the PLUP Policy.

D.      That the Court declare Plaintiff State Farm Fire and Casualty Company has no duty to indemnify Wayne Myrick and Lynn Myrick in the lawsuit brought by Martin against the Myricks in The Circuit Court of Chilton County, Alabama, which alleges intentional acts by the insureds and other acts duly excluded under the HO Policy.

E.      That upon consideration of this action, this Court will enter a judgment declaring the duties, rights, obligations, and responsibilities existing under the PLUP Policy and under the HO Policy between and among the various parties hereto, and declare the following:

(a)     That no coverage exists pursuant to the terms contained within

the PLUP Policy for the claims asserted by Martin against the Myricks.

(b)     That no coverage exists pursuant to the terms contained within the HO Policy for the claims asserted by Martin against the Myricks.

(c)     That State Farm has no obligation, duty or liability under the PLUP Policy issued to the Myricks regarding the above referenced incidents including, but not limited to, any duty to indemnify the Myricks for the claims asserted by Martin.

(d)     That State Farm has no obligation, duty or liability under the HO Policy issued to the Myricks regarding the above referenced incidents including, but not limited to, any duty to indemnify the Myricks for the claims asserted by Martin.

F.     That the Court declare the Myricks have breached their obligations under the contract by failing to provide prompt notice of a potential liability involving the policy.

G.     That the Court grant Plaintiff State Farm Fire and Casualty Company such other, further, and different general relief to which it may be entitled.

RESPECTFULLY SUBMITTED this the 3 day of DECEMBER, 2007.

/s/ Bert S. Nettles
Bert S. Nettles (ASB-5850-S63B)
C Dennis Hughes (ASB-1033-H65C)
John H. McEniry, IV (ASB-9509-J72M)

**OF COUNSEL**:
HASKEL SLAUGHTER YOUNG & REDIKER, LLC
1400 ParkPlace Tower
2001 Park Place North
Birmingham, Alabama 35203
(205) 251-1000

Michael B. Beers (ASB 4992-S80M)
Micheal S. Jackson (ASB 8173-O78M)
Constance T. Buckalew (ASB 3785-L68C)
Angela C. Taylor (ASB 2713-L75T)

**OF COUNSEL**:
BEERS, ANDERSON, JACKSON, PATTY & FAWAL, P.C.
P. O. Box 1988
Montgomery, Alabama  36102-1988
Telephone:  (334) 834-5311
Facsimile:  (334) 834-5362
E-mail:     mbeers@beersanderson.com

Counsel for Plaintiff/Counterclaim Defendant State
Farm Fire and Casualty Company

## CERTIFICATE OF SERVICE

I hereby certify that on this the 3 day of December, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following party or attorney of record in this action:

Timothy M. Fulmer, Esq.
David O. Schoel, Esq.
**NATTER & FULMER, P.C.**
3800 Colonnade Parkway
Suite 450
Birmingham, Alabama  35243
*Counsel for Margaret Martin*

James A. Kee, Jr., Esq.
Jon M. Hughes, Esq.
Cynthia A. Martin, Esq.
**KEE & SELBY, L.L.P.**
1900 International Park Drive
Suite 220
Birmingham, Alabama  35243
*Counsel for Wayne & Lynn Myrick*

/s/ Bert S. Nettles
Of Counsel

# EXHIBIT A

# State Farm Fire and Casualty Company®



Birmingham Operations Center
100 State Farm Parkway
P.O. Box 2661
Birmingham, Alabama 35297-0001

## CERTIFICATE

I, the undersigned, do hereby certify that I am custodian of the
records pertaining to the issuance of policies issued by the
AL Personal Lines     Division of State Farm Fire and Casualty Company
of Birmingham, AL.

Based on our available records, I further certify that the attached
Coverage Summary  dated MAR 05, 2004 represents a true copy
of the policy provisions and coverages as of MAR 22, 2004 for policy
01-BY-3095-2 issued to  MYRICK, DONALD WAYNE & LYNN
                        60 COUNTY RD 1000
                        VERBENA, AL  36091-3601

_Bill Lovell_

Bill Lovell
Underwriting Section Manager
State Farm Fire and Casualty Company



**SF-Myrick**
**SF-00001**

State Farm Fire and Casualty Company
100 State Farm Parkway
Birmingham, AL 35297-0001

D-2070 F293  FL

MYRICK, DONALD WAYNE & LYNN
60 COUNTY RD 1000
VERBENA AL  36091-3601

**RENEWAL CERTIFICATE**

| POLICY NUMBER | 01-BY-3095-2 |

Personal Liability Umbrella Policy
MAR 22 2004 to MAR 22 2005

| DATE DUE | PLEASE PAY THIS AMOUNT |
|---|---|
| APR 09 2004 | $324.00 |

**COVERAGES AND LIMITS**
L  Personal Liability                    $1,000,000
   Self Insured Retention                None

**UNDERLYING EXPOSURES**
Our records show the following underlying
information. This information was used in
determining the rate of the policy.
**AUTOMOBILE EXPOSURES**
Automobile Liability                     3 Autos
Automobile Operators                     3
Youthful Operator                        1

**OTHER LIABILITY EXPOSURES**
Personal Res Liability
Watercraft Liability

**Forms and Endorsements**
Personal Liability Umbrella          FP-7950.1
Policy Endorsement                   FE-7786
Driver Exclusion Endorsement         FE-7637.1
Fungus "Including Mold" Excl       * FE-5717

*Effective: MAR 22 2004

Annual Premium                          $324.00
Amount Due                              $324.00

*Notify your agent immediately if the above listed Coverages and/or Underlying Exposures are incorrect.
Your Coverages and/or bill can be affected if this information is not correct.

NOTICE: Information concerning changes in your policy language is included. Please call your agent if
you have any questions.

*Thanks for letting us serve you.*
STAN WHITE
(205) 425-3280

Prepared  MAR 05 2004

38 3193 1785

See reverse side for important information.
Please keep this part for your record.

IF YOU HAVE MOVED, PLEASE CONTACT YOUR AGENT.    D-2070-F293  F   L

| | PLEASE RETURN THIS PART WITH YOUR CHECK MADE PAYABLE TO STATE FARM |

INSURED  MYRICK, DONALD WAYNE & LYNN

| POLICY NUMBER | 01-BY-3095-2 | PERS LIAB UMB |

| DATE DUE | PLEASE PAY THIS AMOUNT |
|---|---|
| APR 09 2004 | $324.00 |

Please contact your State Farm
Agent to make any policy
changes

0909405247
State Farm Insurance Companies

132-2070-15 Rev. 02-2004  Printed in U.S.A.  (0103103)

Prepared  MAR 05 2004
E  LF,8

| | | | REB | FIRE REN | $324.00 | 0524 |

300414500032400   70111235309520150 9>

SF-Myrick
SF-00002



# YOUR
# STATE FARM
# PERSONAL LIABILITY UMBRELLA
# POLICY

**SF-Myrick**
**SF-00003**

FP-7950.1
(1/87) 

# TABLE OF CONTENTS

## DECLARATIONS

Your Name
Your Mailing Address
Policy Period
Policy Limits
Self Insured Retention
Required Underlying Coverages

|                                      | Beginning on Page |
|--------------------------------------|:-----------------:|
| AGREEMENT                            | 1                 |
| DEFINITIONS                          | 1                 |
| COVERAGE L - PERSONAL LIABILITY      | 3                 |
| DEFENSE AND SETTLEMENT COVERAGE      | 3                 |
| EXCLUSIONS                           | 4                 |
| YOUR DUTIES TO US                    | 6                 |
| OTHER CONDITIONS                     | 6                 |

FP-7950.1
(1/87)

Printed in U.S.A.

**SF-Myrick**
**SF-00004**

# PERSONAL LIABILITY UMBRELLA POLICY

## AGREEMENT

We agree to provide the insurance described in this policy. You agree to pay premium when due and comply with the provisions of this policy.

## DEFINITIONS

In this policy, "you" and "your" refer to the "insured" as defined. "We", "us" and "our" refer to the Company listed in the Declarations. The following definitions are important.

1. "automobile" means a land motor vehicle, trailer or semi-trailer designed for use mainly on public roads. This does not include recreational motor vehicles, farm tractors, trailers or implements.

2. "business" means a trade, profession or occupation.

3. "business property" means premises on which a business is conducted, or property rented or held for rental in whole or in part to others.

4. "Declarations" means the policy Declarations, an amended Declarations, changes added by the most recent renewal notice or certificate, or an endorsement changing any of these.

5. "insured" means:

   a. the named insured;

   b. the following residents of the named insured's household:

      (1) the named insured's relatives; and

      (2) anyone under the age of 21 under the care of a person named above; and

   c. a person or organization while using or holding an automobile, recreational motor vehicle, or watercraft owned by, rented by, or loaned to the named insured, provided that the named insured gave permission for the type of use. A person or organization is not an insured if the use or custody is in the course of an automobile sales or service business or without the named insured's permission.

6. "loss" means an accident that results in personal injury or property damage during the policy period. This includes injurious exposure to conditions.

FP-7950.1
(1/87)

Printed in U.S.A.

**SF-Myrick**
**SF-00005**

7.  **"named insured"** means the person named in the **Declarations** and the spouse. The spouse must be a member of the same household.

8.  **"net loss"** means:

   a.  the amount you are legally obligated to pay as damages for **personal injury** or **property damage**; and

   b.  all reasonable expenses you incur in the investigation, settlement and defense of a claim or suit at our request. This does not include expenses covered by another policy, expenses we cover under the **Defense and Settlement** section of this policy, and salaries of your employees.

9.  **"personal injury"** means:

   a.  bodily harm, sickness, disease, shock, mental anguish or mental injury. This includes required care, loss of services and death resulting therefrom. **Personal Injury** does not include any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any **insured** to any other person. It also does not include the exposure to any such disease, bacteria, parasite, virus, or other organism by any **insured** to any other person.

   b.  false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution or humiliation;

   c.  libel, slander, defamation of character or invasion of rights of privacy; and

   d.  assault and battery.

10. **"private automobile"** means an automobile other than a truck-tractor, its trailer or semi-trailer, or a truck with load capacity of 1 1/2 or more tons. A truck, pick-up, panel or van body vehicle or its trailer is not a **private automobile** while being used for wholesale or retail pick-ups or deliveries.

11. **"property damage"** means physical injury to or destruction of tangible property. This includes the loss of use caused by the injury or destruction.

12. **"recreational motor vehicle"** means a recreational land motor vehicle designed for use off public roads. This includes a motorized all terrain vehicle, amphibious vehicle, dune buggy, golfmobile, snowmobile, trailbike, or minibike.

13. **"relative"** means any person related by blood, adoption, or marriage to the **named insured**.

14. **"retained limit"** means:

   a.  the total limits of liability of your underlying insurance; or

2

SF-Myrick
SF-00006

b. the amount shown on the **Declarations** as the "Self-Insured Retention". This amount applies only if this policy applies but your required underlying insurance policy does not include coverage for the **loss**.

