IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, | * * * | |
| Plaintiff, | * * | |
| vs. | * * | Case No.: 2:06 CV-359-CSC |
| WAYNE MYRICK, and LYNN MYRICK, | * * * | |
| Defendants. | * | |

## AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

The original complaint (doc. 1) filed by plaintiff **State Farm Fire and Casualty Company** ("State Farm") sought a judicial determination of the duties, rights, obligations and responsibilities that existed between State Farm and Wayne and Lynn Myrick ("the Myricks") with regard to a Personal Liability Umbrella Policy issued to the Myricks by State Farm. Specifically, State Farm sought declaratory relief related to claims filed against the Myricks by Margaret N. Martin ("Martin") in a lawsuit then pending in Chilton County, Alabama. Because the underlying litigation is now complete and dismissed, State Farm hereby amends the Original Complaint by removing Martin as a named Defendant. Furthermore, State Farm presents an additional claim for a judicial determination of the duties, rights, obligations, and

responsibilities that exist between it and the Myricks arising out of a second policy of insurance, specifically a Homeowners Policy.

State Farm hereby sets forth the following:

1. An actual controversy of a justiciable nature exists between State Farm and the defendants involving the rights, interest, and liabilities under two policies of insurance issued by State Farm to Wayne Myrick and Lynn Myrick, as later discussed. Both policies of insurance have potential policy limits in excess of the amount to support jurisdiction of this Court.

2. The jurisdiction in this case is pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and diversity of citizenship, 28 U.S.C. § 1332.

3. State Farm is an insurance company organized under the laws of the state of Illinois, with its principal offices located in the state of Illinois and is authorized to do business in the state of Alabama.

4. Defendant Wayne Myrick is an individual over the age of nineteen (19) years residing in Chilton County, Alabama.

5. Defendant Lynn Myrick is an individual over the age of nineteen (19) years residing in Chilton County, Alabama.

6. Margaret Martin is the aunt of Lynn Myrick.

7. In November, 2002, Margaret Martin suffered a stroke after which Martin was advised by her doctor that she should not live alone.

8. Margaret Martin asked the Myricks if she could move in with them.

9. In exchange for the Myricks providing a place for Margaret Martin to live, Martin agreed to give the Myricks the proceeds from the sale of her house.

10. Margaret Martin's house in Crestwood, Alabama, sold in the first quarter of 2003, for a net profit of over $114,000.

11. At the closing on the sale of Margaret Martin's house, Margaret Martin endorsed the closing check directly over to the Myricks.

12. The $114,484.62 received from Margaret Martin after the sale of her house in Crestwood was deposited into the Myricks' construction account at First Commercial Bank.

13. The money from the sale of Margaret Martin's home was to be used by the Myricks to finish out the basement in the home they were constructing on the lake.

14. Martin's living quarters in the basement of the Myrick home consisted of a dining room, a kitchen, a den, a nook, a master bedroom with a sitting area, a full bathroom and two walk-in closets and a guest bedroom with a sitting area and another full bath.

15. There were never any written plans for the build out of the basement area to provide the living quarters for Martin.

16. The money the Myricks received from Martin was commingled with the funds set aside by the Myricks for the construction of the house on the lake.

17. No accounting was ever provided to Martin which detailed how the funds that Martin provided to the Myricks from the sale of the Crestwood house were used.

18. Margaret Martin executed a Last Will and Testament on March 25, 2003, wherein she stated she gave the Myricks all interest in the property she occupied at her death, that her estate held no legal title to the Myricks' home and that the Myricks were not indebted to her estate for the money spent on finishing the basement for her use.

19. On January 2, 2003, Margaret Martin executed a Durable Power of Attorney in favor of Lynn Myrick. Lynn Myrick agrees that under the Durable Power of Attorney she was the Attorney of Fact.

20. Lynn Myrick understood she had a duty to act in the best interests of Margaret Martin under the terms of the Power of Attorney.

