IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| STATE FARM AND CASUALTY COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 2:06-CV-359-WKW [WO] |
| WAYNE MYRICK, *et al.*, | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff State Farm Fire and Casualty Company ("State Farm") seeks a declaratory judgment that it has no obligation, duty, or liability under any insurance policy to indemnify claims Defendants Wayne and Lynn Myrick ("Myricks") settled in state court brought by Defendant Margaret N. Martin ("Martin").[1]  (Am. Compl. 17 (Doc. # 42).)  The Myricks counterclaimed, alleging breach of contract (Count One), bad faith (Count Two), and breach of the enhanced obligation of good faith (Count Three).  (Am. Answer & Counterclaim (Doc. # 49).)

On February 9, 2009, State Farm moved for summary judgment on all counts of the Counterclaim.  (SF's Mot. Summ. J.  (Doc. # 57).)  The Myricks responded, opposing summary judgment (Myricks' Resp. (Doc. # 65)), and State Farm replied (SF's Reply (Doc. # 67)).  The Myricks also moved for summary judgment, but only on the Counterclaim's

---

[1] State Farm sued Martin in its initial Complaint (Doc. # 1), but dropped her from the case in its Amended Complaint (Doc. # 42).

breach of contract count. (Myricks' Mot. Partial Summ. J. (Doc. # 58) & Myricks' Supp. Am. Br. (Doc. # 63).) State Farm filed a brief in opposition (SF's Resp. (Doc. # 64)), to which the Myricks replied (Myricks' Reply (Doc. # 68)).

Based upon careful consideration of the arguments of counsel, the relevant law and the record as a whole, State Farm's motion for summary judgment (Doc. # 57) is due to be granted, the Myricks' motion for partial summary judgment (Doc. # 58) is due to be denied, and judgment is due to be entered in favor of State Farm.

## I. JURISDICTION

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. §§ 1332 and 2201. The parties do not contest personal jurisdiction or venue, and there are allegations sufficient to support both.

## II. FACTS AND PROCEDURAL HISTORY

On November 23, 2005, Martin sued the Myricks in Chilton County, Alabama, for undue influence, fraud (deceit and fraudulent inducement), conversion, conspiracy to defraud, conspiracy to convert, and breach of fiduciary duty.[2]  The Myricks were insured under a State Farm personal liability umbrella policy ("PLUP Policy") issued in both Defendants' names.[3]  On January 21, 2006, the Myricks notified State Farm of the state court suit against them in order to determine whether the PLUP Policy, or any other policy,

---

[2] Record citations are provided only for disputed or unclear facts.

[3] The Myricks abandoned their claim under the homeowner's insurance policy. (Myricks' Resp. 4 n.2.)

covered their costs.  (SF's Mot. Summ. J. Ex. I.)  State Farm responded on January 30, 2006,

notifying the Myricks that State Farm was retaining a lawyer to defend the Myricks but was

reserving the right to challenge whether the policy required State Farm to provide a defense

or indemnity.  (SF's Mot. Summ. J. Ex. J.)  State Farm filed this action on April 21, 2006,

seeking declaratory relief with respect to State Farm's duties under the insurance policies.

In August 2007, the parties in the underlying state-court action reached a resolution without

State Farm's involvement.  Martin, through her legal guardian, executed a Release and

Settlement Agreement for which the Myricks paid consideration of $125,000.  The Myricks

seek indemnity from State Farm for that amount.  The only remaining issue, therefore, is

State Farm's obligations under the PLUP Policy to indemnify the Myricks, and the relevant

bad faith and breach claims.

The allegations of the underlying suit are as follows.[4]  Martin alleged that the Myricks

took for their use and benefit more than $227,000 of her money. Martin had suffered a stroke

in December 2002.  On advice from her physician not to live alone, Martin arranged to live

with her niece, Lynn Myrick, and Lynn's husband, Wayne.  The Myricks suggested that

Martin sell her home in Jefferson County, Alabama, and give the proceeds to them to fund

the construction of a basement apartment for her at the lake residence the Myricks were

building.  On January 2, 2003, Martin executed a Durable Power of Attorney appointing

Lynn Myrick as attorney-in-fact, giving her the power to conduct financial affairs on behalf

---

[4] These details are from the state court complaint's allegations.

3

of Martin.  Lynn Myrick closed all of Martin's certificates of deposit and bank accounts, which Martin shared with someone else, and reopened them in Martin's and Lynn Myrick's names.