## COVERAGES

1. **Coverage L - Personal Liability.** If you are legally obligated to pay damages for a **loss**, we will pay your **net loss** minus the **retained limit.** Our payment will not exceed the amount shown on the **Declarations** as Policy Limits - Coverage L - Personal Liability.

2. **Defense and Settlement.**

   a. We may investigate, negotiate and settle a claim or suit covered by this policy.

   b. When the claim or suit is covered by this policy, but not covered by any other policy available to you:

      (1) we will defend the suit against you;

      (2) we will pay the premiums on bonds required in suits we defend, but not for bond amounts greater than the Coverage L limit. We are not obligated to apply for or furnish any bond;

      (3) we will pay the expenses we incur and costs taxed against you in suits we defend;

      (4) we will pay the reasonable expenses you incur at our request. This includes actual loss of earnings (but not loss of other income) up to $100 per day for aiding us in the investigation or defense of claims or suits;

      (5) we will pay prejudgment interest awarded against you on that part of the judgment we pay under Coverage L; and

      (6) we will pay the interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court, that part of the judgment which does not exceed the limit of liability that applies.

   c. Payments under Defense and Settlement Coverage, except a settlement payment, are in addition to the Coverage L amount.

   d. Our obligation to defend a claim or suit ends when the amount we pay for damages equals our limit of liability under Coverage L.

3

**SF-Myrick**
**SF-00007**

## EXCLUSIONS

We will not provide insurance:

1. if you are liable under a workers' compensation, unemployment compensation, disability benefits law, or a similar law.

2. for **personal injury** or **property damage**:

   a. which is either expected or intended by you; or

   b. to any person or property which is the result of your willful and malicious act, no matter at whom the act was directed.

3. for **property damage** to:

   a. your own property;

   b. aircraft you rent, use, or hold for others; or

   c. property rented, borrowed or held for which you promised to provide insurance.

4. for any **loss** involving your maintenance, use, handling or ownership of any aircraft.

5. for any **loss** caused by providing or failing to provide a professional service.

6. for any loss caused by your **business** operations or arising out of **business property**:

   a. unless;

      (1) the underlying insurance listed on the **Declarations** provides coverage for the **loss**; and

      (2) the **loss** does not involve an **automobile, recreational motor vehicle, or watercraft**.

   b. however; this exclusion does not apply to a **private automobile** or watercraft when used for **business** if:

      (1) your underlying policy applies to the **loss**; and

      (2) the **private automobile** or watercraft is not for hire either for the use of others or for carrying the property of others.

7. for your legal liability:

   a. to any person who is in your care because of child care services provided by or at the direction of:

      (1) you;

4

**SF-Myrick**
**SF-00008**

(2) your employee; or

(3) any other person actually or apparently acting on your behalf.

b. to any person who makes a claim because of **personal injury** to any person who is in your care because of child care services provided by or at the direction of:

(1) you;

(2) your employee; or

(3) any other person actually or apparently acting on your behalf.

**Defense and Settlement** coverage does not apply to any person indicated in 7.a. or 7.b. above.

This exclusion does not apply to the occasional child care service provided by you; or the part-time child care services provided by any **insured** who is under 19 years of age.

8. for any **loss** caused by your act or omission as a member of a corporation's board of directors. This exclusion does not apply if the corporation:

a. was formed as a not-for-profit corporation; and

b. does not involve your **business.**

9. for a **loss** caused by pollution to land, water or air unless it is sudden and accidental.

10. for **personal injury** to the **named insured**, spouse, or anyone within the meaning of part a. or b. of the definition of **insured**.

11. for any **loss** caused by illegal discrimination.

12. for your share of a loss assessment charged against you as a member of an association of property owners.

13. for any **loss** that is insured by a nuclear energy policy even if the limits of that policy have been exhausted.

14. for any **loss** arising out of:

a. the entrustment by any **insured** to any person;

b. the negligent supervision by any **insured** of any person;

c. any liability statutorily imposed on any **insured**; or

d. any liability assumed through an unwritten or written agreement by any **insured**;

with regard to the ownership, maintenance or use of any aircraft, watercraft or motorized land conveyance unless underlying insurance described in the **Declarations** provides coverage for the loss.

5

**SF-Myrick**
**SF-00009**

15. for any **loss** arising out of your partic-
ipation in, preparation or practice for
any race, speed or demolition contest,
or similar competition involving a mo-
torized land vehicle or motorized
watercraft.

## YOUR DUTIES TO US

These are things you must do for us. We may
not provide coverage if you refuse to:

1. notify us of an accident. If something
happens that might involve this policy,
you must let us know promptly. Send
written notice to us or our agent. In-
clude the names and addresses of the
injured and witnesses. Also include the
time, place and account of the accident.

2. notify us of a claim or suit. If a claim or
suit is filed against you, notify your
underlying insurer and us right away.
You must send us every demand, no-
tice, summons or other process you re-
ceive.

3. help and cooperate with us and your
underlying insurer at all times regard-
ing:

    a. settlement of claims;

    b. enforcement of your rights against
others;

    c. attendance at hearings and trials;

    d. preservation of evidence; and

    e. location of witnesses.

4. maintain your underlying insurance. All
insurance listed in the **Declarations**
must be maintained at all times. The
limits listed in the **Declarations** are
the minimum you must maintain. If the
required underlying limits are not
maintained, you will be responsible for
the underlying limit amount of any loss.
If any of your underlying coverage lim-
its are used up, reduced, or cancelled:

    a. you must try to replace the cover-
age; and

    b. you must notify us immediately.

You must maintain your underlying
coverage if you travel outside the
United States or Canada. If the mini-
mum underlying limits we require are
not available, you must obtain the
highest legally available limit.

## OTHER CONDITIONS

These are the other conditions you should
know:

1. **Reduced Underlying Coverage.** If
your required underlying insurance

does not provide coverage for a **loss**
because:

    a. it limits the amount it will pay in
one year; or

6

**SF-Myrick**
**SF-00010**

b. it provides coverage for a **loss** only if reported while that policy is in effect or within a time period after that policy's termination;

you will be responsible for the underlying limit amount of any **loss**.

2. **Appeals.** If you or your underlying insurer choose not to appeal a judgment that we must help pay, we may choose to make the appeal. If we make the appeal, we will be responsible for:

a. our limit of liability above the **retained limit**; and

b. the additional costs and interest incurred during the appeal.

3. **Payment of Loss.** After your obligation has been set by final judgment or agreement with us:

a. you may pay the **Net Loss** and submit proof to us. We will pay the amount above the **retained limit** up to the Coverage L limit; or

b. we will pay the claimant directly, if you wish.

Our payment under any coverage provided by this policy will not exceed the limit of liability for that coverage listed in the **Declarations** for a **loss**.

4. **Suit Against Us.** No action shall be brought against us unless you have complied with policy provisions. No one has the right to join us in action against you. No action shall be brought against us until your obligation has been set by final judgment or agreement with us.

5. **Other Insurance.** This policy is excess over all other valid and collectible insurance.

6. **Recovery.** You must do all that you can to preserve your rights of recovery. These rights will belong to us up to the amount we pay for a **loss**.

7. **Changes.** Waivers of our rights or changes to this policy must be issued by us in writing.

8. **Assignment.** An assignment of this policy will be valid only after we give our written consent.

9. **Bankruptcy.** If you become bankrupt or insolvent, we will still honor this policy.

10. **Death.** If you die, this policy will cover another person while acting as the personal representative of your estate until the end of the policy period. This applies only with respect to the premises and property covered under this policy at the time of death.

11. **Policy Period.** This policy applies only to **loss** which occurs during the period this policy is in effect.

12. **Cancellation.** This policy can be cancelled by the **named insured** or us.

7

SF-Myrick
SF-00011

a. The **named insured** may cancel by giving written notice to us or our agent. The notice should include the date the policy should be cancelled. If the **named insured** cancels, the refund will be based on our rules for cancellation. We may waive the requirement that the notice be in writing by confirming the date and time of cancellation to the **named insured** in writing.

b. If we choose to cancel the policy, we will send notice to the address shown in the **Declarations**. We will give at least 30 days notice of the date of our cancellation. If we cancel, the refund will be prorated. Proof of mailing shall be sufficient proof of notice.

13. **Non-Renewal.** We may elect not to renew this policy. We may do so by delivering or mailing written notice to the mailing address shown in the **Declarations**. The notice will be delivered or mailed at least 30 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

14. **Liberalization Clause.** If we adopt any revision which would broaden coverage under this policy without additional premium within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

15. **Limit Per Loss.** This insurance applies separately to each **insured**, but our limit of liability per **loss** will be no greater than the individual coverage limit shown in the **Declarations**.

16. **Insolvency.** When coverage is not available from an underlying policy because the company is insolvent, this policy will not replace coverage of any state, provincial or association guarantee fund available for the **loss.**

17. **Mid-Term Changes.** When the **named insured** requests changes in this policy between anniversary dates, we reserve the right to adjust the premium in accordance with the change.

8

SF-Myrick
SF-00012

We have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by our duly authorized representative.

*Laura P. Sullivan*

Secretary

*Edward B Rust. Jr*

President

The Board of Directors, in accordance with Article VI(c) of our Articles of Incorporation, may from time to time distribute equitably to the holders of the participating policies issued by us such sums out of our earnings that they judge are proper.

9

SF-Myrick
SF-00013

## POLICY ENDORSEMENT

### DEFINITIONS

The following are added:

16. When shown on the **Declarations** as "RE-QUIRED UNDERLYING INSURANCE POLICIES", these terms are defined as follows:

    a. "AUTOMOBILE LIABILITY" means your policy which provides coverage for liability caused by the ownership, operation, maintenance or use of any land motor vehicle, trailer or semi-trailer designed for use mainly on public roads. The policy must include Uninsured and/or Underinsured Motor Vehicle Coverage if this coverage is shown on the **Declarations**. Automobile Liability Policy does not include a Recreational Motor Vehicle Liability Policy as defined below.

    b. "RECREATIONAL MOTOR VEHICLE LIABILITY INCLUDING PASSENGER BODILY INJURY" means your policy which provides coverage for liability, including passenger **bodily injury**, caused by the ownership, operation, maintenance or use of a recreational land motor vehicle designed for use off public roads. This includes a motorized all terrain vehicle, amphibious vehicle, dune buggy, golfmobile, snowmobile, trailbike or minibike. The policy must include Uninsured and/or Underinsured Motor Vehicle Coverage if this coverage is shown on the **Declarations**.

    c. "PERSONAL RESIDENTIAL LIABILITY" means your policy which provides coverage for liability caused by the ownership, maintenance or use of a premises as your residence.

    d. "PERSONAL FARM LIABILITY" means your policy which provides coverage for liability caused by the ownership, maintenance or use of a premises as your residence and the ownership, operation, maintenance or use of your farm.

    e. "WATERCRAFT LIABILITY" means your policy which provides coverage for liability caused by the ownership, operation, maintenance or use of a watercraft.

    f. "RESIDENTIAL RENTAL LIABILITY" means your policy which provides coverage for liability caused by the ownership, maintenance or use of your residential rental property which is occupied by others.

    g. "OFFICE PREMISES LIABILITY" means your policy which provides coverage for liability caused by the ownership, operation, maintenance or use of an office solely occupied by you.

    h. "EMPLOYERS LIABILITY" means your policy which provides coverage for liability arising out of **bodily injury** sustained by your employees during the course of their employment by you.

    i. "PROFESSIONAL LIABILITY" means your policy which provides coverage for liability caused by the rendering or failure to render professional services, negligent acts, errors or omissions in the practice of your profession listed on the **Declarations**.