21. The Myricks borrowed an additional $86,000+ from Margaret Martin to construct a garage.

22. The terms of the loan regarding the additional $86,000+ were never reduced to writing.

23. As the loan agreement was understood by Wayne Myrick, the Myricks would repay the $86,000 to Martin according to Martin's needs.

24. In the event of Martin's death, Wayne Myrick understood that any amount owed on the loan would be cancelled or satisfied as paid in full.

25. On or about January 9, 2004, and January 14, 2004, Lynn Myrick wrote checks on Margaret Martin's checking account at National Bank of Commerce, each check in the amount of $2,500.

26. On or about June 2, 2004. Defendant Lynn Myrick again withdrew funds from Margaret Martin's checking account at National Bank of Commerce, in the amount of $1,100.

27. The refrigerator for the living space was purchased with Martin's funds.

28. The Myricks refused to allow Margaret Martin to remove a refrigerator from Martin's basement living quarters after Martin moved to Texas.

29. In total, Martin alleged that over $227,000 of her money was misappropriated by the Myricks for their use and benefit.

30. On August 22, 2004, Ms. Vikki Hooker Fisher from College Station, Texas, sent a certified letter to Defendant Wayne Myrick. In the letter she introduced

herself as "acting as the agent for Margaret Martin." The letter made a demand for the repayment of monies in an amount that totaled approximately $239,300 and threatened litigation if such monies were not repaid.

31.   On October 8, 2004, Defendant Wayne Myrick responded to Ms. Fisher's letter by setting forth the reasons why he and Defendant Lynn Myrick did not owe the amount that had been demanded. Defendant Wayne Myrick further informed Ms. Fisher there was a general liability policy in place that would defend them against any lawsuits that might be filed regarding the matter.

32.   State Farm, as the insurer of the Myricks, did not receive notification of the controversy between the Myricks and Martin until February 25, 2005, when Defendant Wayne Myrick submitted a copy of a letter he had received from a Texas attorney dated February 15, 2005. In the letter, attorney Scott James from Waco, Texas, made a demand for $86,469.07 for full and final settlement of all claims made by Martin against the Myricks. The Myricks and Martin did not reach an agreement as to Martin's claims, and the Myricks did not repay any money loaned to them by Martin.

33. On or about November 23, 2005, the Myricks were sued in the Circuit Court of Chilton County, Alabama, by Martin[1] for undue influence, fraud-deceit and fraudulent inducement, conversion, conspiracy to defraud, conspiracy to convert, and breach of fiduciary duty in regard to the Myricks' handling of money provided by Martin and the Myricks' management of Martin's financial affairs.

34. In the underlying action, Martin contended that the Myricks conducted her financial affairs in a manner that provided unjust enrichment for the Myricks; specifically, that Martin's personal monies were used for the construction of and additions to the Myricks' personal residence on a lake near Verbena, Alabama, which primarily benefitted the Myricks.

35. Martin also contended that undue influence was used by the Myricks to obtain an executed Durable Power of Attorney appointing Defendant Lynn Myrick as Martin's attorney-in-fact. The Durable Power of Attorney gave Defendant Lynn Myrick the power to conduct financial affairs on behalf of Ms. Martin with respect to Martin's various bank accounts.

---

[1] The underlying and recently dismissed lawsuit was styled *Margaret N. Martin vs. Wayne Myrick and Lynn Myrick*, Circuit Court of Chilton County, Alabama, Civil Action No. CV-05-336-B.

36.     Martin further contended that the Myricks represented to her that the monies being used for the construction of the residence were to be loans that would be repaid.  Martin contended the Myricks conspired and collaborated with each other to convert Martin's funds to their personal use under the representation the funds were loans that would be repaid.  Martin specifically contended that Lynn Myrick breached her fiduciary duty to use the powers conveyed in the Durable Power of Attorney for the sole benefit of Ms. Martin.

37.     At all times applicable to this matter, the Myricks were insured under a <u>Personal Liability Umbrella Policy</u> issued jointly in their names.  Said policy was in full force at all times applicable to this matter.  A copy of the personal liability umbrella policy, (hereinafter "PLUP Policy"), bearing policy number 01-BY-3095-2 and the declarations page setting forth the policy limits is attached hereto as Exhibit "A."