Martin sold her Jefferson County home and gave $114,000 to the Myricks for the basement apartment.  Martin also closed a certificate of deposit, at Lynn Myrick's insistence, and gave $20,000 to the Myricks for installing hardwood floors.  Martin moved into the lake residence and lived there for fourteen months, until June 2004.  After the lake residence was completed, the Myricks borrowed $86,469.07 from Martin to pay for constructing a separate garage for storage.  The terms of that arrangement are in dispute.  In January 2004, without Martin's permission, Lynn Myrick wrote two $2,500 checks on Martin's account, and in June 2004, withdrew $1,100 from the account.  In May 2004, Martin visited her son in Texas, and in June, decided to live permanently with him.  The Myricks prohibited her from moving the refrigerator she paid for, valued at $1,200, from the lake residence to Texas.

The attorney retained by State Farm represented the Myricks throughout the state court proceeding.  The claims of fraud, conspiracy to defraud, and conspiracy to convert were dismissed at summary judgment.  Remaining at the time of the mediation on August 16, 2007, were the claims of undue influence, conversion, and breach of fiduciary duty.  State Farm did not participate in the mediation, rejected the advice of counsel retained for the Myricks to settle and provide some indemnity payment to them, and did not tender any of the money the Myricks paid as a result of the settlement reached during mediation.  (SF's Mot.

Summ. J. 16, 17 n.74.)  The Release and Settlement Agreement signed by the parties stated

the following under "Settlement Proceeds":

> Wayne Myrick and Lynn Myrick shall pay One Hundred Twenty-Five
> Thousand and No/100 Dollars ($125,000.00) to Plaintiff and her attorneys.
> Said payment is made solely in consideration for Plaintiff's claims against
> Wayne Myrick and Lynn Myrick for damages for alleged mental anguish and
> emotional distress, based upon alleged accidents resulting from alleged
> reckless and unintentional conduct of Wayne Myrick and Lynn Myrick.  No
> amount of the settlement proceeds are [sic] being paid in consideration for any
> alleged wanton or intentional conduct on the part of Wayne Myrick and Lynn
> Myrick, nor is any amount of the settlement proceeds being paid in
> consideration for claims based upon money allegedly wrongfully converted or
> withheld.

(Agreement ¶ 1 (Evidentiary Submission Myricks' Mot. Partial Summ. J. Ex. 6 (Doc. # 60)).)

The Myricks argue that the loss they incurred in settling Martin's claims is covered

under the PLUP Policy and that they are entitled to indemnification from State Farm.  The

PLUP Policy coverage provision reads: "If you are legally obligated to pay damages for a

loss, we will pay your net loss minus the retained limit."  (PLUP Policy "Coverages" ¶ 1

(Am. Compl. Ex. A).)  A "loss" is defined as "an accident that results in personal injury or

property damages during the policy period.  [It] includes injurious exposure to conditions."

(PLUP Policy "Definitions" ¶ 6.)  "Personal injury" covers "bodily harm, sickness, disease,

shock, mental anguish or mental injury" (PLUP Policy "Definitions" ¶ 9(a)), but excluded

is a personal injury "which is either expected or intended by [the insured]" (PLUP Policy

"Exclusions" ¶ 2(a)).

## III.  STANDARD OF REVIEW

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Under Rule 56, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing there is no genuine issue of material fact, or by showing that the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.  "[T]he court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).

Once the moving party has met its burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Rule 56(e)(2).  To avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  A genuine factual dispute exists if "a reasonable jury could return a verdict for the non-moving party." *Damon v. Fleming*

*Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999) (internal quotation marks and citation omitted).

## IV.  DISCUSSION

**A.**   **Breach of Contract and Bad Faith Claims**

An insurer's duty to indemnify under a policy is not as extensive as its duty to defend. *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1009 (Ala. 2005) (per curiam).  Thus, the duties must be analyzed separately.  *Tanner v. State Farm Fire & Cas. Co.*, 874 So. 2d 1058, 1066 (Ala. 2003).  An insurer's duty to indemnify is determined by the insured's conduct, not by the allegations of injury levied against him.  *Id.  See also Cotton States Mut. Ins. Co. v. Daniel*, No. 03:07-CV-843, 2008 WL 4999097, at *4 (M.D. Ala. Nov. 20, 2008) (Watkins, J.).