17. "**bodily injury**" means physical injury, sickness, disease, emotional distress or mental injury to a person. This includes required care, loss of services and death resulting therefrom.

    **Bodily injury** does not include:

    a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any **insured** to any other person; or

    b. the exposure to any such disease, bacteria, parasite, virus, or other organism by any **insured** to any other person.

"**loss**", "**net loss**" and "**personal injury**" are replaced with the following:

6. "**loss**" means:

    a. an accident, including injurious exposure to conditions, which results in **bodily injury** or **property damage** during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **loss**; or

    b. the commission of an offense, or series of similar or related offenses, which result in **personal injury** during the policy period.

8. **"net loss"** means:

    a.   the amount you are legally obligated to pay as damages for **bodily injury**, **personal injury** or **property damage**; and

    b.   all reasonable expenses you incur in the investigation, settlement and defense of a claim or suit at our request. This does not include expenses covered by another policy, expenses we cover under the **Defense and Settlement** section of this policy, and salaries of your employees.

9. **"personal injury"** means injury caused by one or more of the following offenses:

    a.   false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution;

    b.   libel, slander, defamation of character or invasion of rights of privacy.

## EXCLUSIONS

Exclusion 2. is replaced with the following:

2.   for **bodily injury or property damage**:

    a.   which is either expected or intended by you; or

    b.   to any person or property which is the result of your willful and malicious act, no matter at whom the act was directed.

Exclusion 6. is replaced with the following:

6.   for any loss caused by your **business pursuits** or arising out of **business property**:

    a.   unless:

      (1)  the underlying insurance listed on the **Declarations** provides coverage for the **loss**; and

      (2)  the **loss** does not involve an **automobile, recreational motor vehicle,** or watercraft.

    b.   however; this exclusion does not apply to a **private automobile** or watercraft when used for **business** if:

      (1)  the underlying insurance listed on the **Declarations** applies to the **loss**; and

      (2)  the **private automobile** or watercraft is not for hire either for the use of others or for carrying the property of others.

Exclusion 7. is replaced with the following:

7.   for any claim made or suit brought against you by:

    a.   any person who is in your care because of child care services provided by or at the direction of:

      (1)  you;

      (2)  your employee; or

      (3)  any other person actually or apparently acting on your behalf.

    b.   any person who makes a claim because of **bodily injury** or **personal injury** to any person who is in your care because of child care services provided by or at the direction of:

      (1)  you;

      (2)  your employee; or

      (3)  any other person actually or apparently acting on your behalf.

    **Defense and Settlement** coverage does not apply to any person indicated in 7.a. or 7.b. above.

    This exclusion does not apply to the occasional child care service provided by you; or the part-time child care services provided by any **insured** who is under 19 years of age.

Exclusion 10. is replaced with the following:

10.   for **bodily injury** or **personal injury** to the **named insured**, spouse, or anyone within the meaning of part a. or b. of the definition of **Insured.**

    This exclusion also applies to any claim made or suit brought against you to share damages with or repay someone else who may be obligated to pay damages because of the **bodily injury** or **personal injury.**

The following is added:

16.   for **personal injury** when you act with specific intent to cause harm or injury.

All other policy provisions apply.

**SF-Myrick**
**SF-00015**

DG    Policy No. 01-BY-3095-2    *M23*

FE-7637.1<br>(9/86)

## DRIVER EXCLUSION ENDORSEMENT

We will not provide any coverage under this policy for any insured for a loss sustained while an automobile, watercraft, recreational motor vehicle or any other motorized land vehicle is driven or operated by

DONALD LYNN MYRICK.

All other provisions of this policy apply.

_____
Named Insured's Signature

_____
Agent's Signature

01-BY-3095-2
Policy Number

_____
Effective Date of Endorsement

**SF-Myrick**
**SF-00016**

Printed in U.S.A.

FE-7637.1
(9/86)

FE-5717

## FUNGUS (INCLUDING MOLD) LIABILITY EXCLUSION ENDORSEMENT

**DEFINITIONS**

The following definition is added:

"**fungus**" means any type or form of fungi, including mold or mildew, and any mycotoxins, spores, scents or byproducts produced or released by fungi. For purposes of this definition and its application to this endorsement and policy, **fungus** is not considered a pollutant.

**EXCLUSIONS**

The following exclusion is added:

17.  for any:

　　a.  **bodily injury, personal injury** or **property damage** arising out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any **fungus** at or from any source or location; or

FE-5717

　　b.  **loss,** cost or expense arising out of any:

　　　(1)  request, demand or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate or dispose of or in any way respond to or assess the effects of **fungus;** or

　　　(2)  claim or suit for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of **fungus.**

All other policy provisions apply.

SF-Myrick
SF-00017

# EXHIBIT B

# State Farm Fire and Casualty Company®



Birmingham Operations Center
100 State Farm Parkway
P.O. Box 2661
Birmingham, Alabama 35297-00

CERTIFICATE

I, the undersigned, do hereby certify that I am custodian of the
records pertaining to the issuance of policies issued by the
AL Personal Lines     Division of State Farm Fire and Casualty Company
of Birmingham, AL.

Based on our available records, I further certify that the attached
Coverage Summary  dated MAR 01, 2004 represents a true copy
of the policy provisions and coverages as of APR 15, 2004 for policy
01-E6-4730-0 issued to  MYRICK, DONALD WAYNE & LYNN W
                        60 COUNTY RD 1000
                        VERBENA, AL  36091-3601

Bill Lovell
Underwriting Section Manager
State Farm Fire and Casualty Company

SF-Myrick
SF-00018



STATE FARM INSURANCE COMPANIES

State Farm Fire and Casualty Company
100 State Farm Parkway
Birmingham, AL 35297-0001

D-2070-F293  FH

MYRICK, DONALD WAYNE & LYNN W
60 COUNTY ROAD 1000
VERBENA AL 36091-3601

Location:  Same as Mailing Address

**Loss Settlement Provisions (See Policy)**
A1 Replacement Cost - Similar Construction
B1 Limited Replacement Cost - Coverage B

**Forms, Options, and Endorsements**

| | |
|---|---|
| Homeowners Policy | FP-7955 |
| Jewelry and Furs $2,500/$5,000 | OPT JF |
| Increase Dwlg up to $150,920 | OPT ID |
| Ordinance/Law 10%/ $75,460 | OPT OL |
| Amendatory Endorsement | FE-7201.2 |
| Policy Endorsement | FE-5320 |
| Fungus (including Mold) Excl | FE-5398 |
| Motor Vehicle Endorsement | * FE-5452 |

*Effective: APR 15 2004

NOTICE: Effective with this renewal, the Coverage A Loss Settlement Endorsement, FE-9273, has been removed from your policy. Please see the enclosed IMPORTANT NOTICE.

NOTICE: Information concerning changes in your policy language is included. Please call your agent if you have any questions.

---

**RENEWAL CERTIFICATE**

| POLICY NUMBER | 01-E6-4730-0 |
|---|---|

Homeowners Policy
APR 15 2004 to APR 15 2005

| DATE DUE | PLEASE PAY THIS AMOUNT |
|---|---|
| TO BE PAID BY MORTGAGEE | |

**Coverages and Limits**
**Section I**

| | | |
|---|---|---|
| A Dwelling | | $754,600 |
| Dwelling Extension | Up To | 75,460 |
| B Personal Property | | 565,950 |
| C Loss of Use | | Actual Loss Sustained |

**Deductibles - Section I**

| | |
|---|---|
| All Losses | 2,000 |

**Section II**

| | |
|---|---|
| L Personal Liability | $300,000 |
| Damage to Property of Others | 500 |
| M Medical Payments to Others (Each Person) | 2,000 |

| Annual Premium | $1,974.00 |
|---|---|

**Premium Reductions**
Your premium has already been reduced
by the following:

| | |
|---|---|
| Utility Rating Credit | 1,083.00 |
| Home Alert Discount | 433.00 |
| Claim Record Discount | 650.00 |
| Home/Auto Discount | 217.00 |

Inflation Coverage Index:   179.7

---

*Thanks for letting us serve you.  We appreciate our long term customers.*

STAN WHITE
(205) 425-3280

Prepared MAR 01 2004

38 3191 9975

See reverse side for important information.
Please keep this part for your record.

IF YOU HAVE MOVED, PLEASE CONTACT YOUR AGENT.    D-2070-F293  F

| INSURED | MYRICK, DONALD WAYNE & LYNN W |
|---|---|
| POLICY NUMBER | 01-E6-4730-0   HO - HOMEOWNERS |

NOTE: DO NOT PAY. THE PREMIUM IS
BEING PAID BY THE MORTGAGEE.

| DATE DUE | PLEASE PAY THIS AMOUNT |
|---|---|
| THIS IS FOR INFORMATION ONLY | |

Please contact your State Farm
Agent to make any policy
changes.

0909000002
State Farm Insurance Companies

Prepared MAR 01 2004
N 4A,HU

REB    FIRE REN           0000

0000

**SF-Myrick
SF-00019**

FP-7955
(8/96)





SF-Myrick
SF-00020



55

This policy is one of the broadest forms available today, and provides you with outstanding value for your insurance dollars. However, we want to point out that every policy contains limitations and exclusions. Please read your policy carefully, especially "Losses Not Insured" and all exclusions.