38.     At all times applicable to this matter, the Myricks were also insured under a <u>Homeowners Policy</u> issued jointly in their names.  Said policy was also in full force at all times applicable to this matter.  A copy of the homeowners policy, (hereinafter "HO Policy"), bearing policy number 01-E6-4730-0 and the declarations page setting forth the policy limits is attached hereto as Exhibit "B."

39. State Farm provided a defense for the Myricks under the PLUP Policy pursuant to a reservation of rights letter for the duration of the underlying litigation. In fact, upon filing a motion for summary judgment in the underlying lawsuit, defense counsel retained by State Farm successfully obtained the dismissal of Martin's claims of fraud, deceit, fraudulent inducement and conspiracy.

40. On September 18, 2007, the underlying litigation was brought to a close when Martin, through her legal guardian Paula McClung, executed a Release and Settlement Agreement under which there was "no admission of wrongdoing or liability" and that all claims and allegations in the underlying action "remain[ed] contested, disputed, and denied." As consideration for the Release and Settlement Agreement, the Myricks paid Martin $125,000.00. Whether or not State Farm has a duty to indemnify the Myricks for the underlying action forms the basis of this Declaratory Judgment.

## PERSONAL LIABILITY UMBRELLA POLICY

41. Regarding coverage under the PLUP Policy, the contract language states:

> 1. **Coverage L - Personal Liability.** If you are legally obligated to pay damages for a **loss**, we will pay your **net loss** minus the **retained limit.** Our payment will not exceed the amount shown on the **Declarations** as Policy Limits - Coverage L - Personal Liability.

Exhibit "A," Certified PLUP Policy, p.3, ¶ 1, SF-00007

  42. The Plup Policy contains the following definitions:

    6. "**loss**" means:

      a. an accident, including injurious exposure to condition, which results in **bodily injury** or **property damage** during the policy period. Repeated or continuous exposure to the same general condition is considered one **loss**; or

      b. the commission of an offense, or series of similar or related offenses which result in **personal injury** during the policy period.

Exhibit "A," Certified PLUP Policy, Policy Endorsement, FE-7786, **DEFINITIONS**, SF-00014

    8. **"net loss"** means:

      a. the amount you are legally obligated to pay as damages for **bodily injury, personal injury** or **property damage**; and

      b. all reasonable expenses you incur in the investigation, settlement and defense of a claim or suit at our request. This does not include expenses covered by another policy, expenses we cover under **Defense and Settlement** section of this policy, and salaries of your employees.

Exhibit "A," Certified PLUP Policy, Policy Endorsement, FE-7786, **DEFINITIONS**, SF-00015

    9. "**personal injury**" means injury caused by one or more of the following offenses:

      a. false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution;

      b.    libel, slander, defamation of character or invasion of rights of privacy.

Exhibit "A,"Certified PLUP Policy, Policy Endorsement, FE-7786, **DEFINITIONS**, SF-00015

    11.    "**property damage**" means physical injury to or destruction of tangible property. This includes the loss of use caused by the injury or destruction.

Exhibit "A," Certified PLUP Policy, page 2, ¶ 11, SF-00006

    14.    **"retained limit"** means:

      a.    the total limits of liability of your underlying insurance; or

      b.    the amount shown on the **Declarations** as the "Self-Insured Retention." This amount applies only if this policy applies but your required underlying insurance policy does not include coverage for the **loss**.

Exhibit "A," Certified PLUP Policy, page 2, ¶ 11, SF-00006

    17.    "**bodily injury**" means physical injury, sickness, disease, emotional distress or mental injury to a person. This includes required care, loss of services and death resulting therefrom.

      **Bodily injury** does not include:

      a.    any of the following which are communicable: disease, bacteria, parasite, virus, or other organism any of which are transmitted by any **insured** to any other person; or

      b.    the exposure to any such disease bacteria, parasite, virus or other organism by any insured to any other person.