The PLUP Policy covers losses incurred by accidents that result in personal injury. A personal injury includes mental anguish or mental injury but excludes injuries that are expected or intended.  The policy does not define accident, but in *Merchants & Farmers Bank*, "accident" was also undefined in the policy, and the court looked to definitions of "accident" as a "commonly used word in the legal profession."  928 So. 2d at 1011.  The court noted that in a prior case, it had defined "accident" using the definition from the seventh edition of *Black's Law Dictionary* 15 – "'[a]n unintended and unforseen injurious occurrence; something that does not occur in the usual course of events or that could be

7

reasonably anticipated.'"[5] *Merchants & Farmers Bank*, 928 So. 2d at 1011 (citing *St. Paul Fire & Marine Ins. Co. v. Christiansen Marine, Inc.*, 893 So. 2d 1124, 1136 (Ala. 2004) and quoting *Black's Law Dictionary* (7th ed. 1999)).   The court noted it had also defined "accident" as "'something unforeseen, unexpected, or unusual.'"  *Id.* (quoting *U.S. Fidelity & Guar. Co. v. Bonitz Insulation Co. of Ala.*, 424 So. 2d 569, 572 (Ala. 1982), for a composite definition).[6]

In *Merchants & Farmers Bank*, the court found there was no accident because the insured could show only "a series of purposeful and deliberate acts" and could not demonstrate "an unexpected, unintended, or unforeseen result from its cause of action."  928

---

[5] The eighth edition of *Black's Law Dictionary* supplies the same definition of "accident." *Black's Law Dictionary* 15 (8th ed. 2004).  A quotation appending the definition adds:

> "Policies of liability insurance as well as property and personal injury insurance frequently limit coverage to losses that are caused by 'accident.'  In attempting to accommodate the layman's understanding of the term, courts have broadly defined the word to mean an occurrence which is unforeseen, unexpected, extraordinary, either by virtue of the fact that it occurred at all, or because of the extent of the damage. . . ."

*Black's Law Dictionary* 15-16 (8th ed. 2004) (quoting John F. Dobbyn, *Insurance Law in a Nutshell* 128 (3d ed. 1996)); *see Black's Law Dictionary*, Preface to the Seventh Edition (8th ed. 2004) ("In a novel feature, more than 2,000 quotations from scholarly works appear throughout the text to help round out the treatment of various terms.").

[6] Alabama's Pattern Jury Instructions define "injury from accidental means" as:

> Bodily injuries (sustained solely through accidental means) . . . means that the bodily injuries must have been something unforeseen, unexpected, and unusual, or which happens as by chance, or which does not take place according to the usual course of things, and without the design, consent, or voluntary cooperation of the insured.
> In order for the plaintiff to recover under the policy of insurance sued on, you must be reasonably satisfied from the evidence not only that the injuries to ___ (injured person's name) were accidental but also that the cause or means which produced or brought about the injuries were accidental.

1 *Alabama: Pattern Jury Instructions (Civil)* 20.15 (2d ed. 1993).

So. 2d at 1013.  The court found that although the insured "'may have made a mistake of fact and/or error in judgment, . . . it at all times acted in a deliberate and purposeful manner.'" *Id.* (quoting *Mindis Metals, Inc. v. Transp. Ins. Co.*, 209 F.3d 1296, 1301 (11th Cir. 2000)).[7]

The injury in *Merchants & Farmers Bank* arose from a dispute over the prioritization of security interests.  The insured had a perfected security interest in inventory and equipment owned by a furniture store that defaulted on its debt.  928 So. 2d at 1007.  After the default, the insured learned of an agreement between the furniture store and another furniture store, pursuant to which the inventory was placed in the latter's store for a liquidation sale.  *Id.*  The insured determined that it had a superior security interest because no financial statement for the inventory had been filed so it notified the store holding the liquidation sale of its superior security interest.  *Id.* at 1008.  The furniture store holding the liquidation sale then sued the insured for conversion, detinue, and negligence/willfulness/wantonness, alleging that it had improperly seized inventory and money belonging to the plaintiff and had consequently breached its duty to the plaintiff.  *Id.*

As support for finding the insured's conduct was *not* an accident, and therefore was not covered under the policy, the court found the following facts, adduced at trial and from representations made in submissions to the court: (1) the insured had no contractual

---

[7] At issue in *Merchant & Farmers Bank*, was a duty to defend, not indemnify, but the court's analysis was based on the same evidence that would have determined the duty to indemnify – evidence pertaining to the insured's actual conduct.  *See Merchants & Farmers Bank*, 928 So. 2d at 1012 (noting that since it had not found a duty to defend based on the complaint's allegations, the next step was to review other facts that may be proved by admissible evidence not alleged in the complaint that show a reasonable inference that the conduct fell under the policy).