# TABLE OF CONTENTS

## DECLARATIONS

Your Name
Location of Your Residence
Policy Period
Coverages
Limits of Liability
Deductibles

|  | Begins on Page |
|---|---|
| **DECLARATIONS CONTINUED** . . . . . . . . . . . . . . . . . . . . . | 1 |
| **DEFINITIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1 |
| **SECTION I - YOUR PROPERTY** | |
| COVERAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| Coverage A - Dwelling . . . . . . . . . . . . . . . . . . . . | 3 |
| Coverage B - Personal Property . . . . . . . . . . . . . . | 3 |
| Coverage C - Loss of Use . . . . . . . . . . . . . . . . . . | 4 |
| Additional Coverages . . . . . . . . . . . . . . . . . . . . | 5 |
| Inflation Coverage . . . . . . . . . . . . . . . . . . . . . . | 7 |
| LOSSES INSURED . . . . . . . . . . . . . . . . . . . . . . . | 7 |
| LOSSES NOT INSURED . . . . . . . . . . . . . . . . . . . . | 9 |
| LOSS SETTLEMENT . . . . . . . . . . . . . . . . . . . . . | 11 |
| CONDITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . | 13 |
| **SECTION II - YOUR LIABILITY** | |
| COVERAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . | 15 |
| Coverage L - Personal Liability . . . . . . . . . . . . . | 15 |
| Coverage M - Medical Payments to Others . . . . . . . | 15 |
| Additional Coverages . . . . . . . . . . . . . . . . . . . . | 15 |
| EXCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . | 16 |
| CONDITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . | 18 |
| **SECTION I AND SECTION II - CONDITIONS** . . . . . . . . . . . . . | 19 |
| **OPTIONAL POLICY PROVISIONS** . . . . . . . . . . . . . . . . . . . . | 20 |

Includes copyrighted material of State Farm Fire and Casualty Company.
Copyright, State Farm Fire and Casualty Company, 1983, 1992.

**SF-Myrick**
**SF-00021**

FP-7955
(8/96)

Printed in U.S.A.

# HOMEOWNERS POLICY

## DECLARATIONS CONTINUED

We agree to provide the insurance described in this policy:

1. based on your payment of premium for the coverages you chose;

2. based on your compliance with all applicable provisions of this policy; and

3. in reliance on your statements in these **Declarations**.

You agree, by acceptance of this policy, that:

1. you will pay premiums when due and comply with the provisions of the policy;

2. the statements in these **Declarations** are your statements and are true;

3. we insure you on the basis your statements are true; an

4. this policy contains all of the agreements between yo and us and any of our agents.

Unless otherwise indicated in the application, you state tha during the three years preceding the time of your applicatio for this insurance your Loss History and Insurance Histor are as follows:

1. Loss History: you have not had any losses, insured ( not; and

2. Insurance History: you have not had any insurer · agency cancel or refuse to issue or renew similar insu ance to you or any household member.

## DEFINITIONS

"You" and "your" mean the "named insured" shown in the **Declarations**. Your spouse is included if a resident of your household. "We", "us" and "our" mean the Company shown in the **Declarations**.

Certain words and phrases are defined as follows:

1. "**bodily injury**" means physical injury, sickness, or disease to a person. This includes required care, loss of services and death resulting therefrom.

   **Bodily injury** does not include:

   a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any **insured** to any other person;

   b. the exposure to any such disease, bacteria, parasite, virus, or other organism by any **insured** to any other person; or

   c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

2. "**business**" means a trade, profession or occupatic This includes farming.

3. "**Declarations**" means the policy **Declarations**, a amended **Declarations**, the most recent renewal noti or certificate, an Evidence of Insurance form or a endorsement changing any of these.

4. "**insured**" means you and, if residents of your househc

   a. your relatives; and

   b. any other person under the age of 21 who is in · care of a person described above.

   Under Section II, "**insured**" also means:

   c. with respect to animals or watercraft to which · policy applies, the person or organization leg responsible for them. However, the animal or wa craft must be owned by you or a person include 4.a. or 4.b. A person or organization using or hav custody of these animals or watercraft in the cou of a **business**, or without permission of the owne not an **insured**; and

**SF-Myrick**
**SF-00022**

1                                                          FP·

d. with respect to any vehicle to which this policy applies, any person while engaged in your employment or the employment of a person included in 4.a. or 4.b.

5. "insured location" means:

a. the **residence premises**;

b. the part of any other premises, other structures and grounds used by you as a residence. This includes premises, structures and grounds you acquire while this policy is in effect for your use as a residence;

c. any premises used by you in connection with the premises included in 5.a. or 5.b.;

d. any part of a premises not owned by an **insured** but where an **insured** is temporarily residing;

e. land owned by or rented to an **insured** on which a one or two family dwelling is being constructed as a residence for an **insured**;

f. individual or family cemetery plots or burial vaults owned by an **insured**;

g. any part of a premises occasionally rented to an **insured** for other than **business** purposes;

h. vacant land owned by or rented to an **insured**. This does not include farm land; and

i. farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

6. "motor vehicle", when used in Section II of this policy, means:

a. a motorized land vehicle designed for travel on public roads or subject to motor vehicle registration. A motorized land vehicle in dead storage on an **insured location** is not a **motor vehicle**;

b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration. A boat, camp, home or utility trailer not being towed by

or carried on a vehicle included in 6.a. is not a motor vehicle;

c. a motorized golf cart, snowmobile, motorized bicycle, motorized tricycle, all-terrain vehicle or any other similar type equipment owned by an **insured** and designed or used for recreational or utility purposes off public roads, while off an **insured location**. A motorized golf cart while used for golfing purposes is not a **motor vehicle**; and

d. any vehicle while being towed by or carried on a vehicle included in 6.a., 6.b. or 6.o.

7. "occurrence", when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

a. bodily injury; or

b. property damage;

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one occurrence.

8. "property damage" means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any **insured** is not **property damage**.

9. "residence employee" means an employee of an **insured** who performs duties, including household or domestic services, in connection with the maintenance or use of the residence premises. This includes employees who perform similar duties elsewhere for you. This does not include employees while performing duties in connection with the **business** of an **insured**.

10. "residence premises" means:

a. the one, two, three or four-family dwelling, other structures and grounds; or

b. that part of any other building;

where you reside and which is shown in the Declarations.

**SF-Myrick**
**SF-00023**

2

FP-7955

## SECTION I - COVERAGES

### COVERAGE A - DWELLING

1. **Dwelling.** We cover the dwelling used principally as a private residence on the **residence premises** shown in the **Declarations**.

   Dwelling includes:

   a. structures attached to the dwelling;

   b. materials and supplies located on or adjacent to the **residence premises** for use in the construction, alteration or repair of the dwelling or other structures on the **residence premises**;

   c. foundation, floor slab and footings supporting the dwelling; and

   d. wall-to-wall carpeting attached to the dwelling.

2. **Dwelling Extension.** We cover other structures on the **residence premises**, separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be other structures.

   We do not cover other structures:

   a. not permanently attached to or otherwise forming a part of the realty;

   b. used in whole or in part for **business** purposes; or

   c. rented or held for rental to a person not a tenant of the dwelling, unless used solely as a private garage.

3. **Property Not Covered.** We do not cover:

   a. land, including the land necessary to support any Coverage A property;

   b. any costs required to replace, rebuild, stabilize, or otherwise restore the land; or

   c. the costs of repair techniques designed to compensate for or prevent land instability to any property, whether or not insured under Coverage A.

### COVERAGE B - PERSONAL PROPERTY

1. **Property Covered.** We cover personal property owned or used by an **insured** while it is anywhere in the world. This includes structures not permanently attached to or otherwise forming a part of the realty. At your request, we will cover personal property owned by others while the property is on the part of the **residence premises** occupied exclusively by an **insured**. At your request, we will also cover personal property owned by a guest or a **residence employee**, while the property is in any other residence occupied by an **insured**.

We cover personal property usually situated at an **insured's** residence, other than the **residence premises**, for up to $1,000 or 10% of the Coverage B limit, whichever is greater. This limitation does not apply to personal property in a newly acquired principal residence for the first 30 days after you start moving the property there. If the **residence premises** is a newly acquired principal residence, personal property in your immediate past principal residence is not subject to this limitation for the first 30 days after the inception of this policy.

**Special Limits of Liability.** These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

a. $200 on money, coins and medals, including any of these that are a part of a collection, and bank notes;

b. $1,000 on property used or intended for use in a **business**, including merchandise held as samples or for sale or for delivery after sale, while on the **residence premises**. This coverage is limited to $250 on such property away from the **residence premises**.

   Electronic data processing system equipment or the recording or storage media used with that equipment is not included under this coverage;

c. $1,000 on securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports and tickets;

d. $1,000 on watercraft of all types and outboard motors, including their trailers, furnishings and equipment;

e. $1,000 on trailers not used with watercraft;

**SF-Myrick**
**SF-00024**

FP-795

3

f.  $2,500 on stamps, trading cards and comic books, including any of these that are a part of a collection;

g.  $2,500 for loss by theft of firearms;

h.  $2,500 for loss by theft of silverware and goldware;

i.  $5,000 on electronic data processing system equipment and the recording or storage media used with that equipment. There is no coverage for said equipment or media while located away from the **residence premises** except when said equipment or media are removed from the **residence premises** for the purpose of repair, servicing or temporary use. An **insured** student's equipment and media are covered while at a residence away from home; and

j.  $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging or other similar article.

2. **Property Not Covered.** We do not cover:

a.  articles separately described and specifically insured in this or any other insurance;

b.  animals, birds or fish;

c.  any engine or motor propelled vehicle or machine, including the parts, designed for movement on land. We do cover those not licensed for use on public highways which are:

   (1) used solely to service the **insured location**; or

   (2) designed for assisting the handicapped;

d.  devices or instruments for the recording or reproduction of sound permanently attached to an engine or motor propelled vehicle. We do not cover tapes, wires, records or other mediums that may be used with these devices or instruments while in the vehicle;

e.  aircraft and parts;

f.  property of roomers, boarders, tenants and other residents not related to an **insured**. We do cover property of roomers, boarders and other residents related to an **insured**;

g.  property regularly rented or held for rental to others by an **insured**. This exclusion does not apply to

property of an **insured** in a sleeping room rented to others by an **insured**;

h.  property rented or held for rental to others away from the **residence premises**;

i.  any citizens band radios, radio telephones, radio transceivers, radio transmitters, radar or laser detectors, antennas and other similar equipment permanently attached to an engine or motor propelled vehicle;

j.  books of account, abstracts, drawings, card index systems and other records. This exclusion does not apply to any recording or storage media for electronic data processing. We will cover the cost of blank books, cards or other blank material plus the cost of labor you incur for transcribing or copying such records; or

k.  recording or storage media for electronic data processing that cannot be replaced with other of like kind and quality on the current retail market.

## COVERAGE C - LOSS OF USE

1. **Additional Living Expense.** When a Loss Insured causes the **residence premises** to become uninhabitable, we will cover the necessary increase in cost you incur to maintain your standard of living for up to 24 months. Our payment is limited to incurred costs for the shortest of: (a) the time required to repair or replace the premises; (b) the time required for your household to settle elsewhere; or (c) 24 months. This coverage is not reduced by the expiration of this policy.

2. **Fair Rental Value.** When a Loss Insured causes that part of the **residence premises** rented to others or held for rental by you to become uninhabitable, we will cover its fair rental value. Payment shall be for the shortest time required to repair or replace the part of the premises rented or held for rental, but not to exceed 12 months. This period of time is not limited by expiration of this policy. Fair rental value shall not include any expense that does not continue while that part of the **residence premises** rented or held for rental is uninhabitable.