Exhibit "A," Certified PLUP Policy, Policy Endorsement, FE-7786, **DEFINITIONS**, SF-00014

    43.    The PLUP Policy contains the following exclusions:

We will not provide insurance:

* * * *

    2.    for **bodily injury** or **property damage**:

    a.    which is either expected or intended by you; or

    b.    to any person or property which is the result of your willful and malicious act, no matter at whom the act was directed.

Exhibit "A,"Certified PLUP Policy, Policy Endorsement, FE-7786, **EXCLUSIONS** 2., SF-00015

    3.    for **property damage** to:

    a.    your own property;

Exhibit "A," Certified PLUP Policy, page 4, ¶ 11, SF-00008

    44.    The PLUP Policy sets forth certain conditions that must be met by the insured:

**YOUR DUTIES TO US**

These are the things you must do for us. We may not provide coverage if you refuse to:

    1.    notify us of an accident. If something happens that might involve this policy, you must let us know promptly. Send written notice to us or our agent. Include the names and addresses of the injured

       and witnesses.  Also include the time, place and account of the accident.

    2.    notify us of a claim or suit.  If a claim or suit is filed against you, notify your underlying insurer and us right away.  You must send us every demand, notice, summons or other process you receive.

Exhibit "A," Certified PLUP Policy, page 6, **YOUR DUTIES TO US**, 1., 2., SF-00010

## HOMEOWNERS POLICY

    45.    In regard to Liability Coverages under the HO Policy in Section II, the contract language states:

> **COVERAGE L - PERSONAL LIABILITY**
>
> If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage,** to which this coverage applies, caused by an **occurrence**, we will:
>
> 1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and
>
> 2. provide a defense at our expense by counsel of our choice. . . .

Exhibit "B", Certified HO Policy, p. 15, SF-00036

    46.    The HO Policy contains the following definitions:

> 1. **"bodily injury"** means physical injury, sickness, or disease to a person.  This includes required care, loss of services and death resulting therefrom.
>
> **Bodily injury** does not include:

      a.    any of the following which are communicable: . . . .

      b.    the exposure to any such disease, bacteria, parasite, . . . .

      c.    emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

Exhibit "B", Certified HO Policy, p. 1, SF-00022

    7.    **"occurrence"**, when used in Section II [Liability Coverages] of this policy, means an accident, including exposure to conditions, which results in:

      a.    **bodily injury;** or

      b.    **property damage** . . . .

          \* \* \* \*

    8.    **"property damage"** means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any **insured** is not **property damage.**

Exhibit "B", Certified HO Policy, p. 2, SF-00023

    47.    The HO Policy contains the following exclusions under **SECTION II - LIABILITY COVERAGES**:

    1.    Coverage L . . . does not apply to:

      a.    **bodily injury** or **property damage**:

          (1)    which is either expected or intended by the **insured**; or

    (2) which is the result of willful and malicious acts of the **insured**;

Exhibit "B", Certified HO Policy, p. 16, SF-00037

  48. The HO Policy sets forth certain conditions that must be met by the insured:

    3. **Duties After Loss.** In case of an accident or **occurrence**, the **insured** shall perform the following duties that apply. You shall cooperate with us in seeing that these duties are performed:

      a. give written notice to us or our agent as soon as practicable which sets forth:

        (1) the identity of this policy and **insured;**

        (2) reasonable available information on the time, place and circumstances of the accident or **occurrence**; and

        (3) names and addresses of any claimants and available witnesses;

      b. immediately forward to us every notice, demand, summons or other process relating to the accident or **occurrence**.

Exhibit "B", Certified HO Policy, p. 18, SF-00039

  49. By virtue of the above described provisions which exist in the respective policies, and the information currently available to State Farm, State Farm contends there is no coverage available to the Myricks under either the PLUP Policy or the HO Policy, and that State Farm is not required to indemnify the Myricks for the claims and damages alleged against them by Ms. Martin. Accordingly, State Farm assets that

it has no duty to indemnify the Myricks for the claims so alleged under either policy. Due to the settlement, any issues based on the duty to defend is now moot.