9

relationship with the allegedly injured plaintiff and knew nothing about the plaintiff until the liquidation sale; (2) the insured determined that the plaintiff had not complied with the Uniform Commercial Code to secure its interest in the inventory in the store; (3) the insured's counsel advised the insured that its security interest was superior to any claim; (4) the insured wrote the plaintiff to inform the plaintiff of the insured's intent; and (5) the insured never seized any property or money from the plaintiff. *Merchants & Farmers Bank*, 928 So. 2d at 1012-13.  As these facts show, there was no wrongful intent on the part of the insurer, but nevertheless, because the insured "decided upon a deliberate course of conduct and, throughout the time frame in question, intentionally pursued that course of conduct," the conduct was not accidental, even it was made under a mistake of fact or error in judgment. *Id.*

To establish that Martin's injuries were based on accidents, the Myricks focus on the Release and Settlement Agreement.  (Myricks' Resp. 5-6.)  The basis for determining a duty to indemnify, however, is the insured's *conduct*.  Relying on an arguably self-serving Release and Settlement Agreement would not comport with that requirement.[8]

The Myricks also rely upon the evidence in the underlying case.  In summary, they argue that the evidence shows: (1) the Myricks considered the $114,000 from Martin to be

---

[8] *See also CNL Hotels & Resorts, Inc. v. Twin City Fire Ins. Co.*, 291 F. App'x 220, 224 (11th Cir. 2008) (rejecting an argument that a loss was covered under a policy just because the settlement agreement labeled it in such a way that it would be covered, noting that the agreement is "not binding on any third party or this Court," that "[t]he policy, not the settlement agreement, governs [the court's] resolution of this appeal," and that the argument is "too lacking in merit to warrant discussion" (internal quotation marks omitted)).

a gift to build out the basement; (2) the Myricks considered the $86,000 to be a loan; (3) and Lynn Myrick was "of the belief that there was nothing wrongful about her withdrawals of money and that it was pursuant to [Martin's] wishes." (Myricks' Resp. 8.) Because coverage depends on whether the Myricks intended Martin's injuries, they argue, and because intent is a "subjective" standard, the question of coverage should be a question of fact for the jury. (*See* Myricks' Resp. 8 (citing *Tanner*, 874 So. 2d at 1066-67).) In *Tanner*, the court analyzed a policy exclusion for injuries that were "expected or intended and held that a "purely subjective standard" governs whether bodily injury was expected or intended.  874 So. 2d at 1066-67 (citing *Ala. Farm Bureau Mut. Cas. Ins. Co. v. Dyer*, 454 So. 2d 921, 925 (Ala. 1984)) (explaining that "'[t]he policy term, expected or intended injury, cannot be equated with foreseeable injury,'" as "intended" from the insured's standpoint does not incorporate notions of intent from tort and criminal law, *id.* at 1067 (quoting *Dyer*, 454 So.2d at 925)). The question of "intent" is one of whether the insured "'possessed the specific intent to cause bodily injury to another,'" and therefore, should be resolved by the factfinder.  *Id.* (quoting *Dyer*, 454 So. 2d at 925).

An exclusion for expected or intended injuries does exist in this policy, but State Farm does not seek to bar coverage under that exclusion.  Its argument – that no loss occurred because Martin's injuries were not the result of accidental conduct – precedes the exclusion

question.[9]  The Myricks argue that the evidence *does* show that the injuries were the result of accidental conduct. (Myrick'Resp. 8-10.) They fault State Farm for mischaracterizing the suit as one for intentional conduct only, and argue that because the allegations concern reckless conduct, they concern accidental conduct.  (Myricks' Resp. 9 ("Such reckless activity is more equated with accidental.").)  First, the Myricks cannot rely, as they do, on the allegations and the Release and Settlement Agreement for establishing that point.  Second, their argument assumes that "accidental" and unintentional conduct completely overlap. Under this logic, if conduct is unintentional, it is necessarily accidental.  However, as the definition of "accident" recognized by the Alabama Supreme Court implies, not all unintentional acts are accidental conduct.