3. **Prohibited Use.** When a civil authority prohibits your use of the **residence premises** because of direct damage to a neighboring premises by a Loss Insured, we will cover any resulting Additional Living Expense and Fair Rental

SF-Myrick
SF-00025                    FP-7955

4

Value. Coverage is for a period not exceeding two weeks while use is prohibited.

We do not cover loss or expense due to cancellation of a lease or agreement.

## SECTION I - ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions and conditions of this policy.

1. **Debris Removal.** We will pay the reasonable expenses you incur in the removal of debris of covered property damaged by a Loss Insured. This expense is included in the limit applying to the damaged property.

   When the amount payable for the property damage plus the debris removal exceeds the limit for the damaged property, an additional 5% of that limit is available for debris removal expense. This additional amount of insurance does not apply to Additional Coverage, item 3. Trees, Shrubs and Other Plants.

   We will also pay up to $500 in the aggregate for each loss to cover the reasonable expenses you incur in the removal of tree debris from the **residence premises** when the tree has caused a Loss Insured to Coverage A property.

2. **Temporary Repairs.** If damage is caused by a Loss Insured, we will pay the reasonable and necessary cost you incur for temporary repairs to covered property to protect the property from further immediate damage or loss. This coverage does not increase the limit applying to the property being repaired.

3. **Trees, Shrubs and Other Plants.** We cover outdoor trees, shrubs, plants or lawns, on the **residence premises**, for direct loss caused by the following: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles (not owned or operated by a resident of the **residence premises**), Vandalism or malicious mischief or Theft.

   The limit for this coverage, including the removal of debris, shall not exceed 5% of the amount shown in the **Declarations** for COVERAGE A - DWELLING. We will not pay more than $500 for any one outdoor tree, shrub or plant, including debris removal expense. This coverage may increase the limit otherwise applicable. We do not cover property grown for **business** purposes.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges. This means charges incurred when the fire department is called to save or protect covered property from a Loss Insured. No deductible applies to this coverage. This coverage may increase the limit otherwise applicable.

5. **Property Removed.** Covered property, while being removed from a premises endangered by a Loss Insured, is covered for any accidental direct physical loss. This coverage also applies to the property for up to 30 days while removed. We will also pay for reasonable expenses incurred by you for the removal and return of the covered property. This coverage does not increase the limit applying to the property being removed.

6. **Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money.**

   a. We will pay up to $1,000 for:

      (1) the legal obligation of an **insured** to pay because of the theft or unauthorized use of credit cards and bank fund transfer cards issued to or registered in an **insured's** name. If an **insured** has not complied with all terms and conditions under which the cards are issued, we do not cover use by an **insured** or anyone else;

      (2) loss to an **insured** caused by forgery or alteration of any check or negotiable instrument; and

      (3) loss to an **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency.

      No deductible applies to this coverage.

      We will not pay more than the limit stated above for forgery or alteration committed by any one person. This limit applies when the forgery or alteration involves one or more instruments in the same loss.

   b. We do not cover loss arising out of **business** pursuits or dishonesty of an **insured**.

   c. Defense:

      (1) We may make any investigation and settle any claim or suit we decide is appropriate. Our obligation to defend claims or suits ends when

**SF-Myrick**
**SF-00026**

5

FP-795S

the amount we pay for the loss equals our limit of liability.

    (2) If claim is made or a suit is brought against an **insured** for liability under the Credit Card or Bank Fund Transfer Card coverage, we will provide a defense. This defense is at our expense by counsel of our choice.

    (3) We have the option to defend at our expense an **insured** or an **insured's** bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Power Interruption.** We cover accidental direct physical loss caused directly or indirectly by a change of temperature which results from power interruption that takes place on the **residence premises.** The power interruption must be caused by a Loss Insured occurring on the **residence premises.** The power lines off the **residence premises** must remain energized. This coverage does not increase the limit applying to the damaged property.

8. **Refrigerated Products.** Coverage B is extended to cover the contents of deep freeze or refrigerated units on the **residence premises** for loss due to power failure or mechanical failure. If mechanical failure or power failure is known to you, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure shall not include:

    a.  removal of a plug from an electrical outlet; or

    b.  turning off an electrical switch unless caused by a Loss Insured.

This coverage does not increase the limit applying to the damaged property.

9. **Arson Reward.** We will pay $1,000 for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit shall not be increased regardless of the number of persons providing information.

10. **Volcanic Action.** We cover direct physical loss to a covered building or covered property contained in a building resulting from the eruption of a volcano when the loss is directly and immediately caused by:

    a.  volcanic blast or airborne shock waves;

    b.  ash, dust or particulate matter; or

    c.  lava flow.

We will also pay for the removal of that ash, dust or particulate matter which has caused direct physical loss to a covered building or covered property contained in a building.

One or more volcanic eruptions that occur within a 72-hour period shall be considered one volcanic eruption.

This coverage does not increase the limit applying to the damaged property.

11. **Collapse.** We insure only for direct physical loss to covered property involving the sudden, entire collapse of a building or any part of a building.

Collapse means actually fallen down or fallen into pieces. It does not include settling, cracking, shrinking, bulging, expansion, sagging or bowing.

The collapse must be directly and immediately caused only by one or more of the following:

    a.  perils described in **SECTION I - LOSSES INSURED, COVERAGE B - PERSONAL PROPERTY.** These perils apply to covered building and personal property for loss insured by this Additional Coverage;

    b.  hidden decay of a supporting or weight-bearing structural member of the building;

    c.  hidden insect or vermin damage to a structural member of the building;

    d.  weight of contents, equipment, animals or people;

    e.  weight of ice, snow, sleet or rain which collects on a roof; or

    f.  use of defective material or methods in the construction (includes remodeling or renovation) of the building, if the collapse occurs during the course of the construction of the building.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e. and f. unless the

6

**SF-Myrick**
**SF-00027**

FP-7955

loss is the direct and immediate cause of the collapse of the building.

This coverage does not increase the limit applying to the damaged property.

12. **Locks.** We will pay the reasonable expenses you incur to re-key locks on exterior doors of the dwelling located on the **residence premises**, when the keys to those locks are a part of a covered theft loss.

No deductible applies to this coverage.

## INFLATION COVERAGE

The limits of liability shown in the **Declarations** for Coverage A, Coverage B and, when applicable, Option ID will be increased at the same rate as the increase in the Inflation Coverage Index shown in the **Declarations**.

To find the limits on a given date:

1. divide the Index on that date by the Index as of the effective date of this Inflation Coverage provision; then

2. multiply the resulting factor by the limits of liability for Coverage A, Coverage B and Option ID separately.

The limits of liability will not be reduced to less than the amounts shown in the **Declarations**.

If during the term of this policy the Coverage A limit of liability is changed at your request, the effective date of this Inflation Coverage provision is changed to coincide with the effective date of such change.

# SECTION I - LOSSES INSURED

### COVERAGE A - DWELLING

We insure for accidental direct physical loss to the property described in Coverage A, except as provided in **SECTION I - LOSSES NOT INSURED.**

### COVERAGE B - PERSONAL PROPERTY

We insure for accidental direct physical loss to property described in Coverage B caused by the following perils, except as provided in SECTION I - LOSSES NOT INSURED:

1. **Fire or lightning.**

2. **Windstorm or hail.** This peril does not include loss to property contained in a building caused by rain, snow, sleet, sand or dust. This limitation does not apply when the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

   This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard motors, only while inside a fully enclosed building.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and spacecraft.

6. **Vehicles,** meaning impact by a vehicle.

7. **Smoke,** meaning sudden and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief,** meaning only willful and malicious damage to or destruction of property.

9. **Theft,** including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

   This peril does not include:

   a. loss of a precious or semi-precious stone from its setting;

   b. loss caused by theft:

      (1) committed by an **insured** or by any other person regularly residing on the **insured location**. Property of a student who is an **insured** is covered while located at a residence away from home, if the theft is committed by a person who is not an **insured;**

      (2) in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

**SF-Myrick**
**SF-00028**

FP-7955

7

(3) from the part of a **residence premises** rented to others:

    (a) caused by a tenant, members of the tenant's household, or the tenant's employees;

    (b) of money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinum, coins and medals;

    (c) of securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets and stamps; or

    (d) of jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones;

c. loss caused by theft that occurs away from the **residence premises** of:

    (1) property while at any other residence owned, rented to, or occupied by an **insured**, except while an **insured** is temporarily residing there. Property of a student who is an **insured** is covered while at a residence away from home;

    (2) watercraft of all types, including their furnishings, equipment and outboard motors; or

    (3) trailers and campers designed to be pulled by or carried on a vehicle.

If the **residence premises** is a newly acquired principal residence, property in the immediate past principal residence shall not be considered property away from the **residence premises** for the first 30 days after the inception of this policy.

10. **Falling objects.** This peril does not include loss to property contained in a building unless the roof or an exterior wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Sudden and accidental discharge or overflow** of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

This peril does not include loss:

a. to the system or appliance from which the water or steam escaped;

b. caused by or resulting from freezing;

c. caused by or resulting from water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

d. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

13. **Sudden and accidental tearing asunder, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss:

a. caused by or resulting from freezing; or

b. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance.

This peril does not include loss on the **residence premises** while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

a. maintain heat in the building; or

b. shut off the water supply and drain the system and appliances of water.

**SF-Myrick**
**SF-00029**

8

FP-7955

15. **Sudden and accidental damage** to electrical appliances, devices, fixtures and wiring from an increase or decrease of artificially generated electrical current. We will pay up to $1,000 under this peril for each damaged item described above.

16. **Breakage of glass**, meaning damage to personal property caused by breakage of glass which is a part of a building on the **residence premises**. There is no coverage for loss or damage to the glass.

## SECTION I - LOSSES NOT INSURED

1. We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

   a. collapse, except as specifically provided in **SECTION I - ADDITIONAL COVERAGES, Collapse**;

   b. freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion only applies while the dwelling is vacant, unoccupied or being constructed. This exclusion does not apply if you have used reasonable care to:

      (1) maintain heat in the building; or

      (2) shut off the water supply and drain the system and appliances of water;

   c. freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a swimming pool, hot tub or spa, including their filtration and circulation systems, fence, pavement, patio, foundation, retaining wall, bulkhead, pier, wharf or dock;

   d. theft in or to a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied;

   e. vandalism or malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

   f. continuous or repeated seepage or leakage of water or steam from a:

      (1) heating, air conditioning or automatic fire protective sprinkler system;

      (2) household appliance; or

      (3) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;

      which occurs over a period of time. If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which the water or steam escaped;

   g. wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown;

   h. corrosion, electrolysis or rust;

   i. mold, fungus or wet or dry rot;

   j. contamination;

   k. smog, smoke from agricultural smudging or industrial operations;

   l. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings;

   m. birds, vermin, rodents, insects, or domestic animals. We do cover the breakage of glass or safety glazing material which is a part of a building, when caused by birds, vermin, rodents, insects or domestic animals; or

**SF-Myrick**
**SF-00030**

9

FP-7955

n. pressure from or presence of tree, shrub or plant roots.