**WHEREFORE, the above premises considered,** Plaintiff State Farm Fire and Casualty Company seeks the following relief:

A. That the Court declare no "loss" has occurred as defined and covered by the PLUP policy.

B. That the Court declare no "occurrence" as occurred as defined and covered by the HO Policy.

C. That the Court declare Plaintiff State Farm Fire and Casualty Company has no duty to indemnify Wayne Myrick and Lynn Myrick in or as a result of the lawsuit brought by Martin against the Myricks in The Circuit Court of Chilton County, Alabama, which alleges intentional acts by the insureds and other acts duly excluded under the PLUP Policy.

D. That the Court declare Plaintiff State Farm Fire and Casualty Company has no duty to indemnify Wayne Myrick and Lynn Myrick in the lawsuit brought by Martin against the Myricks in The Circuit Court of Chilton County, Alabama, which alleges intentional acts by the insureds and other acts duly excluded under the HO Policy.

  E. That upon consideration of this action, this Court will enter a judgment declaring the duties, rights, obligations, and responsibilities existing under the PLUP Policy and under the HO Policy between and among the various parties hereto, and declare the following:

    (a) That no coverage exists pursuant to the terms contained within the PLUP Policy for the claims asserted by Martin against the Myricks.

    (b) That no coverage exists pursuant to the terms contained within the HO Policy for the claims asserted by Martin against the Myricks.

    (c) That State Farm has no obligation, duty or liability under the PLUP Policy issued to the Myricks regarding the above referenced incidents including, but not limited to, any duty to indemnify the Myricks for the claims asserted by Martin.

    (d) That State Farm has no obligation, duty or liability under the HO Policy issued to the Myricks regarding the above referenced incidents including, but not limited to, any duty to indemnify the Myricks for the claims asserted by Martin.

F.  That the Court declare the Myricks have breached their obligations under the contract by failing to provide prompt notice of a potential liability involving the policy.

G.  That the Court grant Plaintiff State Farm Fire and Casualty Company such other, further, and different general relief to which it may be entitled.

RESPECTFULLY SUBMITTED this the 3 day of DECEMBER, 2007.

/s/ Bert S. Nettles
Bert S. Nettles (ASB-5850-S63B)
C Dennis Hughes (ASB-1033-H65C)
John H. McEniry, IV (ASB-9509-J72M)

**OF COUNSEL**:
HASKEL SLAUGHTER YOUNG & REDIKER, LLC
1400 ParkPlace Tower
2001 Park Place North
Birmingham, Alabama 35203
(205) 251-1000

        Michael B. Beers (ASB 4992-S80M)
        Micheal S. Jackson (ASB 8173-O78M)
        Constance T. Buckalew (ASB 3785-L68C)
        Angela C. Taylor (ASB 2713-L75T)

**OF COUNSEL**:
BEERS, ANDERSON, JACKSON, PATTY & FAWAL, P.C.
P. O. Box 1988
Montgomery, Alabama  36102-1988
Telephone:  (334) 834-5311
Facsimile:  (334) 834-5362
E-mail: mbeers@beersanderson.com

        Counsel for Plaintiff/Counterclaim Defendant State
         Farm Fire and Casualty Company

## **CERTIFICATE OF SERVICE**

I hereby certify that on this the 6th day of December, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following party or attorney of record in this action:

| | |
|---|---|
| Timothy M. Fulmer, Esq. | James A. Kee, Jr., Esq. |
| David O. Schoel, Esq. | Jon M. Hughes, Esq. |
| **NATTER & FULMER, P.C.** | Cynthia A. Martin, Esq. |
| 3800 Colonnade Parkway | **KEE & SELBY, L.L.P.** |
| Suite 450 | 1900 International Park Drive |
| Birmingham, Alabama  35243 | Suite 220 |
| *Counsel for Margaret Martin* | Birmingham, Alabama  35243 |
| | *Counsel for Wayne & Lynn Myrick* |

                         /s/ Bert S. Nettles
                         Of Counsel