The Myricks rely on *Edwards Dodge, Inc. v. Pennsylvania National Mutual Casualty Insurance Co.*, 510 So. 2d 225 (Ala. 1987) (per curiam) (Myricks' Resp. 9), to no avail. *Edwards Dodge* held that the insurer had a duty to provide defense and coverage to the insured because the complaint alleged reckless, as well as intentional, misrepresentation. 510 So. 2d at 227.  The insurer had argued that coverage did not exist based on an exclusion provision for "'dishonest, fraudulent, criminal, or malicious act[s], libel or slander.'" *Id.* at 225 (quoting policy).  The court found coverage for reckless conduct under the policy

---

[9] The policy exclusion for intended injuries concerns the *type* of injuries covered by a plan, but for a loss to even cover an injury, the injury must have arisen *from an accident*.  If the injury did not arise from an accident, the type of injury is irrelevant – the injury is not covered.

because reckless "is not equivalent" to intentional, *id.* at 227, but that finding does not resolve the question of whether all reckless conduct is *accidental*.

The Myricks claim a conversion can be accidental, but the case they cite for authority only holds that "every unlawful intermeddling with the goods of another is a conversion, and it is no defense to an action by the true owner that the person so receiving the good was ignorant of its title," *Moore v. Stephens*, 18 So. 2d 577, 578 (Ala. 1944). In other words, conversion can be unintentional in the sense that the party did not know it was unlawful, but the Myricks fail to show how conversion under the mistaken belief about rightful title is *accidental*.

As did the insured in *Merchants & Farmers Bank*, the Myricks took purposeful and deliberate acts that led to the basis of this action. The actions were deliberate *even if* they were pursued without a wrongful intent. As State Farm notes, "the facts developed through discovery in the Martin action[] clearly exhibit 'deliberate and purposeful action' by the Myricks. Even without the attribution of 'wrongful' intent, for purposes of the coverage issues concerned here, the Martin action clearly concerned conduct and consequences that were **NOT** 'unexpected, unintended or unforeseen.'" (SF's Mot. Summ. J. 31.) The Myricks' summary of the facts, as described *supra*, does not show otherwise.[10] Because the Myricks have failed to prove the settlement payment was for an injury that resulted from an

---

[10] The Myricks bear the burden of establishing coverage. *Employers Mut. Cas. Co. v. Mallard.*, 309 F.3d 1305, 1307 (11th Cir. 2002) (per curiam) ("In this diversity action, Alabama's substantive law governs the interpretation of the . . . policy at issue. Under Alabama law, the burden is on the insured to establish coverage exists under an insurance policy." (citations omitted)).

accident, the PLUP Policy does not cover the loss they incurred in settling Martin's claims. The Myricks' bad faith claim therefore also fails because there is no breach of contract, which is a required element of a bad faith claim.[11]

## B.    Breach of Enhanced Obligation of Good Faith

Remaining is the counterclaim count against State Farm for breach of its enhanced obligation of good faith. "'[W]hen an insurance company undertakes a defense pursuant to a reservation of rights, it does so under an 'enhanced obligation of good faith' toward its insured in conducting such a defense.'" *Twin City Fire Ins. Co. v. Colonial Life & Accident Ins. Co.*, 839 So. 2d 614, 616 (Ala. 2002) (quoting *Aetna Cas. & Sur. Co. v. Mitchell Bros., Inc.*, 814 So. 2d 191, 195 (Ala. 2001)). The enhanced duty of good faith arises from the contract – it is "read into" the insured's reservation of rights. *Id.* Under this duty, if the insurer hires retained counsel for a defense it provides the insured under reservation of rights, "counsel represents only the insured, not the insurer." *Lifestar Response of Ala., Inc. v. Admiral Ins. Co.*, ___ So. 2d ___, 2009 WL 280457, at *15 (Ala. 2009) (comparing the "normal tripartite relationship between the insurer, insured, and the defense attorney [retained by the insurer]," where there is no conflict of interest, with the retained attorney's "primary

---

[11] By accusing State Farm of failing to investigate their claim, the Myricks appear to be alleging an "abnormal," as opposed to "normal," bad faith claim. *See Mut. Serv. Cas. Ins. Co. v. Henderson*, 368 F.3d 1309, 1314-16 (11th Cir. 2004) (comparing "normal" and "abnormal" bad faith claims under Alabama law). An "abnormal" bad faith claim requires that the insurer "'breached the contract for insurance coverage with the insured when it refused to pay the insured's claim.'" *Id.* at 1315 (quoting *Ex parte Simmons*, 791 So. 2d 371, 379 (Ala. 2000)). There is no contract breach of a duty to pay in this case.

obligation" to the insured where there is a conflict, which includes when the insurer retains its right to contest coverage under the policy).