However, we do insure for any resulting loss from items a. through m. unless the resulting loss is itself a Loss Not Insured by this Section.

2. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

a. **Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure.

b. **Earth Movement,** meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to earthquake, landslide, mudflow, mudslide, sinkhole, subsidence, erosion or movement resulting from improper compaction, site selection or any other external forces. Earth movement also includes volcanic explosion or lava flow, except as specifically provided in **SECTION I - ADDITIONAL COVERAGES, Volcanic Action.**

However, we do insure for any direct loss by fire resulting from earth movement, provided the resulting fire loss is itself a Loss Insured.

c. **Water Damage,** meaning:

(1) flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not;

(2) water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

(3) water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

However, we do insure for any direct loss by fire, explosion or theft resulting from water damage, provided the resulting loss is itself a Loss Insured.

d. **Neglect,** meaning neglect of the **insured** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

e. **War,** including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

f. **Nuclear Hazard,** meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by the nuclear hazard shall not be considered loss caused by fire, explosion or smoke.

However, we do insure for any direct loss by fire resulting from the nuclear hazard, provided the resulting fire loss is itself a Loss Insured.

3. We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a. conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault;

10

**SF-Myrick**
**SF-00031**

FP-7955

b. defect, weakness, inadequacy, fault or unsoundness in:

   (1) planning, zoning, development, surveying, siting;

   (2) design, specifications, workmanship, construction, grading, compaction;

   (3) materials used in construction or repair; or

   (4) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises**; or

c. weather conditions.

However, we do insure for any resulting loss from items a., b. and c. unless the resulting loss is itself a Loss Not Insured by this Section.

## SECTION I - LOSS SETTLEMENT

Only the Loss Settlement provisions shown in the **Declarations** apply. We will settle covered property losses according to the following.

**COVERAGE A - DWELLING**

1. **A1 - Replacement Cost Loss Settlement - Similar Construction.**

  a. We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I - COVERAGES, COVERAGE A - DWELLING**, except for wood fences, subject to the following:

    (1) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the property;

    (2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

    (3) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; and

    (4) we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under **Option OL - Building Ordinance or Law Coverage.**

  b. Wood Fences: We will pay the actual cash value at the time of loss for loss or damage to wood fences, not to exceed the limit of liability shown in the **Declarations** for COVERAGE A - DWELLING EXTENSION.

2. **A2 - Replacement Cost Loss Settlement - Common Construction.**

  a. We will pay the cost to repair or replace with common construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I - COVERAGES, COVERAGE A - DWELLING**, except for wood fences, subject to the following:

    (1) we will pay only for repair or replacement of the damaged part of the property with common construction techniques and materials commonly used by the building trades in standard new construction. We will not pay the cost to repair or replace obsolete, antique or custom construction with like kind and quality;

    (2) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or

11

**SF-Myrick**
**SF-00032**

FP-7955

However, we will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1) our cost to replace at the time of loss;

(2) the full cost of repair;

(3) any special limit of liability described in the policy; or

(4) any applicable Coverage B limit of liability.

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we shall not be liable:

   a. to the **insured** for an amount greater than the **insured's** interest; or

   b. for more than the applicable limit of liability.

2. **Your Duties After Loss.** After a loss to which this insurance may apply, you shall see that the following duties are performed:

   a. give immediate notice to us or our agent. Also notify the police if the loss is caused by theft. Also notify the credit card company or bank if the loss involves a credit card or bank fund transfer card;

   b. protect the property from further damage or loss, make reasonable and necessary temporary repairs required to protect the property, keep an accurate record of repair expenditures;

   c. prepare an inventory of damaged or stolen personal property. Show in detail the quantity, description, age, replacement cost and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

   d. as often as we reasonably require:

      (1) exhibit the damaged property;

      (2) provide us with records and documents we request and permit us to make copies;

      (3) submit to and subscribe, while not in the presence of any other **insured**:

         (a) statements; and

         (b) examinations under oath; and

   (4) produce employees, members of the **insured's** household or others for examination under oath to the extent it is within the **insured's** power to do so; and

   e. submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

      (1) the time and cause of loss;

      (2) interest of the **insured** and all others in the property involved and all encumbrances on the property;

      (3) other insurance which may cover the loss;

      (4) changes in title or occupancy of the property during the term of this policy;

      (5) specifications of any damaged building and detailed estimates for repair of the damage;

      (6) an inventory of damaged or stolen personal property described in 2.c.;

      (7) receipts for additional living expenses incurred and records supporting the fair rental value loss; and

      (8) evidence or affidavit supporting a claim under the Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss to a Pair or Set.** In case of loss to a pair or set, we may elect to:

   a. repair or replace any part to restore the pair or set to its value before the loss; or

   b. pay the difference between the depreciated value of the property before and after the loss.

**SF-Myrick**
**SF-00034**

13

FP-7955

4. **Appraisal.** If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

5. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only our share of the loss. Our share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss.

6. **Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage.

7. **Our Option.** We may repair or replace any part of the property damaged or stolen with similar property. Any property we pay for or replace becomes our property.

8. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

    a. reach agreement with you;

    b. there is an entry of a final judgment; or

    c. there is a filing of an appraisal award with us.

9. **Abandonment of Property.** We need not accept any property abandoned by an **insured**.

10. **Mortgage Clause.** The word "mortgagee" includes trustee.

    a. If a mortgagee is named in this policy, any loss payable under Coverage A shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order of precedence of the mortgages.

    b. If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

        (1) notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

        (2) pays on demand any premium due under this policy, if you have not paid the premium; and

        (3) submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

    c. If this policy is cancelled by us, the mortgagee shall be notified at least 10 days before the date cancellation takes effect. Proof of mailing shall be proof of notice.

    d. If we pay the mortgagee for any loss and deny payment to you:

        (1) we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

        (2) at our option, may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

    e. Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

11. **No Benefit to Bailee.** We will not recognize an assignment or grant coverage for the benefit of a person or organization holding, storing or transporting property for

**SF-Myrick**
**SF-00035**

14

FP-7955

a fee. This applies regardless of any other provision of this policy.

12. **Intentional Acts.** If you or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits, then this policy is void and we will not pay you or any other **insured** for this loss.

## SECTION II - LIABILITY COVERAGES

### COVERAGE L - PERSONAL LIABILITY

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of liability.

### COVERAGE M - MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing **bodily injury**. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage applies only:

1. to a person on the **insured location** with the permission of an **insured**;

2. to a person off the **insured location**, if the **bodily injury**:

   a. arises out of a condition on the **insured location** or the ways immediately adjoining;

   b. is caused by the activities of an **insured**;

   c. is caused by a **residence employee** in the course of the **residence employee's** employment by an **insured**; or

   d. is caused by an animal owned by or in the care of an **insured**; or

3. to a **residence employee** if the **occurrence** causing bodily injury occurs off the **insured location** and arises out of or in the course of the **residence employee's** employment by an **insured**.

### SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:

   a. expenses we incur and costs taxed against an **insured** in suits we defend;

   b. premiums on bonds required in suits we defend, but not for bond amounts greater than the Coverage L limit. We are not obligated to apply for or furnish any bond;

   c. reasonable expenses an **insured** incurs at our request. This includes actual loss of earnings (but not loss of other income) up to $100 per day for aiding us in the investigation or defense of claims or suits;

   d. prejudgment interest awarded against the **insured** on that part of the judgment we pay; and

   e. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an **insured** for bodily injury covered under this policy. We will not pay for first aid to you or any other **insured**.

3. **Damage to Property of Others.**

   a. We will pay for **property damage** to property of others caused by an **insured**.

   b. We will not pay more than the smallest of the following amounts:

      (1) replacement cost at the time of loss;

      (2) full cost of repair; or

15

**SF-Myrick**
**SF-00036**

FP-7955

(3) $500 in any one **occurrence**.

c. We will not pay for **property damage**:

(1) if insurance is otherwise provided in this policy;

(2) caused intentionally by an **insured** who is 13 years of age or older;

(3) to property, other than a rented golf cart, owned by or rented to an **insured**, a tenant of an **insured**, or a resident in your household; or

(4) arising out of:

(a) **business** pursuits;

(b) any act or omission in connection with a premises an **insured** owns, rents or controls, other than the **insured location**; or

(c) the ownership, maintenance, or use of a **motor vehicle**, aircraft, or watercraft, including airboat, air cushion, personal watercraft, sail board or similar type watercraft.

## SECTION II - EXCLUSIONS

1. Coverage L and Coverage M do not apply to:

a. **bodily injury** or **property damage**:

(1) which is either expected or intended by the **insured**; or

(2) which is the result of willful and malicious acts of the **insured**;

b. **bodily injury** or **property damage** arising out of **business** pursuits of any **insured** or the rental or holding for rental of any part of any premises by any **insured**. This exclusion does not apply:

(1) to activities which are ordinarily incident to non-**business** pursuits;

(2) with respect to Coverage L to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

(3) to the rental or holding for rental of a residence of yours:

(a) on an occasional basis for the exclusive use as a residence;

(b) in part, unless intended for use as a residence by more than two roomers or boarders; or

(c) in part, as an office, school, studio or private garage;

(4) when the dwelling on the **residence premises** is a two, three or four-family dwelling and you oc-

cupy one part and rent or hold for rental the other part; or

(5) to farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations;

c. **bodily injury** or **property damage** arising out of the rendering or failing to render professional services;

d. **bodily injury** or **property damage** arising out of any premises currently owned or rented to any **insured** which is not an **insured location**. This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**;

e. **bodily injury** or **property damage** arising out of the ownership, maintenance, use, loading or unloading of:

(1) an aircraft;

(2) a **motor vehicle** owned or operated by or rented or loaned to any **insured**; or

(3) a watercraft:

(a) owned by or rented to any **insured** if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

(b) owned by or rented to any **insured** if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length;

16

**SF-Myrick**
**SF-00037**

FP-7955

(c) powered by one or more outboard motors with more than 25 total horsepower owned by any **insured**;

(d) designated as an airboat, air cushion, or similar type of craft; or

(e) owned by any **insured** which is a personal watercraft using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**. Exclusion e.(3) does not apply while the watercraft is on the **residence premises**;

f. **bodily injury** or **property damage** arising out of:

(1) the entrustment by any **insured** to any person;

(2) the supervision by any **insured** of any person;

(3) any liability statutorily imposed on any **insured**; or

(4) any liability assumed through an unwritten or written agreement by any **insured**;

with regard to the ownership, maintenance or use of any aircraft, watercraft, or **motor vehicle** which is not covered under Section II of this policy;

g. **bodily injury** or **property damage** caused directly or indirectly by war, including undeclared war, or any warlike act including destruction or seizure or use for a military purpose, or any consequence of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental;

h. **bodily injury** to you or any **insured** within the meaning of part a. or b. of the definition of **insured**.