The insurer satisfies its enhanced duty "'by meeting specific criteria'": (1) conducting a thorough investigation; (2) retaining competent defense counsel, who, along with the insurer, "'must understand that only the insured is the client'"; (3) informing the insured of the defense "'and all developments relevant to his policy coverage and the progress of the lawsuit'";[12] and (4) "refrain[ing] from engaging in any action which would demonstrate a greater concern for the insurer's monetary interest than for the insured's financial risk.'" *L & S Roofing Supply Co. v. St. Paul Fire & Marine Ins. Co.*, 521 So. 2d 1298, 1303 (Ala. 1987) (quoting *Tank v. State Farm Fire & Cas. Co.*, 715 P.2d 1133, 1137 (Wash. 1986), and adopting its view, *L & S Roofing Supply Co.*, 521 So. 2d at 1304). Additionally, defense counsel "'owes a duty of full and ongoing disclosure to the insured.'" *Id.* (quoting *Tank*, 715 P.2d at 1137). Encompassed in that requirement is defense counsel's duty to keep the insured "'fully apprised of all activity involving settlement'" because "'[i]n a reservation-of-rights defense, it is the *insured* who may pay any judgment or settlement[,] . . . [a]nd who must make the ultimate choice regarding settlement.'" *Id.* (quoting *Tank*, 715 P.2d at 1138) (emphasis added).

The Myricks accuse State Farm of breaching its enhanced obligation of good faith in two instances – when State Farm placed its own financial interest over the Myricks' during

---

[12] The insurer's duty includes informing the insured of settlement offers. *Ross Neely Sys., Inc. v. Occidental Fire & Cas. Co. of N.C.*, 196 F.3d 1347, 1352 (11th Cir. 1999).

the settlement process, and when State Farm "took a position in a public record that is false, defamatory, [and] inconsistent with [the Myricks'] own testimony, [and] made allegations in an attempt to avoid coverage that are detrimental to [the Myricks'] defense in the underlying suit." (Counterclaim ¶¶ 30 & 31.)  State Farm allegedly placed its own financial interests over the Myricks when it refused "to heed the advice and recommendations of [the insured's] appointed counsel in the underlying case" (Myricks' Resp. 11), to settle the underlying suit "within policy limits despite an opportunity to do so," and to negotiate the settlement in good faith.  (Counterclaim ¶¶ 9 & 10.)[13]  Counsel retained by State Farm to defend the Myricks advised State Farm that punitive damages "were a very real possibility" and recommended to State Farm that it settle the case for up to $120,000.  (David Everest[14] Dep. 121, Oct. 21, 2008 (Evidentiary Submission Myrick's Mot. Partial Summ. J. Ex. 3).) The Myricks claim that prior to mediation, their counsel advised that a best case trial verdict against them would be $150,000 and a worst case verdict would be $250,000.  (Everest Dep. 121.)  Counsel also "made multiple attempts to lean on [State Farm] for some payment on behalf of the Myricks" (Everest Dep. 117), but State Farm refused to settle or to attend the mediation (Everest Dep. 134).  (Myricks' Resp. 11-12.)

State Farm does not dispute these facts.  Instead, State Farm argues that the Myricks' interpretation of its enhanced obligation impermissibly eclipses the reserved right to

---

[13] On this claim, these facts are viewed in the light most favorable to the nonmovant, the Myricks.

[14] David Everest is a corporate representative for State Farm.

challenge coverage.  As State Farm contends, the enhanced obligation "does not in any way extend to or bar an insurance carrier from asserting valid coverage defenses, whether by litigating a separate declaratory judgment action or refusing to provide indemnity payments during mediation while the declaratory judgment action is pending, such as the case at bar." (SF's Mot. Summ. J. 39) (emphasis omitted).

State Farm is correct.  The Myricks' interpretation of the enhanced obligation that overlays a duty to defend turns that duty on its head.  Under the Myricks' logic, the enhanced obligation would require precisely what the insurer has reserved a right to refuse – indemnity – thereby neutering any protection that reservation provides.  The enhanced obligation exists because of the insurer's retained right to refuse indemnity, not in spite of it.  Indeed, only because the insurer is defending under a reservation of rights is it necessary to provide "an adequate means for safeguarding the interests of the insured."  *L & S Roofing Supply Co.*, 521 So. 2d at 1304.