This exclusion also applies to any claim made or suit brought against you or any **insured** to share damages with or repay someone else who may be obligated to pay damages because of the **bodily injury** sustained by you or any **insured** within the meaning of part a. or b. of the definition of **insured**;

i. any claim made or suit brought against any **insured** by:

(1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**; or

(2) any person who makes a claim because of **bodily injury** to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**.

This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** who is under 19 years of age; or

j. **bodily injury** or **property damage** arising out of an **insured's** participation in, or preparation or practice for any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft. This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power.

2. Coverage L does not apply to:

a. liability:

(1) for your share of any loss assessment charged against all members of an association of property owners; or

(2) assumed under any unwritten contract or agreement, or by contract or agreement in connection with a **business** of the **insured**;

b. **property damage** to property currently owned by any **insured**;

c. **property damage** to property rented to, occupied or used by or in the care of any **insured**. This exclusion

17

**SF-Myrick**
**SF-00038**                    FP-7955

does not apply to **property damage** caused by fire, smoke or explosion;

d. **bodily injury** to a person eligible to receive any benefits required to be provided or voluntarily provided by an **insured** under a workers' compensation, non-occupational disability, or occupational disease law;

e. **bodily injury** or **property damage** for which an **insured** under this policy is also an insured under a nuclear energy liability policy or would be an insured but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors.

3. Coverage M does not apply to **bodily injury**:

a. to a **residence employee** if it occurs off the **insured location** and does not arise out of or in the course of the **residence employee's** employment by an **insured**;

b. to a person eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability or occupational disease law;

c. from nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these;

d. to a person other than a **residence employee** of an **insured**, regularly residing on any part of the **insured location**.

## SECTION II - CONDITIONS

1. **Limit of Liability.** The Coverage L limit is shown in the **Declarations**. This is our limit for all damages from each **occurrence** regardless of the number of **insureds**, claims made or persons injured.

   The Coverage M limit is shown in the **Declarations**. This is our limit for all medical expense for **bodily injury** to one person as the result of one accident.

2. **Severability of Insurance.** This insurance applies separately to each **insured**. This condition shall not increase our limit of liability for any one **occurrence**.

3. **Duties After Loss.** In case of an accident or **occurrence**, the **insured** shall perform the following duties that apply. You shall cooperate with us in seeing that these duties are performed:

   a. give written notice to us or our agent as soon as practicable, which sets forth:

      (1) the identity of this policy and **insured**;

      (2) reasonably available information on the time, place and circumstances of the accident or **occurrence**; and

      (3) names and addresses of any claimants and available witnesses;

   b. immediately forward to us every notice, demand, summons or other process relating to the accident or **occurrence**;

   c. at our request, assist in:

      (1) making settlement;

      (2) the enforcement of any right of contribution or indemnity against a person or organization who may be liable to an **insured**;

      (3) the conduct of suits and attend hearings and trials; and

      (4) securing and giving evidence and obtaining the attendance of witnesses;

   d. under the coverage - Damage to Property of Others, exhibit the damaged property if within the **insured's** control; and

   e. the **insured** shall not, except at the **insured's** own cost, voluntarily make payments, assume obligations or incur expenses. This does not apply to expense for first aid to others at the time of the **bodily injury**.

**SF-Myrick**
**SF-00039**

18                                          FP-7955

4. **Duties of an Injured Person - Coverage M.** The injured person, or, when appropriate, someone acting on behalf of that person, shall:

   a. give us written proof of claim, under oath if required, as soon as practicable;

   b. execute authorization to allow us to obtain copies of medical reports and records; and

   c. submit to physical examination by a physician selected by us when and as often as we reasonably require.

5. **Payment of Claim - Coverage M.** Payment under this coverage is not an admission of liability by an **insured** or us.

6. **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions.

No one shall have the right to join us as a party to an action against an **insured.** Further, no action with respect to Coverage L shall be brought against us until the obligation of the **insured** has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an **insured** shall not relieve us of our obligation under this policy.

8. **Other Insurance - Coverage L.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTION I AND SECTION II - CONDITIONS

1. **Policy Period.** This policy applies only to loss under Section I or **bodily injury** or **property damage** under Section II which occurs during the period this policy is in effect.

2. **Concealment or Fraud.** This policy is void as to you and any other **insured**, if you or any other **insured** under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

3. **Liberalization Clause.** If we adopt any revision which would broaden coverage under this policy without additional premium, within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination shall not waive any of our rights.

5. **Cancellation.**

   a. You may cancel this policy at any time by notifying us in writing of the date cancellation is to take effect. We may waive the requirement that the notice be in writing by confirming the date and time of cancellation to you in writing.

   b. We may cancel this policy only for the reasons stated in this condition. We will notify you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the **Declarations.** Proof of mailing shall be sufficient proof of notice:

      (1) When you have not paid the premium, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect. This condition applies whether the premium is payable to us or our agent or under any finance or credit plan.

      (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason. We may cancel by notifying you at least 10 days before the date cancellation takes effect.

      (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

         (a) if there has been a material misrepresentation of fact which, if known to us, would have caused us not to issue this policy; or

SF-Myrick
SF-00040

19

FP-7955

(b) if the risk has changed substantially since the policy was issued.

We may cancel this policy by notifying you at least 30 days before the date cancellation takes effect.

(4) When this policy is written for a period longer than one year, we may cancel for any reason at anniversary. We may cancel by notifying you at least 30 days before the date cancellation takes effect.

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. When you request cancellation, the return premium will be based on our rules for such cancellation. The return premium may be less than a full pro rata refund. When we cancel, the return premium will be pro rata.

d. The return premium may not be refunded with the notice of cancellation or when the policy is returned to us. In such cases, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal.** We may elect not to renew this policy. If we elect not to renew, a written notice will be delivered to you, or mailed to you at your mailing address shown in the **Declarations.** The notice will be mailed or delivered at least 30 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

7. **Assignment.** Assignment of this policy shall not be valid unless we give our written consent.

8. **Subrogation.** An **insured** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an **insured** shall:

a. sign and deliver all related papers;

b. cooperate with us in a reasonable manner; and

c. do nothing after a loss to prejudice such rights.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person shown in the **Declarations** or the spouse, if a resident of the same household, dies:

a. we insure the legal representative of the deceased. This condition applies only with respect to the premises and property of the deceased covered under this policy at the time of death;

b. **insured** includes:

(1) any member of your household who is an **insured** at the time of your death, but only while a resident of the **residence premises;** and

(2) with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10. **Conformity to State Law.** When a policy provision is in conflict with the applicable law of the State in which this policy is issued, the law of the State will apply.

## OPTIONAL POLICY PROVISIONS

Each Optional Policy Provision applies only as shown in the **Declarations** and is subject to all the terms, provisions, exclusions and conditions of this policy.

**Option AI - Additional Insured.** The definition of **insured** is extended to include the person or organization shown in the **Declarations** as an Additional Insured or whose name is on file with us. Coverage is with respect to:

1. Section I - Coverage A; or

2. Section II - Coverages L and M but only with respect to the **residence premises.** This coverage does not apply to **bodily injury** to an employee arising out of or in the course of the employee's employment by the person or organization.

This option applies only with respect to the location shown in the **Declarations.**

**Option BP - Business Property.** The COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability, item b., for property used or intended for use in a **business,**

20

SF-Myrick
SF-00041

FP-7955

including merchandise held as samples or for sale or for delivery after sale, is changed as follows:

The $1,000 limit is replaced with the amount shown in the **Declarations** for this option.

**Option BU - Business Pursuits. SECTION II - EXCLU-SIONS,** item 1.b. is modified as follows:

1. Section II coverage applies to the **business** pursuits of an **insured** who is a:

   a. clerical office employee, salesperson, collector, messenger; or

   b. teacher (except college, university and profes-sional athletic coaches), school principal or school administrator;

   while acting within the scope of the above listed occupations.

2. However, no coverage is provided:

   a. for **bodily injury** or **property damage** arising out of a **business** owned or financially controlled by the **insured** or by a partnership of which the **insured** is a partner or member;

   b. for **bodily injury** or **property damage** arising out of the rendering of or failure to render profes-sional services of any nature (other than teaching or school administration). This exclusion includes but is not limited to:

      (1) computer programming, architectural, engi-neering or industrial design services;

      (2) medical, surgical, dental or other services or treatment conducive to the health of persons or animals; and

      (3) beauty or barber services or treatment;

   c. for **bodily injury** to a fellow employee of the **insured** injured in the course of employment; or

   d. when the **insured** is a member of the faculty or teaching staff of a school or college:

      (1) for **bodily injury** or **property damage** arising out of the maintenance, use, loading or un-loading of:

         (a) draft or saddle animals, including vehi-cles for use with them; or

         (b) aircraft, **motor vehicles**, recreational motor vehicles or watercraft, airboats, air cushions or personal watercraft which use a water jet pump powered by an internal combustion engine as the pri-mary source of propulsion;

         owned or operated, or hired by or for the **insured** or employer of the **insured** or used by the **insured** for the purpose of instruction in the use thereof; or

      (2) under Coverage M for **bodily injury** to a pupil arising out of corporal punishment adminis-tered by or at the direction of the **insured**.

**Option FA - Firearms.** Firearms are insured for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations.** The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. we do not insure for any loss to the property described in this option either consisting of, or directly and immedi-ately caused by, one or more of the following:

   a. mechanical breakdown, wear and tear, gradual dete-rioration;

   b. insects or vermin;

   c. any process of refinishing, renovating, or repairing;

   d. dampness of atmosphere or extremes of tempera-tures;

   e. inherent defect or faulty manufacture;

   f. rust, fouling or explosion of firearms;

   g. breakage, marring, scratching, tearing or denting unless caused by fire, thieves or accidents to convey-ances; or

   h. infidelity of an **insured's** employees or persons to whom the insured property may be entrusted or rented;

**SF-Myrick**
**SF-00042**

21

FP-7955

2. our limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. our limits for loss by theft are those shown in the **Declarations** for this option. These limits apply in lieu of the Coverage B theft limit; and

4. our limits for loss by any covered peril except those in items 2. and 3. are those shown in the **Declarations**.

**Option HC - Home Computer.** The **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability**, item i., for electronic data processing system equipment and the recording or storage media used with that equipment is increased to be the amount shown in the **Declarations** for this option.

**Option ID - Increased Dwelling Limit.** We will settle losses to damaged building structures covered under **COVERAGE A - DWELLING** according to the **SECTION I - LOSS SETTLEMENT** provision shown in the **Declarations**.