When the insurer is defending the insured under a reservation of rights, therefore, it is only logical that "[m]erely refusing to settle does not mean the insurer breached its duty." *Ross Neely Sys., Inc. v. Occidental Fire & Cas. Co. of N.C.*, 196 F.3d 1347, 1352 (11th Cir. 1999).  In *Ross Neely Systems*, the Eleventh Circuit analyzed each of the four specific criteria adopted in *L & S Roofing Supply Company* and affirmed summary judgment for the insurer on a claim that it had breached its enhanced obligation of good faith.  *Id.* at 1351-52.  Before the suit was filed against the insured, the insurer had settled with more seriously injured

17

victims in the accident, but the other victim refused the insurer's settlement offer and sued the insured. *Id.* at 1349. The insurer extended a defense with reservation of rights to the insurer through outside counsel. *Id.* at 1349, 1351 & n.3. The insurer was exposed only to compensatory damages covered under the policy, but the insured faced punitive damages, which were not covered under the policy, and compensatory damages in excess of the policy. *Id.* at 1349.

After filing suit, the plaintiff offered to settle. *Id.* Outside counsel retained for the insured informed the insurer of the settlement offer and recommended it be rejected, a suggestion which the insurer followed, and a counteroffer was submitted, which the plaintiff refused. *Id.* The insurer also rejected the plaintiff's additional, final offer to settle and the case went to trial. *Id.* Importantly, the insured "agreed that up until the day of trial, the [plaintiff's] case did not appear to have much merit." *Id.* The insured and insurer's predictions proved wrong, however, and a jury awarded the plaintiff compensatory damages (below the policy limit) but also punitive damages. *Id.* The insured borrowed money to pay the punitive damages because the insurer refused to pay, and then sued the insurer. *Id.*

The Eleventh Circuit affirmed summary judgment finding that there was no evidence of a breach of the insurer's enhanced obligation of good faith. *Id.* at 1351. The court found that the insurer had met its duty to keep the insured informed, including informed of settlement offers, that the insured knew about the settlement demands, *and that the insured agreed with rejecting the demands*. *Id.* at 1352. The court also analyzed the fourth *L & S*

18

*Roofing Supply Company* criterion – whether the insurer placed its financial concerns over that of the insured. *Id.* The court noted that a mere refusal to settle was not enough to show a breach of the enhanced obligation of good faith. *Id.* "[[T]he insurer's] decision not to settle before trial must be viewed in light of the facts available to it at the time, not in hindsight." *Id.* The court highlighted several facts that showed the insurer had fulfilled its duty: the insurer settled the claims that were serious; *both* the insurer and the insured considered the financial risks in proceeding to trial "slight"; it appeared to the insured and insurer that the plaintiff had no basis for the damages that were not covered under the policy; and the insured "concurred in this assessment at the time." *Id.* The court also noted that the insurer had no obligation to settle the compensatory damages "merely to minimize its insured's exposure to punitive damages," which were not covered under the policy. *Id.*

This case presents an even starker set of facts for the insureds. This case involves no mixed claims – State Farm is challenging coverage on every claim, but even more critically, State Farm did not wrest control of the ultimate settlement decision from the Myricks. State Farm merely refused to settle for the Myricks. Thus, the Myricks did more than contribute to every settlement decision – they determined settlement. They had the opportunity to position themselves most advantageously in the event State Farm was found not to have a duty to pay. There is no evidence that State Farm stymied the negotiations, that it failed to keep the Myricks informed, or that it positioned the Myricks to pay more than they otherwise

19

would have faced had the indemnity question been resolved prior to the state-court settlement.

Thus, this case is not like *Carrier Express, Inc. v. Home Indemnity Co.*, 860 F. Supp. 1465 (N.D. Ala. 1994), where the insurer was found to have breached its enhanced duty of good faith when it failed, among many other things, to settle within the policy limits when it was possible to do so. *Id.* at 1483-84. In that case, the insurer treated the settlement decision "as solely its own, placing its interests above those of its insured and heedlessly disregarding the position of financial peril in which the underlying cases placed the insured." *Id.* at 1483 (as explained by Home Indemnity's counsel, now Judge Karon O. Bowdre, *id.*, in a later law review article, *Enhanced Obligation of Good Faith: A Mine Field of Unanswered Questions After L & S Roofing Supply Co.*, 50 Ala. L. Rev. 755, 784 (1999)).[15]

_____

[15] In that article, Judge Bowdre (at the time Professor Bowdre) addresses the quandary insurers face when assessing settlement options for a defense of the insured under a reservation of rights. Bowdre, *supra*, at 783-94. "How this principle of good faith in evaluating settlement opportunities plays out in reservation-of-rights cases remains unclear in Alabama," she cautioned. *Id.* at 783. Judge Bowdre warns that it is "dangerous" for insurers to assume that contesting coverage insulates them from liability for failure to settle and points out the analysis in *Carrier Express, Inc.*, and the language from *L & S Roofing Supply Co.* about the insured's having the ultimate choice regarding settlement. *Id.* at 784.