If the amount you actually and necessarily spend to repair or replace damaged building structures exceeds the applicable limit of liability shown in the **Declarations**, we will pay the additional amounts not to exceed:

1. the Option ID limit of liability shown in the **Declarations** to repair or replace the Dwelling; or

2. 10% of the Option ID limit of liability to repair or replace building structures covered under **COVERAGE A - DWELLING, Dwelling Extension.**

**Report Increased Values.** You must notify us within 90 days of the start of any new building structure costing $5,000 or more; or any additions to or remodeling of building structures which increase their values by $5,000 or more. You must pay any additional premium due for the increased value. We will not pay more than the applicable limit of liability shown in the **Declarations**, if you fail to notify us of the increased value within 90 days.

**Option IO - Incidental Business.** The coverage provided by this option applies only to that incidental **business** occupancy on file with us.

1. **COVERAGE A - DWELLING, Dwelling Extension**, item 2.b. is deleted.

2. **COVERAGE B - PERSONAL PROPERTY** is extended to include equipment, supplies and furnishings usual and

incidental to this **business** occupancy. This Optional Policy Provision does not include electronic data processing system equipment or the recording or storage media used with that equipment or merchandise held as samples or for sale or for delivery after sale.

The Option IO limits are shown in the **Declarations**. The first limit applies to property on the **residence premises**. The second limit applies to property while off the **residence premises**. These limits are in addition to the **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability** on property used or intended for use in a **business**.

3. Under Section II, the **residence premises** is not considered **business** property because an **insured** occupies a part of it as an incidental **business**.

4. SECTION II - EXCLUSIONS, item 1.b. of Coverage L and Coverage M is replaced with the following:

   b. **bodily injury** or **property damage** arising out of **business** pursuits of an **insured** or the rental or holding for rental of any part of any premises by an **insured**. This exclusion does not apply:

      (1) to activities which are ordinarily incident to non-**business** pursuits or to **business** pursuits of an **insured** which are necessary or incidental to the use of the **residence premises** as an incidental **business**;

      (2) with respect to Coverage L to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

      (3) to the rental or holding for rental of a residence of yours:

         (a) on an occasional basis for exclusive use as a residence;

         (b) in part, unless intended for use as a residence by more than two roomers or boarders; or

         (c) in part, as an incidental **business** or private garage;

      (4) when the dwelling on the **residence premises** is a two family dwelling and you occupy

22

**SF-Myrick**
**SF-00043**                    FP-7955

one part and rent or hold for rental the other part; or

(5) to farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

5. This insurance does not apply to:

a. **bodily injury** to an employee of an **insured** arising out of the **residence premises** as an incidental **business** other than to a **residence employee** while engaged in the employee's employment by an **insured**;

b. **bodily injury** to a pupil arising out of corporal punishment administered by or at the direction of the **insured**;

c. liability arising out of any acts, errors or omissions of an **insured**, or any other person for whose acts an **insured** is liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specifications, supervisory inspections or engineering services in the conduct of an **insured's** incidental **business** involving data processing, computer consulting or computer programming; or

d. any claim made or suit brought against any **insured** by:

(1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**; or

(2) any person who makes a claim because of **bodily injury** to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**.

Coverage M does not apply to any person indicated in (1) and (2) above.

This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** who is under 19 years of age.

**Option JF - Jewelry and Furs.** Jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones, gold other than goldware, silver other than silverware and platinum are insured for accidental direct physical loss or damage.

The limits for this option are shown in the Declarations. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. we do not insure for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

a. mechanical breakdown, wear and tear, gradual deterioration;

b. insects or vermin;

c. inherent vice; or

d. seizure or destruction under quarantine or customs regulations;

2. our limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. our limits for loss by theft are those shown in the **Declarations** for this option; and

4. our limits for loss by any covered peril except those in items 2. and 3. are those shown in the **Declarations** for this option.

23

SF-Myrick
SF-00044

FP-7955

**Option OL - Building Ordinance or Law.**

1. **Coverage Provided.**

   The total limit of insurance provided by this Building Ordinance or Law provision will not exceed an amount equal to the Option OL percentage shown in the **Declarations** of the Coverage A limit shown in the **Declarations** at the time of the loss, as adjusted by the inflation coverage provisions of the policy. This is an additional amount of insurance and applies only to the dwelling.

2. **Damaged Portions of Dwelling.**

   When the dwelling covered under **COVERAGE A - DWELLING** is damaged by a Loss Insured we will pay for the increased cost to repair or rebuild the physically damaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs.

3. **Undamaged Portions of Damaged Dwelling.**

   When the dwelling covered under **COVERAGE A - DWELLING** is damaged by a Loss Insured we will also pay for:

   a. the cost to demolish and clear the site of the undamaged portions of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs; and

   b. loss to the undamaged portion of the dwelling caused by enforcement of any ordinance or law if:

      (1) the enforcement is directly caused by the same Loss Insured;

      (2) the enforcement requires the demolition of portions of the same dwelling not damaged by the same Loss Insured;

      (3) the ordinance or law regulates the construction or repair of the dwelling, or establishes zoning or land use requirements at the described premises; and

      (4) the ordinance or law is in force at the time of the occurrence of the same Loss Insured; or

   c. the legally required changes to the undamaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs.

4. **Building Ordinance or Law Coverage Limitations.**

   a. We will not pay for any increased cost of construction under this coverage:

      (1) until the dwelling is actually repaired or replaced at the same or another premises in the same general vicinity; and

      (2) unless the repairs or replacement are made as soon as reasonably possible after the loss, not to exceed two years.

   b. We will not pay more for loss to the undamaged portion of the dwelling caused by the enforcement of any ordinance or law than:

      (1) the depreciated value of the undamaged portion of the dwelling, if the dwelling is not repaired or replaced;

      (2) the amount you actually spend to replace the undamaged portion of the dwelling if the dwelling is repaired or replaced.

   c. We will not pay more under this coverage than the amount you actually spend:

      (1) for the increased cost to repair or rebuild the dwelling at the same or another premises in the same general vicinity if relocation is required by ordinance or law; and

      (2) to demolish and clear the site of the undamaged portions of the dwelling caused by enforcement of building, zoning or land use ordinance or law.

**SF-Myrick**
**SF-00045**

24

FP-7955

We will never pay for more than a dwelling of the same height, floor area and style on the same or similar premises as the dwelling, subject to the limit provided in paragraph 1. **Coverage Provided** of this option.

**Option SG - Silverware and Goldware Theft.** The COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability, item h., for theft of silverware and goldware is increased to be the amount shown in the Declarations for this option.

IN WITNESS WHEREOF, this Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

*Kim M. Brunner*                    Secretary          *Edward B Rust, Jr*          President

The Board of Directors, in accordance with Article VI(c) of this Company's Articles of Incorporation, may from time to time distribute equitably to the holders of the participating policies issued by said Company such sums out of its earnings as in its judgment are proper.

SF-Myrick
SF-00046

25

FP-7955

FE-7201.2
(10/97)

# AMENDATORY ENDORSEMENT
## (Alabama)

**SECTION I - CONDITIONS**

**Suit Against Us:** Reference to "one year" is changed to "six years".

**SECTION I AND SECTION II - CONDITIONS**

**Right to Inspect** is added:

> **Right to Inspect.** We have the right but are not obligated to make inspections and surveys at any time, give you reports on conditions we find and recommend changes. Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged.
>
> We do not:
>
> a.   make safety inspections;

b.   undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public;

c.   warrant that conditions are safe or healthful; or

d.   warrant that conditions comply with laws, regulations, codes or standards.

This condition applies not only to us but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**Joint and Individual Interests** is added:

> **Joint and Individual Interests.** When there are two or more named insureds, each acts for all to cancel or change the policy.

All other policy provisions apply.

**SF-Myrick**
**SF-00047**

Printed in U.S.A.

FE-5320
(4/99)

## POLICY ENDORSEMENT

**SECTION I AND SECTION II - CONDITIONS**

The following condition is added:

**Premium.** The premium for this policy may vary based upon the purchase of other insurance from one of the State Farm affiliated companies.

All other policy provisions apply.

FE-5320
(4/99)

**SF-Myrick**
**SF-00048**

FE-5398

# FUNGUS (INCLUDING MOLD) EXCLUSION ENDORSEMENT

**DEFINITIONS**

The following definition is added:

"fungus" means any type or form of fungus, including mold, mildew, mycotoxins, spores, scents or byproducts produced or released by fungi.

**SECTION I - LOSSES INSURED**

Item 12.d. is replaced with the following:

d.  caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, or wet or dry rot.

Item 13.b. is replaced with the following:

b.  caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, or wet or dry rot.

**SECTION I - LOSSES NOT INSURED**

Item 1.i. is replaced with the following:

i.  wet or dry rot;

In item 2., the following is added as item g.:

g.  **Fungus.** We also do not cover:

(1)  any loss of use or delay in rebuilding, repairing or replacing covered property, including any associated cost or expense, due to interference at the **residence premises** or location of the rebuilding, repair or replacement, by **fungus**;

(2)  any remediation of **fungus**, including the cost to:

(a)  remove the **fungus** from covered property or to repair, restore or replace that property; or

(b)  tear out and replace any part of the building or other property as needed to gain access to the **fungus**; or

(3)  the cost of any testing or monitoring of air or property to confirm the type, absence, presence or level of **fungus**, whether performed prior to, during or after removal, repair, restoration or replacement of covered property.

All other policy provisions apply.

SF-Myrick
SF-00049

FE-5452

# MOTOR VEHICLE ENDORSEMENT

**DEFINITIONS**

The definition of "**motor vehicle**" is replaced by the following:

"**motor vehicle**", when used in Section II of this policy, means:

a. a land motor vehicle designed for travel on public roads or subject to motor vehicle registration;

b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration;

c. a "recreational vehicle" while off an **insured location**. "Recreational vehicle", means a motorized vehicle designed for recreation principally off public roads that is owned or leased by an **insured**. This includes, but is not limited to, a motorized all terrain vehicle, amphibious vehicle, dune buggy, go-cart, golf cart, snowmobile, trailbike, minibike and personal assistive mobility device;

d. a "locomotive" while off an **insured location**. "Locomotive" means a self-propelled vehicle for pulling or pushing freight or passenger cars on tracks that is large enough to carry a person and is owned or leased by an **insured**;

e. a bulldozer, track loader, backhoe, high-hoe, trencher, grader, crane, self-propelled scraper, excavator, pipe-layer, cherry picker, telehandler, logging vehicle, mining vehicle or road building vehicle that is owned or leased by an **insured** while off an **insured location**;

f. any vehicle while being towed or pushed by or carried on a vehicle included in a., b., c., d. or e.;

g. the following are not **motor vehicles**:

(1) a motorized land vehicle in dead storage on an **insured location**;

(2) a boat, camp, home or utility trailer not being towed or pushed by or carried on a vehicle included in a., b., c., d. or e.;

(3) a motorized golf cart while used for golfing purposes;

(4) a motorized vehicle or trailer designed to assist the handicapped that is not designed for travel on public roads or subject to motor vehicle registration;

h. "leased" does not include temporary rental.

All other policy provisions apply.

FE-5452

**SF-Myrick**
**SF-00050**