"[T]he insurance company that disputes coverage finds itself between a rock and hard place in this *L & S Roofing* [*Supply Co.*] mine field when it desires to contest coverage but, without the reservation of rights, should settle the case." *Id.* at 786. She suggests options for insurance companies for handling this situation, one of which is to allow the *insured* to effectuate a settlement and later to seek reimbursement from the insurance company. *Id.* at 788. "Indeed, efforts by an insurance company to thwart an insured's efforts to settle, when the insurance company has refused to do so, runs counter to the admonition in *L & S Roofing* [*Supply Co.*] that the insured 'must make the ultimate choice regarding settlement' in a reservation-of-rights case." *Id.* at 789 (internal quotation marks and footnote omitted) (quoting *L & S Roofing Supply Co.*, 521 So. 2d at 1303). The insurance company can contest coverage and reasonableness of settlement in later proceedings. *Id.*

Judge Bowdre warns, however, that an insurer "[that] refuses to settle a case that by all objective standards should be settled acts at its own peril because it has demonstrated a greater concern for its own interest in contesting coverage than for the insured's interest in being protected against the liability judgment." *Id.* at 791. Because the insured in this case controlled the settlement and thereby was not

20

Instead, this case more closely resembles the lawsuit in *Mitchell Brothers* for which the court held the insurer had not breached its enhanced obligation of good faith.  814 So. 2d at 197. The insurer had extended a defense to the insureds under a reservation of rights and had hired an attorney to represent them.  *Id*.  The underlying suit was settled "under [one of the insured's] authority," and he paid the settlement amount.  *Id*.  The court affirmed the trial court's finding of no breach, noting that it was "undisputed that [the insurer] hired competent defense counsel who understood that only the insureds were his clients."  *Id*.  Under those facts – the insurer's provision of a competent defense and the insured's authorization to settle the case – the court found no breach.  *Id*.  This case has the same basic features.  Thus, although the enhanced obligation serves to protect the insured from the insurer's potentially divergent interests, in this case the Myricks retained the decision that affected their financial risk and settled the claims on their own terms.  The insurer merely refused to settle *for* the insured, which is precisely what a reservation of rights permits.

As for the other portion of the Myricks' claim – that State Farm breached the enhanced obligation to defend through its declaratory judgment action – *Mitchell Brothers* forecloses that argument.  There, the court held that when an insurer in its declaratory judgment action discusses settlement negotiations in an underlying suit relevant to that action, those communications are "absolutely privileged."  814 So. 2d at 198.  "[The] [c]ourt has long recognized the usefulness of declaratory judgment actions in insurance-policy

---

disadvantaged by the insurer's refusal, and after *Ross Neely Systems*, it is clear that a refusal to settle is not enough to find a breach of the enhanced duty.

disputes . . . . [and] that parties should be able to litigate freely, without having to worry about being sued for what is said during the course of litigation." *Id.* Therefore, "relevant communications made during judicial proceedings are absolutely privileged," in defamation actions pursued under Alabama law. *Id.* The same is true under federal law. *See, e.g.*, *Brown v. Shimabukuro*, 118 F.2d 17, 18 (D.C. Cir. 1940) ("In this jurisdiction, among others, statements in pleadings and affidavits are absolutely privileged if they have enough appearance of connection with the case in which they are filed so that a reasonable man might think them relevant."). The Myricks accuse State Farm of taking a position in its summary judgment (filed earlier in this action) "that is false, defamatory, inconsistent with its insured's own testimony, [and] makes allegations in an attempt to avoid coverage." (Counterclaim ¶ 31.) The Myricks have made no attempt to show what summary judgment statements fall outside of the absolute privilege. Thus, *Mitchell Brothers* forecloses that portion of the Myricks' claim

For these reasons, State Farm's motion for summary judgment on the counterclaim's breach of its enhanced obligation of good faith claim is due to be granted.

## V. CONCLUSION

Accordingly it is ORDERED that:

(1)     State Farm's motion for summary judgment (Doc. # 57) is GRANTED. Myricks' counterclaims (Doc. # 49) are DISMISSED with prejudice;

(2)     The Myricks' partial motion for partial summary judgment (on Count One of

their Counterclaim) (Doc. # 58) is DENIED; and

(3)     Judgment is due to be entered in favor of State Farm on its amended complaint.

An appropriate judgment will be entered.

DONE this 16th day of April 2009.

      /s/   W.  Keith Watkins
UNITED STATES DISTRICT JUDGE